**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI-DADE DIVISION**
**www.flsb.uscourts.gov**

In re:

                                            CASE NO.:  16-10389-AJC

LIZA HAZAN,
       Debtor.                              CHAPTER 11
_____/

**FIFTH AMENDED DISCLOSURE STATEMENT**

*Table of Contents*

I.      **INTRODUCTION**                                   **page 2**
      A.     **Purpose of This Document**
      B.     **Deadlines for Voting and Objecting;**
             **Date of Plan Confirmation Hearing**
      C.     **Disclaimer**

II.     **BACKGROUND**                                      **page 4**
      A.     **Description and History of the Debtor's Business**
      B.     **Insiders of the Debtor**
      C.     **Management of the Debtor Before and During the Bankruptcy**
      D.     **Events Leading to Chapter 11 Filing**
      E.     **Significant Events During the Bankruptcy Case**
      F.     **Projected Recovery of Avoidable Transfers**
      G.     **Claims Objections**
      H.     **Current and Historical Financial Conditions**

III.    **SUMMARY OF THE PLAN OF REORGANIZATION**          **page 13**
      **AND TREATMENT OF CLAIMS AND EQUITY INTERESTS**
      A.     **What is the Purpose of the Plan of Reorganization?**
      B.     **Unclassified Claims**
          1.     *Administrative Expenses*
          2.     *Priority Tax Claims*
      C.     **Classes of Claims and Equity Interests**
          1.     *Classes of Secured Claims*
          2.     *Classes of Priority Unsecured Claims*
          3.     *Class[es] of General Unsecured Claims*
          4.     *Class[es] of Equity Interest Holders*
      D.     **Means of Implementing the Plan**
      E.     **Risk Factors**
      F.     **Executory Contracts and Unexpired Leases**
      G.     **Tax Consequences of Plan**
IV.    **CONFIRMATION REQUIREMENTS AND PROCEDURES**     **page 27**
      A.     **Who May Vote or Object**

        B.      **Votes Necessary to Confirm the Plan**
                1.      *Votes Necessary for a Class to Accept the Plan*
                2.      *Treatment of Nonaccepting Classes*
        C.      **Liquidation Analysis**
        D.      **Feasibility**
                1.      *Ability to Initially Fund Plan*
                2.      *Ability to Make Future Plan Payments*
                     *And Operate Without Further Reorganization*
V.      **EFFECT OF CONFIRMATION OF PLAN**             page 31
        A.      **Discharge Of Debtor**
        B.      **Modification of Plan**
        C.      **Final Decree**

**EXHIBITS**
**Exhibit A** Historical Earnings and Assets
**Exhibit B** Liquidation Analysis
**Exhibit C** Cash on hand on the effective date of the Plan
**Exhibit D** Projections of Cash Flow and Earnings for Post-Confirmation Period
**Exhibit E** Ballot

## INTRODUCTION

      This is the fifthamended disclosure statement (the "Disclosure Statement") in the Chapter 11 case of Liza Hazan (the "Debtor"). This Disclosure Statement contains information about the Debtor and describes theFourthAmended Plan of Reorganization (the "Plan") filed by the Debtor on November 15, 2017. A full copy of the Plan is filed herewith. ***Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.*** This Plan provides classes of claims; classes of priority claims, classes of secured claims, and classes of unsecured claims and equity. Unsecured creditors holding allowed claims will receive distributions which the proponent of this Plan has valued at dividend of 41% to 100% of total allowed claims accrued for up to sixty months and paid every six months with the first payment due in month 6, while undisputed unsecured claims are paid by 7/11/18.

      A.      **Purpose of This Document**

This Disclosure Statement describes:

                The Debtor and significant events during the bankruptcy case,
                How the Plan proposes to treat claims or equity interests of the type you hold (*i.e.*,what you will receive on your claim or equity interest if the plan isconfirmed),
                Who can vote on or object to the Plan,
                What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,
                Why the Proponent believes the Plan is feasible, and how the treatment

of your claim or equity interest under the Plan compares to what you wouldreceive on your claim or equity interest in liquidation, and
The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes thePlan, but it is the Plan itself that will, if confirmed, establish your rights.

B.      **Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

The Court has not yet confirmed the Plan described in this Disclosure Statement. This sectiondescribes the procedures pursuant to which the Plan will or will not be confirmed.

1.      *Time and Place of the Hearing to [Finally Approve This Disclosure Statement and] Confirm the Plan*

2.      *Deadline For Voting to Accept or Reject the Plan*

If you are entitled to vote to accept or reject the plan, vote on the enclosed ballot andreturn the ballot inthe enclosed envelope to Clerk Bankruptcy Court U.S. Courthouse C. ClydeAtkins United States Courthouse301 North Miami Avenue, Room 150 Miami, FL 33128. Seesection IV.A. below for a discussion of votingeligibility requirements.

Your ballot must be received by the date indicated in the order of the court or it will not be counted.

3.      *Deadline For Objecting to the Adequacy of Disclosure and Confirmation of the Plan*

Objections to this Disclosure Statement or to the confirmation of the Plan must be filed with the Courtand served pursuant to orders served herewith.

4.      *Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact:

David W. Langley
Counsel for Debtor
8551 W. Sunrise Blvd., Suite 303
Plantation, FL 33322
954-356-0450
dave@flalawyer.com

C.      **Disclaimer**

***The Court must approve this Disclosure Statement as containing adequate information toenable parties affected by the Plan to make an informed judgment about its terms. TheCourt***

*has notyet determined whether the Plan meets the legal requirements for confirmation, and the fact that theCourt has approved this Disclosure Statement does not constitute an endorsement of the Plan by theCourt, or a recommendation that it be accepted.*

## II.    BACKGROUND

### A.    Description and History of the Debtor's Business

Debtor works as a business consultant specializing in identifying locations for high-end restaurants andretailers around the world. She has historically earned in excess of $350,000 per year. As part of her consulting business, Debtor presently has an exclusive contract to place new locations for an international beauty and skin care company selling luxury brand products to high-end clientele. The Debtor has several projects under contract that will provide sufficient income to confirm and fund her plan. The Debtor presently has closed contracts that will earn her significant funds (comparable to past earnings) in the next six months.

Debtor works with other major hospitality brands, restaurants, lounges and nightclubs that will earn her millions of dollars of income in the near future.

The Debtor's primary asset is her homestead residence located at 6913 Valencia Drive, Fisher Island,Florida (the "Property") scheduled at $12,000,000.00.

Additionally debtor has scheduled household furniture, dishes and china, household electronics andclothing, shoes and accessories and jewelry, fixtures and art valued at $327,500.

The equity in the Fisher Island Property would support a refinancing, which could also be used to supportfunding a plan if necessary.

In addition to the foregoing, Debtor's husband controls a corporation, Real Estate Holdings Group, L.D.C.which owns a condominium in New York City in the Spencer Condominium, Unit 1A at 1 East 62nd Street, New York, New York 10065. Real Estate Holdings Group, L.D.C.has committed to contribute funds fromthe proceeds of refinancing and ultimate sale of the condominium unit to Debtor's estate to fund the plan in order to assure the Debtor's successful reorganization and completion of the plan.

### B.    Insiders of the Debtor

Debtor is an individual and constitutes Debtor's insiders as defined in §101(31) of the United StatesBankruptcy Code (the "Code"). For the past two years there has been no salaries paid except professionalearnings.

### C.    Management of the Debtor Before and During the Bankruptcy

During the two years prior to the date on which the bankruptcy petition was filed, the officers, directors,managers or other persons in control of the Debtor (collectively the "Managers") were the Debtor.

The Managers of the Debtor during the Debtor's Chapter 11 case have been: The Debtor.

After the effective date of the order confirming the Plan, the directors, officers, and voting trustees ofthe Debtor, any affiliate of the Debtor participating in a joint Plan with the

Debtor, or successor of the Debtorunder the Plan (collectively the õPost Confirmation Managersö), will be: The Debtor.

### D.    Events Leading to Chapter 11 Filing

Debtor sought relief under Chapter 11 in order to end years of litigation between multiple creditors in various disputes across the country, to bring all matters into a single forum, and to fashion a Plan of Reorganization, which will resolve all disputes without needlessly jeopardizing the Debtorøs equity in her various assets.

In 2007 Debtor purchased the property located at 6913 Valencia Drive, Fisher Island, Florida (the õPropertyö) now scheduled at $12 million for $5.1 million from NLG, LLC (õNLGö) through its then claimed principal Chris Kosachuk. The Debtor has been involved in litigation with NLG and Kosachuk since that time as more fully described below.

### Chase Bank

In March 7, 2007 Debtor signed a first promissory note and mortgage with Washington MutualBank in the amount of $3,825,000. JP Morgan Chase Bank claims to now own the Washington Mutual Bank promissory note and mortgage signed by Debtor in March 7, 2007.

Chase filed a foreclosure action in August 2013, which remains pending as case 2013-CA-025902. Chase did not file an assignment of mortgage to itself until 5/26/16. The maturity date of the Loan is August 2051.

### NLG

### NLG FL litigation

NLGøs self-titled manager Chris Kosachukprovideda gift of equity or an õequity contributionö of $1,275,000 stating that Debtor does not have to pay back the amount of $1,275,00on the closing statement andalso had Debtor execute a note and second mortgage on the Fisher Island property forthat same amount from Debtor after Closing.

NLG sued within four months of the closing in 2007, and has pursued Debtor to this date in an attempt to wrongfully obtain Debtorøs property. Litigation between the parties hasoccurred in four states, multiplecourts and has continued for over a decade, and continued in this court, costing Debtor millions in legal fees, adversely affectingher health and her career, and putting her in the financial position of having to seek relief in a Chapter 11reorganization.

Chris Kosachuk asserted that he was the manager and representative of NLG.Kosachuk has testified that he transferred NLGin 2007to Luxcom, a Russian company. In 2012 Chris Kosachuktestified that NLG is now owned by Meridian Trust Company located in BVI but he could not recall to whom he reported. In 2014 Chris Kosachuktestified in deposition that NLG is now owned by Meridian Trust Company located in Nevis and the owner of Meridian Trust Company is Ernie Dover.From prior to the purchase date, more than a decade ago, to today, the

parties have had multiple disputes and have engaged in litigation in multiple courts in Florida, New York, Pennsylvania and Delaware. Final orders have been entered in various courts setting forth the rights of these parties. But the litigation nevertheless has continued, and was now in this Court.

NLG obtained a judgment on the promissory note signed by Debtor on April 28, 2008. ("The Scola Judgment").NLG also sued Debtor for foreclosure in 2011. In 2014, Judge Peter Lopez assigned NLG's judgment against Debtor, the Scola Judgment along with all NLG's rights, claims and benefits against Debtor to Selective Advisors Group, LLC. ("Selective")  and also ordered Selective to provide a partial credit in theamount of $2,746,953.34 which amount includes principal and interest through August 31, 2014(representing the full amount of the Scola judgment) at the 11% interest per annum. Selective did so.

NLG appeared in this case but failed to timely file a proof of claim. NLG is merely a notice party. NLG is not a secured creditor in this case. Selective is listed in Debtor's schedule as her secured creditor. On May 13, 2016 NLG moved for stay relief in this court (D.E. 66) but said relief was denied (D.E. 176) on August 23, 2016.  Selective Advisors Group, LLC, an affiliate of Debtor's husband, owns NLG's claim through execution on a judgment against NLG. On August 23, 2016 the bankruptcy court entered its decision denying NLG's motion for relief from the automatic stay. ECF 176.
In June 12, 2017 NLG moved again for Relief for Stay D.E. 475. Said Motion was denied on June 28, 2017. D.E. 500.

### NLG NY Litigation

NLG domesticated the judgment obtained against debtor on April 28, 2008 ("the Scola Judgment") in New York in 2014.New York Supreme Court Judge Barbara Jaffee,having recognized the Miami-Dade Judge Peter Lopez Order of Assignment of the NLG's Judgment ("The Scola Judgment") against the Debtor to Selective Advisors Group, LLC ("Selective") and having accepted the Selective's Satisfaction of NLG's Judgment against the Debtor Ordered on November 5, 2014:

"That the caption of the case, *NLG, LLC vs Elizabeth Hazan,* be changed to substitute Selective Advisors Group, LLC as Plaintiff in place of NLG and that the New York County Clerk is directed to accept for filing the Florida Court Order of assignment, judicially assigning the underlying Florida judgment from plaintiff to Selective; it is further

ORDERED, that the County Clerk is directed to reflect on the docket of this case that the Florida judgment between plaintiff against defendant, domesticated here, has been satisfied; it is further

ORDERED, that the County Clerk is directed to accept for filing the satisfaction of Judgment or other appropriate satisfaction piece; and it is further

ORDERED, that the County Clerk is directed to remove and strike any judgments of record in this action under Index No. 108020/08."

NLG also filed a lawsuit in New York alleging Debtor fraudulently transferred the New York condo (described below). On November 2014, Hon. Judge Barbara Jaffee dismissed bothactions filed by NLG.

## Spencer Condominium

Debtor bought a condominium in New York City on Fifth Avenue and 62nd Street on December 2005 in the Spencer Condominium, Unit 1A of 1 East 62nd Street, New York, New York 10065 (öThe New York Condominiumö).

**Debtor transferred this New York Condominium in August, 2011. The Board of Managers alleges that the transfer was madewithout the consent of Spencer Condominium. The Board of Managers has agreed to the approval of this Disclosure Statement. The Internal Revenue Service has filed a Proof of Claim in this case. The statute of limitations for the IRS to contest the transfer has not yet run, but IRS has taken no such position and has not appeared in the case other than the filing of a Proof of Claim. The New York Condominium had no equity at the time of the transfer.**

Debtorøs husband controls the corporation, Real Estate Holdings Group LDC which now owns the condominium. The Spencer Condominium Board of Managers has been involved with The Debtor and REHG in litigation since 2008 resulting in a confidentialsettlement agreement executed in March 2015. Spencer Condominium disputes that the Settlement Agreement is enforceable at this time, but in March 2017 Judge Singh of the New York Supreme Court has ordered the parties to comply with the Settlement Agreement; The settlement includes a resolution of the following lawsuits:

*Board of Managers of Spencer Condominium v. Elizabeth Hazen, et al;*
        No. 111644/09.
*Real Estate Holding Group, LDC v. Board of Managers of Spencer Condominium et al*;
        No. 154149/2012
*Real Estate Holdings Group, vs. Spencer Condominium*
        No. 159254/2013

All three cases have been dismissed and settled and REHG is presently hiring a real estate broker to list the condominium unit for sale to satisfy thealleged mortgages (alleged creditors of this Debtor) as well as toresolve the assessments allegedly due the Board of Managers.The unit will be listed for sale.

On July 21, 2016 Debtor filed the following motions: Motion for Relief from Stay Spencer Condominium, (D.E. 115), Motion to Seal or for in Camera Review (D.E. 116) and Motion for Abstention (D.E. 117). All three Debtorøs Motions have been withdrawn without prejudice. On February 24, 2017 Debtor filed three new motions in this case: A Motion to Seal, D.E. 387, A Motion for Abstention D.E. 388, A Motion for Relief from Stay D.E. 389 and An Amended Motion for Stay relief Spencer Condominium litigation and request for expedited Hearing, D.E. 390.Debtor also filed an objection to Spencerøs Proof of Claim. On March 1, 2017,This Court granted the agreed Order granting Debtorøs Amended Motion for Order for Stay relief Spencer Condominium litigation and request for expedited Hearing, D.E. 392. The Court ruled as follows: öThe Debtorøs Motion is granted. The automatic Stay is lifted solely for the purpose of permitting the New York Supreme Court to exercise jurisdiction over the litigation

between the Debtor and Spencer Condominium and related parties and the stipulation for settlement therein. The 14 day Stay period pursuant to Bankruptcy Rule 4001(a)(3) is waived. No property of the estate will be affected by this Order".

In the case of *Real Estate Holdings Group, vs. Spencer Condominium* No. 159254/2013 in July 27, 2016, Real Estate Holdings Group, L.D.C. ("REHG") Owner of The New York Condominium filed an Order to Show Cause to enforce the confidential Stipulation of settlement executed by the parties in March 2015. In March 2, 2017, Honorable Judge Singh granted Plaintiff REHG's Motion to enforce the Confidential Settlement with Spencer Condominium as the stay has been vacated and ordered the parties to comply with the terms of the settlement within 30 days of the Order. The matter was adjourned to April 25, 2017 (2:30pm) to monitor compliance.

On April 25, 2017 Honorable New York Supreme Judge Singh granted the Plaintiff REHG's Motion to enforce the terms of the settlement agreement dated 3/2015 and ruled as follows: "After a conference held today the Court finds that all parties are in compliance with the terms of stipulation dated 3/2015."

In the case of *Board of Managers of Spencer Condominium v. Elizabeth Hazan* No. 109083/2008 Spencer has obtained an award in the amount of $109,554.86. This award was never converted to a judgment entered or recorded in any court. However the parties have agreed that this amount of alleged money owed by the Debtor to Spencer prior to her transfer of ownership of the New York condo in 2011 over six years ago shall be paid by REHG and not by the Debtor in the plan. Spencer has no standing to object to the Debtor's plan or object to her confirmation and is bound by their confidential Stipulation of Settlement executed on March 2015 and enforced by New York Judge Singh in April 25, 2017.

### Reorganization

The Debtor intends to reorganize her debts and liabilities through a combination of: (a) negotiating and/or litigating as may be necessary, resolutions with certain secured and unsecured creditors; and (b) making distributions funded by her assets and income from her consulting work, or if necessary, refinancing and contributions from her husband's companies.

To date, the Debtor's efforts have focused on negotiating resolutions with several creditors, litigating with two other creditors, conferring with counsel to begin formulating the structure and terms of a proposed Plan, and expanding her consulting income for the eventual benefit of her estate and creditors.

E.    **Significant Events During the Bankruptcy Case**

\*    Date of Order for Relief under Chapter 11 on 1/11/16.

\*    Meeting of Creditors Chapter 11 held on 2/17/16 at 2PM.

\*    Deadline for complaint re dischargeability was 4/18/16.

* Professionals approved by the court
  Geoffrey Aaronson appointed 5/3/16 DE 85 nunc pro tunc to petition date.
  Joel Arestywas substituted as counsel for Debtor in Possession on 7/29/2016 (D.E. 126).
  David W. Langley entered an appearance as counsel for the Debtor on 9/6/2016 and was approved by the Court on October 19, 2016.

* Contested claim disallowance proceedings: pending; see claim treatments.

* Claims bar, proofs of claim due 5/17/16; For a governmental unit: 7/11/16

* Debtor hasmanaged her affairs to enhance the value of her assets. Post petition, the bankruptcy filing, has allowed Debtor toreorganize allowing Debtor to propose a plan for payment of creditors.

*

**ADVERSARY PROCEEDINGS** *Selective Advisors and Elizabeth Hazan v. NLG, LLC,* **Adv. Case No. 16-1439-AJC**

On August 21, 2016 Selective filed an Adv. Case No. 16-1439-AJC D.E.1. On 10/21/2016 Debtor moved to amend the Complaint to add Debtor, Liza Hazan as Plaintiff. On October 20, 2016. D.E.8. NLG filed their answer and their counterclaims. D.E5 and D.E 6.

On 11/08/16 Plaintiffs Selective and Hazan filed their motions to dismiss Count I and Count II of NLGos counterclaims and Motion for Judgment on the pleading D.E. 11 and D.E. 12. On December 6, 2016 Plaintiffs Selective and Hazan filed their Motion for leave to file Amended Complaint against NLG to add a count under Florida Statute § 65.08and Florida Statute § 65.011for quieting title and a count for damages. D.E. 32. On December 19, 2016 This Court ordered the parties to submit Orders on Plaintiffso motions to dismiss NLGos counterclaims and Plaintiffsø motions for Judgment on the Pleadings. In December 23, 2016 Debtor Hazan amended her Complaint to add additional Counts D.E. 40. In 12/30/2016 This Court entered an Order granting Plaintiffos Motion to amend and allowing Second Amended Complaint. On January 3, 2017 Plaintiffs filed their Second Motion to Amend Complaint to add additional Tort claims, D.E 47 and D.E 48, adding additional torts.

On 01/13/17 NLGøs counsel, Michael Friedman, filed his expedited Motion to Withdraw as attorney of record for NLG citing irreconcilable differences D.E 54. In 01/23/17 thisCourt granted Michael Friedmanøs Motion to Withdraw, D.E 61, andalso granted Plaintiffs Selective and Hazanøs Second Motion to amend Complaint. D.E 62.

On 02/22/17 NLGøs third counsel filed his notice of appearance - James Miller, D.E.75. On 03/01/17 NLGøs third counsel filed his expedited motion to withdraw citing once again irreconcilable differences and also filed his motion to allow NLG to extend time to meet the Courtøs deadlines. D.E. 76. On 03/03/2017 Plaintiffs Selective and Hazan filed their Motion for Default against NLG for failing to answer Plaintiffsø Third Amended Complaint. D.E. 85.On 03/10/17 this court denied NLGøs motion to extend time. D.E. 94.

On 03/17/17 this Court granted in part Plaintifføs Motion for Default against Defendant NLG and denied Plaintiffsø motion for judgment on pleadings as moot because of the subsequent

filings and amendments. This Court granted a Default in favor of Plaintiffs and against Defendant NLG and ruled as follows:

> The Court also finds that the withdrawal and retention of multiple counsel by theDefendant does not constitute õcauseö or õexcusable neglectö warrantingan extension of time to comply with filing requirements. The Court set deadlines in this case for the filing of pleadings, specifically the filing of aresponsivepleading to the second amended complaint; but the Defendant did not meet those deadlines and has failed to demonstrate sufficient cause existsto extend those deadlines. Accordingly, the Court believes the Plaintiff is entitled to a defaultí öD.E 100.

NLG moved to vacate the default in March 24, 2017 (D.E. 104). The Court denied the Motion on April 20, 2017 (D.E. 112).

Former counsel for NLG (its fourth) filed an Expedited Motion to Withdraw on May 4, 2017. This follows an expedited Motion to Withdraw filed by prior counsel, James Miller, in March 1, 2017 which followed an Expedited Motion to Withdraw filed by the Genovese firm on January 12, 2017. NLGøs initial counsel moved to withdraw in the main case on September 12, 2016.

The default against NLG, LLC was set aside in May 8, 2017 D.E 132 and the Court entered an order setting the matter for trial in July 13, 2017. The Trial in the Adversary proceedings 16-10389-AJC was concluded on July 13, 2017 and Proposed Orders by all parties were submitted on August 14, 2017.

In November 1, 2017 Honorable Judge AJ Cristol issued Final Judgment on Counts I, II and III of Plaintiffsø Selective and Liza Hazan aka Elizabeth Hazan Third Amended Complaint and NLGøs Amended Counterclaim as follows:

õThe Scola Judgment obtained by NLG against the Debtor, and all rights, claims and benefits held by NLG against Debtor related to said Judgment, were judicially assigned to Selective pursuant to the Lopez Assignment Order, and the right to foreclose securing the debt traveled to the assignee Selective. Although NLGøs right to foreclose against Hazan, as established by the Third District of Appeal, had been assigned to Selective,the Gordo Foreclosure Judgment granted NLG the right to foreclose, Assuming the validity of the Gordo Foreclosure Judgment, the Debtor exercised her right to redeem the property by satisfying said judgment prior to the foreclosure sale. Satisfactions of the Note and Mortgage are recorded in the official records and several courts have recognized that Debtorøs Debt to NLG has been paid, including the New York State Supreme courts, wherein Judge Jaffe found that NLGøs judgment on the Note, the Scola Judgment, was judicially assigned to Selective and was thereafter satisfied. Upon satisfaction, NLG was credited for the Scola Judgment and Mortgage to partially satisfy NLGøs debt to Selective under the domesticated Quebec Judgment.

The Court believes that credit should, however, be adjusted to reflect the amounts determined to be due and owing by the Gordo Foreclosure. NLG was owed $4,876,654.29 from Hazan on account of the Note and Mortgage, pursuant to the Gordo Final Judgment. Giving full faith and credit to the Gordo Foreclosure Judgment and viewing the amount determined in the judgment to

be the greater amount NLG established it was owed for the Note and Mortgage pursuant to the Lopez Assignment Order, Selective should give credit to NLG for $4,878,654.29, which credit will leave the mortgage redeemed.

This Court concludes that NLG has no further rights to any claims against Debtor with respect to the Note and Mortgage, as the public records of Miami-Dade County reflect that the Scola Judgment and consequently the Mortgage were assigned and satisfied, and the property fully redeemed prior to foreclosure sale, as provided in the Gordo case, as provided in the Gordo foreclosure sale, as provided in the Gordo Foreclosure Judgment. NLG's Proof of Claim #17, having been filed after the bar date, it is disallowed and the Court finds that NLG has no standing in this case based upon the note, claim or lien emanating therefrom. Accordingly it is

ORDERED AND ADJUDGED that Count I, II and III of Plaintiff's Third Amended Complaint and NLG's Amended Counterclaim are GRANTED IN PART AND DENIED IN PART as follows:

1.  NLG, LLC's judgment on the promissory note, the Scola Judgment, recorded at Book 26406, Page 3259-3260, CFN2008R0446831, also recorded at Book 26357 Pages 3948-3949 CFN20080361591, the Note and the Mortgage recorded at Book 25559 Pages 4266-4272 CFN2007R0410013, NLG, LLC's foreclosure Judgment entered in favor of NLG and against CFN200R0410013 NLG, LLC's foreclosure Judgment entered in favor of NLG and against Elizabeth Hazan on December 4, 2015, the Gordo Foreclosure Judgment recorded at Book 29902 Pages 3737-3742 CFN20150812181 affecting Debtor's homestead Property known as 6913 Valencia Drive, Miami Florida 33109 with the following legal description:

     LOT 7, Block 2, LINDISFARNE ON FISHER ISLAND SECTION 10 according to the Plat thereof, recorded in PLAT Book 157 Page 64, of the Public Records of Miami-Dade County, Florida.

have been satisfied and paid, and are deemed **SATISFIED OF RECORD** and Debtor hasgood title to said Property against the claims or purported claims by, through, under, oragainst it by NLG, LLC and the title to the property is forever quieted as to all claims ofNLG, LLC.

2.  Selective shall give credit to NLG, LLC in the amount of $4,876,654.29 toward NLG'soutstanding debt to Selective pursuant to the Quebec Judgment.

3.  NLG's proof of claim #17 is disallowed and NLG, LLC has no claim against the Debtor Liza Hazan a/k/a Elizabeth Hazan under the Note, Mortgage or any court order.

4. Counts IV, V, VI, VIII, and IX of Plaintiff's Third Amended Complaint are set for trial by separate order.ö


**Valencia Estates Homeowners' Association**

The Debtor has entered into a Stipulation for Settlement with Valencia Estates Homeowners Association, Inc. The Debtor has agreed to approval of the stipulation by this Court and the Association has agreed to support the Debtor's reorganization.

F.      **Projected Recovery of Avoidable Transfers**

The Debtor has completed her investigation with regard to prepetition transactions.

11 USC 547(b) preferences limits the look back for an insider preference to one year. Florida statute726.106(2) likewise has a one year limitation.

11 USC 548 fraudulent transfers has a two year look back, and incorporates Florida Statute 726 whichhas a four year look back, but only as to avoidance for intentional hinder delay or fraud, or lack of reasonableequivalent value, which facts are not relevant to the plan in this case.

**The Internal Revenue Service has filed a Proof of Claim in this case. The statute of limitations for the IRS to contest a transfer is ten years and has not yet run. IRS has not challenged any transfers in this case and has not appeared in the case other than to file of a Proof of Claim. Debtor transferred the New York Condominium more than six years ago, in August, 2011.The Debtor contends that the New York Condominium had no equity at the time of the transfer.**

G.      **Claims Objections**

The Debtor has not completed claim objections but the current plan reflects the objectionscontemplated.

H.      **Current and Historical Financial Conditions**

The identity and fair market value of the estate's assets are listed in an Exhibit A and B to thisstatement. Debtor is the source of this information and Debtor's experience with her assets is the basis of valuation.

Debtor's income based on consulting is not a regular monthly income which wouldlend itself to making monthly payments. Debtor's income, while significant, is sporadic, as a result of which payments are proposed on quarterly or bi-yearly basis.

I. Taxes

Debtor has tax liabilities as evidenced by priority claim in plan Class 1.

III.    **SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITYINTERESTS**

A.      **What is the Purpose of the Plan of Reorganization?**

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

B.    **Unclassified Claims**

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan Proponent has *not* placed the following claims in any class:

1.    *Administrative Expenses*

Administrative expenses are costs or expenses of administering the Debtor's Chapter 11 case which are allowed under §507(a)(2) of the Code. Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

2.    *Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by §507(a)(8) of the Code. Unless the holder of such a §507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

See class 1 below

C.    **Classes of Claims and Equity Interests**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

*Classes of Priority Unsecured Claims*

Certain priority claims that are referred to in §§507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a claim receive cash on the effective date of the Plan equal to the allowed amount of such claim. However, a class of holders of such claims may vote to accept different treatment.

The following chart lists all classes containing claims under §§507(a)(1), (4), (5), (6), and (a)(7) of the Code and their proposed treatment under the Plan:

*Classes of Secured Claims*

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under §506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will [be classified as a general unsecured claim].

The following chart lists all classes containing Debtor's secured prepetition claims and their proposed treatment under the Plan:

General unsecured claims are not secured by property of the estate and are not entitled to priority under §507(a) of the Code.

The following chart identifies the Plan's proposed treatment of Class contains general unsecured claims against the Debtor:

*Class[es] of Equity Interest Holders*

Equity interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor. With respect to an individual who is a debtor, the Debtor is the equity interest holder.

| Admin | Description | Treatment |
|---|---|---|
| | Geoffrey Aaronson | Mr. Aaronson has agreed to accept payment in the amount of $142,686.86 in fees and $2,313.13 in costs reimbursement, from a third party in full satisfaction of this claim.<br><br>SETTLED |
| | Joel Aresty | Attorney Joel Aresty has agreed to accept $35,000.00 in fees and $1,500.00 in costs payable as follows: $3000 within 5 days of entry of Order Approving Settlement followed by 19 payments of $1500 starting May 1, 2016 and an additional $5000 at confirmation. Stipulation |

| | | |
|---|---|---|
| | | amended between the parties on November 1, 2017. Monthly payments in the amount of $1000 starting on November 1, 2017 Remaining Balance owed $28,000.<br><br>SETTLED |
| | David W. Langley | Paid as awarded or agreed. |
| | US Trustee | paid in full at confirmation |

**Priority Claims**

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 1 | **IRS**<br><br>**Claim #3** | yes | The $24,663.00 priority tax claim will be paid within five years of the petition date. Equal Payments of $2,674.34 every six months to include interest on anyunpaid claim amounts after theeffective date of the plan at 3%. |

**Secured Claims**

**6913 Valencia Drive Property Fisher Island Florida**

| 2 | **Chase Bank** | | yes | **First Secured Mortgage –**<br>The claim bar date has passed in this case, and Chase has not filed a Proof Of Claim.   Chase was scheduled as |

disputed, contingent and unliquidated.

The Original note in the amount of $3,825,000.00 signed by Debtor on March 2007 in favor of Washington Mutual Bank. Chase Bank filed an Assignment of mortgage on 5/26/16 alleging an interest in the loan. Debtor has obtained stay relief on November 16, 2016 to continue State Court litigation regarding the alleged default, ownership of the loan and standing issues.  If the State Court enters a final order finding and determining the validity, amount and enforceability of the mortgage and the assignment thereof, Debtor shall commence making payments of principal and interest on the balance found by a court of competent jurisdiction to be due and owing, at the interest rate provided in the loan documents amortized over the remaining original term of the loan (maturity date 2051) commencing 30 days after the State Court Order becomes final.

Pending adjudication of Chase's alleged interest in the loan and the subject property Chase shall have adequate protection in the form of an equity cushion that exceeds the amount of the loan.  See *In re DiMaria*, 202 B.R. 634 (S.D. Fla 1996).

**Chase has agreed to withdraw all objection to this Disclosure Statement and the Debtor has agreed that any objections to confirmation are preserved.**

| | | | | |
|---|---|---|---|---|
| | | | yes | Selective Advisors Group, LLC ("Selective") is the rightful assignee of the satisfied second mortgage previously held by NLG ("NLG"). Selective is the rightful assignee of the satisfied promissory Note, Mortgage and Judgment previously held by NLG gainstThe Debtor in the amount of $1,618,068.00 plus interest at 11% per annum ("the Scola Judgment") from April 28, 2008,<br><br>Selective has recorded a Satisfaction of this Mortgage and Judgment against the Debtor and her property on August 20, 2014 and August 21, 2014.per the Final Order of Assignment of Hon. Judge Peter Lopez entered on August 20, 2014. |
| 3 | **<u>Selective Advisors Group, LLC</u>** | | yes | On August 21, 2016, Selective sued NLGin this bankruptcy Court**ADVERSARY PROCEEDINGS** *Selective Advisors and Elizabeth Hazan v. NLG, LLC,* **Adv. Case No. 16-1439-AJC** for avoidance of NLG's alleged claimed lien on Debtor's Homestead property on Valencia Drive Fisher Island Florida. On January3, 2016 Hazan, additional Plaintiff and Selective filed their Motion to amend theirComplaint to add a count seeking to Quiet Title to the property, and a number oftort claims,which motion was granted on January 23, 2016.<br><br>The Trial in the Adversary proceedings 16-10389-AJC was concluded on July 13, 2017 and Proposed Orders by all parties were submitted on August 14, 2017. |

In November 1, 2017 Honorable Judge AJ Cristolissued Final Judgment on Counts I, II and III of Plaintiffsø Selective and Liza Hazan aka Elizabeth Hazan Third Amended Complaint and NLGøs Amended Counterclaim as follows:

ðThe Scola Judgment obtained by NLG against the Debtor, and all rights, claims and benefits held by NLG against Debtor related to said Judgment, were judicially assigned to Selective pursuant to the Lopez Assignment Order, and the right to foreclose securing the debt traveled to the assignee Selective . Although NLGøs right to foreclose against Hazan, as established by the Third District of Appeal, had been assigned to Selective, the Gordo Foreclosure Judgment granted NLG the right to foreclose, Assuming the validity of the Gordo Foreclosure Judgment, the Debtor exercised her right to redeem the property by satisfying said judgment prior to the foreclosure sale. Satisfactions of the Note and Mortgage are recorded in the official records and several courts have recognized that Debtorøs Debt to NLG has been paid, including the New York State Supreme courts, wherein Judge Jaffe found that NLGøs judgment on the Note, the Scola Judgment, was judicially assigned to Selective and was thereafter satisfied. Upon satisfaction, NLG was credited for the Scola Judgment and Mortgage to partially satisfy NLGøs debt to Selective under the domesticated Quebec Judgment.

The Court believes that credit should, however, be adjusted to reflect the amounts determined to be due and

owing by the Gordo Foreclosure. NLG was owed $4,876,654.29 from Hazan on account of the Note and Mortgage, pursuant to the Gordo Final Judgment. Giving full faith and credit to the Gordo Foreclosure Judgment and viewing the amount determined in the judgment to be the greater amount NLG established it was owed for the Note and Mortgage pursuant to the Lopez Assignment Order, Selective should give credit to NLG for $4,878,654.29, which credit will leave the mortgage redeemed.

This Court concludes that NLG has no further rights to any claims against Debtor with respect to the Note and Mortgage, as the public records of Miami-Dade County reflect that the Scola Judgment and consequently the Mortgage were assigned and satisfied, and the property fully redeemed prior to foreclosure sale, as provided in the Gordo case, as provided in the Gordo foreclosure sale, as provided in the Gordo Foreclosure Judgment. NLG's Proof of Claim #17, having been filed after the bar date., it is disallowed and the Court finds that NLG has no staning in this case based upon the note, claim or lien emanating therefrom. Accordingly it is

ORDERED AND ADJUDGED that Count I, II and III of Plaintiff's Third Amended Complaint and NLG's Amended Counterclaim are GRANTED IN PART AND DENIED IN PART as follows:

1. NLG, LLC's judgment on the promissory note, the Scola Judgment, recorded at Book 26406, Page 3259-3260,

CFN2008R0446831, also recorded at Book 26357 Pages 3948-3949 CFN20080361591, the Note and the Mortgage recorded at Book 25559 Pages 4266-4272 CFN2007R0410013, NLG, LLC's foreclosure Judgment entered in favor of NLG and against CFN200R0410013 NLG, LLC's foreclosure Judgment entered in favor of NLG and against Elizabeth Hazan on December 4, 2015, the Gordo Foreclosure Judgment recorded at Book 29902 Pages 3737-3742 CFN20150812181 affecting Debtor's homestead Property known as 6913 Valencia Drive, Miami Florida 33109 with the following legal description:

LOT 7, Block 2, LINDISFARNE ON FISHER ISLAND SECTION 10according to the Plat thereof, recorded in PLAT Book 157 Page 64, of the Public Records of Miami-Dade County, Florida.

have been satisfied and paid, and are deemed **SATISFIED OF RECORD** and Debtor has good title to said Property against the claims or purported claims by, through, under, or against it by NLG, LLC and the title to the property is forever quieted as to all claims of NLG, LLC.

2. Selective shall give credit to NLG, LLC in the amount of $4,876,654.29 toward NLG's outstanding debt to Selective pursuant to the

| | | | | |
|---|---|---|---|---|
| | | | | Quebec Judgment.<br><br>3.  NLGøs proof of claim #17 is disallowed and NLG, LLC has no claim against the Debtor Liza Hazan a/k/a Elizabeth Hazan under the Note, Mortgage or any court order.<br><br>4. Counts IV, V, VI, VIII, and IX of Plaintifføs Third Amended Complaint are set for trial by separate order.ö . |
| 4 | **6913 Valencia LLC** | | yes | **<u>Second Secured Mortgage</u>** in the amount of $2,000.000.00 plus accrued interest from March 14, 2012.<br><br>The Debtor does not contest the validity or extent of 6913 Valencia LLCøs Mortgage on her Homestead property claim.<br><br>Insider claim will subordinate and not be paid until all other allowed claimsbut reserves right to vote for the plan |
| 5 | **<u>Valencia Estates Community Assn, Inc claim #10</u>** | | yes | **<u>Valencia Estates Community Association's ("Valencia")</u>**Claim#10 in the amount of $195,072.14. Treated in settlement as follows:<br><br>1.  Debtor paid $2,193.17 Aug 17, 2016 for due maintenance.<br><br>2.  Debtor has paid 4 months in advance for September, October, November and December 2016 assessments for a total amount of $4,484.00as per the Stipulation.<br><br>3. Debtor has paidthe 2016 special assessment in the amount of |

$6250.00 as per the Stipulation.

4. The Parties agreed that Claim Number 10 shall be paid in the amount of $195,000.00 with 3.5% interest in the Chapter 11 Plan, over forty-eight (48) months, with one payment on the Effective Date of $4,062.00, and payments every five (5) months thereafter in the amount of $20,312.50 following the Effective Date until paid in full, with the interest payments to be made annually on the twelfth month.

**Valencia Estates Community Association, Incwithdrew its objections to Debtor's disclosure and has agreed to vote for Debtor's plan**.

## Claim settled.

Agreed Order Approving Stipulation of Settlement of Claim # 10 filed by Valencia Estates Homeowners' Association entered on 11/18/16 D.E 302.

All Valencia's post petitions regular assessments and special assessment in 2016 have all been paid and are current.

A Post petition special assessment dated on September 15, 2017 to be paid as follows: $1,041.66 every month in addition to the monthly assessments starting at confirmation date for a period of five years.

In October, 2017, Debtor incurred

| | | | | |
|---|---|---|---|---|
| | | | | substantial damages caused jointly and severally by both Fisher Island Community Association Inc("FICA") and Valencia Estates Community Association Inc("VALENCIA") to her homestead property fence. TheDebtor's Homestead residence is damaged and the fence needs to be completely removed and replaced. Debtor is planning to bring an action for damages against Fisher Island Community Association Inc and Valencia Estates Community Association Inc jointly and severally. This will offset some or the entirety of Valencia's post-petitionspecial assessment in the amount of $62,500.00 assessed on September 15, 2017 and also offset the FICA's post petitions assessments in the amount of $46,555.48. |
| 6 | **Fisher Island Community Ass'n, Inc Claim #18** | | yes | FICA's Late filed Proof Of Claim in the amount of $216,278.97 in 10/20/16 –**Disputed by Debtor and Disallowed by this Court.**<br><br>The Debtor has filed an objection to the amount of the Claim challenging Fisher Island's standing as a "party in interest." In re E.S. Bankest, L.C. 321 B.R. 590 (Bankr. S.D. Fla. 2005). Fisher Island Community Association, Inc. did not timely file a Proof Of Claim and its Motion to Allow a Late Filed Claim has been deniedin November 16, 2016.<br><br>Claimant  3343  West  Commercial |

Blvd. 100 (Fisher Island Community Association).

Order granting Fisher Island Community Association, Inc.øs Motion for relief from Stay entered on 11/23/16

**Claim Disallowed Claim by this Court.No payment through Plan.**

**Debtor plans to reinstate stay and pay thenet amount if any of all FisherIsland Community Association's post petitions feesin the amount of $46,555.48 less the damages caused to Debtor by FICAand Valencia (more explained below) after the filing of the petition at confirmation date. Debtor will obtain a discharge for all the prepetition fees.**

In October, 2017, Debtor incurred substantial damages caused jointly and severally by both Fisher Island Community Association Inc (õFICAö) and Valencia Estates Community Association Inc (õVALENCIAö) to her homestead propertyøs fence on Fisher Island. The Debtor Homestead residenceøs fence is substantially damaged and needs to be completely removed and replaced. Debtor is planning to bring an action for damages against FICA and VALENCIA. This will offset some or the entirety of Valenciaøs post petition special assessment in the amount of $62,500 assessed on September 15, 2017 and also offset the FICAøs post petitions assessments in the amount of

| Class # | Description | Insider | Impairment | Treatment |
|---------|-------------|---------|------------|-----------|
| | | | | $46,555.48.<br><br>        FICA has also caused substantial damages to the Debtor by denying access to all Debtor's guests and all business associates for years and has singled out the Debtor for many years. FICA has enjoined the Debtor to enjoy her home and conduct business. FICA has also endangered the Debtor's life by allowing access to the alleged principal of NLG, LLC a former creditor of the debtor, on Fisher Islandwho has caused Debtor harassment, trespassing her home,intimidation and caused Debtor additional damages that will be set for trial at a later date in **ADVERSARY PROCEEDINGS** *Selective Advisors and Elizabeth Hazan v. NLG, LLC,* Adv. Case No. 16-1439-AJC |
| 7 | **Miami-Dade Water andSewer claim #7** | no | yes | **Claim #7 $1502.54 to be paid on the EffectiveDate of The Plan** |
| 8 | **IRS claim #3** | no | yes | $393,985.17 - Secured claim shall be paidover ten years with interest Equal paymentsin the amount of $22,948.00 every 6 months to include interest on anyunpaid claim amounts after the effectivedate of the plan at 3%. |
| 9 | **Miami-Dade County Tax Collector Claim #6** | no | yes | $57649.47 Miami-Dade County Tax Collector Secured claim on 6913 Valencia Drive property Fisher Island FL 33109 has been paid in full.<br><br>**Claim #6  paid in full**. |

**Other Disputed Claims**

| Class # | Description | Insider | Impairment | Treatment |
|---------|-------------|---------|------------|-----------|

| | | | | |
|---|---|---|---|---|
| 10 | **Real Time Resolutions, Inc claim #8** | no | yes | Claim #8 in the amount of $322,846.72 allegedly secured second mortgage Line of credit on property located at 1 East 62nd Street Apt 1 A NYC NY 10065 is disputed by Debtor.<br><br>Alleged Creditor has agreed to complete stay relief in settlement of this claim in this case and has agreed tosupport Debtor's plan of reorganization and vote the entire amount of its alleged claim in favor of Debtor's plan. (ECF 163)<br><br>**Claim settled.** |

| Class # | Description | Insider | Impairment | Treatment |
|---|---|---|---|---|
| 11 | **Board of Managers Spencer Condominium claim #14** | no | yes | The Debtor disputes the Claim#14 filed by The Board of ManagersSpencer Condominium ("Spencer"). The parties reached a Confidential Stipulation Of Settlement in March 2015 in New York.TheDebtor is only personally liable for the amount of $109,554.86 representing the alleged disputed outstanding maintenance feesowed by Debtor prior to her transfer of ownership of the property located at 1 East 62nd Street Apt 1 A NYC NY 10065.This amount will be paid by Real Estate Holdings Group, L.D.C. ("REHG"),the owner of the |

New York condominium located at 1 East 62nd Street Apt 1A, New York, NY 10065. REHG, Spencer and Debtor Hazan and other parties are bound by the Confidential Stipulation of Settlementexecuted in March 2015 (õSettlementö).The vast remaining portion of the Spencer Condo Boardof Managersø claimis to be paid by the owner of the unit,REHG,per the Settlement executedin March 2015 by the parties.

**On March 1, 2017 this Court granted Debtor's Motion for Stay relief, allowingtheNew York Court toexercise jurisdiction over and enforce the confidential Settlement Agreement.**

**On March 2, 2017, New York Supreme Court Judge Singh granted REHG's Motion to Enforce TheConfidential Stipulation entered in March 2015 between the parties.**

On April 25, 2017 Honorable New York Supreme Judge Singh ordered that the Plaintiff REHGø Motion to enforce the terms of the settlement agreement dated 3/2015 is granted . õAfter a conference held today the Court finds that all parties

| | | | | |
|---|---|---|---|---|
| | | | | are in compliance with the terms of stipulation dated 3/2015.õ

The Deadline for *Board of Managers of Spencer Condominium* toFile Complaint to determine the Debtorøs Dischargeability of Certain Debt has expired.


**No payment through the plan. Claim settled.**

**SETTLEMENT ENFORCED BY NEW YORK COURT** |

**Convenience Class Undisputed Unsecured Small Claims**

**Paid in full on the Effective Dateat confirmation**

| **Class #** | **Description** | **Insider? (Yes or No)** | **Impairment** | **Treatment** |
|---|---|---|---|---|
| 12 | IRS Claim #3 | no | | 1085.00 |
| | American InfoSource T Mobile Claim #2 | no | | 1130.00 |
| | American InfoSource Direct TV Claim # 9 | no | | 461.00 |
| | FPL Claim #11 | no | | 2906.93 |
| | Mount Sinai | no | | 3,240.00 |
| | Mount Sinai | no | | 295.91 |
| | HSBC Bank USA NA | no | | 1070.66 |
| | Sterling Emerg Svc | no | | 2445.30 |

| | | | |
|---|---|---|---|
| | Bank of America NA has waived all prepetition fees | no | 0.00 |
| | Wells Fargo Claim #12 | no | 323.24 |
| | Real Time Resolutions (ðRTRö) Claim #5 Although Debtor settled this claim for $12,000 after misrepresentations made by alleged creditor Real Time Resolutions that it had a valid claim. Debtor,afterfurther investigation has determined that the statute of limitations has run and that Claim #5 is not a valid claim. Real time Resolutions has sued the debtor in case 08-47664 CA 32 in Miami-Dade County Court in October 21, 2008. The case 08-47664 CA 32 was dismissed in for lack of prosecution on January 08, 2010. The Statute of limitations has run. | no | 0.00 |
| | **S&S Collections Simon &Sigalos claim #13 partial paid amount $1740.96** | no | 0.00 |
| | Total | | 12958.04 |

**Settled Unsecured Claims**

**Allowed Undisputed Unsecured Claims**

| Class # | Description | Insider? (Yes or No) | Impaired | Treatment | |
|---|---|---|---|---|---|
| 13 | JMB Urban 900 Dev. claim #4* | no | X | Claim # 4 in the amount of $664,380.47. Claim # 4 will be paid 41% of the amount or 275,000.00 per settlement before the second anniversary of the entry of the agreed final judgment on or before July 20, 2018 in favor of JMBin case **Adversary proceedings 16-01188-AJC. Adversary proceeding case closed on 7/22/16 and Case settled 16-01188-AJC. DOC 21 Case 16-01188-AJC Order approving  agreed final Judgment in favor of JMB entered on July 20, 2016..**

**CLAIM SETTLED** | |
| | S&S Collections Simon &Sigalos claim #13 | no | X | Claim # 13 in the amount of$21,242 **Claim settled** for 41% $8,709.22.Amount of $1740.96 moved to convenience class. Amount of $1740.96 paid by third party on July 10, 2017. Remaining balance owed $6,968.04 to be paid same treatment as JMB.

**CLAIM SETTLED** | |

| | | | | |
|---|---|---|---|---|
| | **Southeast Financial LLC** | **no** | **X** | Stipulation Of Settlement DE 98 approved by this Court DE 101.<br><br>Vehicle owned by Holdings Trust Management Group LLC. Southeast Financial LLC's Secured Lien is guaranteed by the Debtor.<br><br>Secured claim allowed $17,000 value to be paid at 5.25% for 48 months payments in the amount of $393 began on August 1, 2016 and are current.<br><br>CLAIM SETTLED |
| | | | | |

## Disputed Unsecured Claims

## not paid until and unless allowed

## and then paid within 5 years after confirmation

| | | | | |
|---|---|---|---|---|
| | **Cross & Simon Claim #1** | no | | Claim #1 in the amount of $11,023.83 Legal Bill for corporation other than Debtor.<br><br>**Unallowed claim.**<br><br>**No payment through Plan** |

| | | | | |
|---|---|---|---|---|
| | | | | |
| | **Newman Ferrara LLP claim #15** | no | | Claim #15 in the amount of $24,818.44 Legal bill Legal work for Corporation other than the Debtor.<br><br>**The Claims bar date has passed. No payment through plan. Unallowed claim.** |

| | | | | |
|---|---|---|---|---|
| | | | | |
| | **FuerstIttleman David & Joseph, P.L.** <br><br> **Claim #16** | **no** | | Disputed Proof of Claim filed after Claim Bar Date. FuerstIttleman David & Joseph, P.L. is not a creditor of this Debtor. Debtor has filed an objection to this claim. FuerstIttlemanDavid & Joseph, P.L. have agreed that they are not a creditor of this estate. <br><br> **No payment through plan.Unallowed Claim.** |

**Unsecured Scheduled Disputed and No Claim Filed**

**Therefore Disallowed**

| | |
|---|---|
| Allied Collection | 318 |
| ATT Mobility | 3919 |
| First National Collection | 246.08 |
| Focus Mgt | 772 |
| Marzec Law Firm | 0 |
| Mount Sinai Medical | 31414.15 |
| Ray Garcia PA | 7026.15 |
| Verizon | 1758 |
| US Bank NA | Unknown <br><br> The Debtor entered into a Stipulation of Settlement with US Bank NA (D.E. 345) granting the parties complete stay relief which was approved by the Court by Order dated 1/18/2017, D.E. 371. |

| | |
|---|---|
| | US Bank did not file a proof of claim and will not be paid through the Plan. |
| NLG, LLC | NLG, LLC did not timely file a proof of claim and**NLG, LLC's alleged Claim has been judicially** assigned per The Final Order entered by Judge Peter Lopez on August 2014. **NLG, LLC will not be paid through the Plan**.<br><br>NLG, LLC has no standing in this case and is not a creditor of the Debtor's Estate.<br><br>NLG appeared in this case but failed to timely file a proof of claim. NLG, LLC is merely a notice party. NLG, LLC is not a secured creditor in this case. Selective Advisors Group, LLC ("Selective"), is listed in Debtor's schedule as her creditor.<br><br>The Trial in the Adversary proceedings 16-10389-AJC was concluded on July 13, 2017 and Proposed Orders by all parties were submittedon August 15, 2017.<br><br>In November 1, 2017 Honorable Judge AJ Cristol issued Final Judgment on Counts I, II and III of Plaintiffs' Selective and Liza Hazan aka Elizabeth Hazan Third Amended Complaint and NLG's Amended Counterclaim as follows:<br><br>"The Scola Judgment obtained by NLG against the Debtor, and all rights, claims and benefits held by NLG against Debtor related to said Judgment, were judicially assigned to Selective pursuant to the Lopez Assignment Order, and the right to foreclose securing the debt traveled to the assignee Selective . Although NLG's right to foreclose against Hazan, as established by the Third District of Appeal, had been assigned to Selective, the Gordo Foreclosure Judgment granted NLG the right to foreclose, Assuming the validity of the Gordo Foreclosure Judgment, the Debtor exercised her right to redeem the property by |

satisfying said judgment prior to the foreclosure sale. Satisfactions of the Note and Mortgage are recorded in the official records and several courts have recognized that Debtor's Debt to NLG has been paid, including the New York State Supreme courts, wherein Judge Jaffe found that NLG's judgment on the Note, the Scola Judgment, was judicially assigned to Selective and was thereafter satisfied. Upon satisfaction, NLG was credited for the Scola Judgment and Mortgage to partially satisfy NLG's debt to Selective under the domesticated Quebec Judgment.

The Court believes that credit should, however, be adjusted to reflect the amounts determined to be due and owing by the Gordo Foreclosure. NLG was owed $4,876,654.29 from Hazan on account of the Note and Mortgage, pursuant to the Gordo Final Judgment. Giving full faith and credit to the Gordo Foreclosure Judgment and viewing the amount determined in the judgment to be the greater amount NLG established it was owed for the Note and Mortgage pursuant to the Lopez Assignment Order, Selective should give credit to NLG for $4,878,654.29, which credit will leave the mortgage redeemed.

This Court concludes that NLG has no further rights to any claims against Debtor with respect to the Note and Mortgage, as the public records of Miami-Dade County reflect that the Scola Judgment and consequently the Mortgage were assigned and satisfied, and the property fully redeemed prior to foreclosure sale, as provided in the Gordo case, as provided in the Gordo foreclosure sale, as provided in the Gordo Foreclosure Judgment. NLG's Proof of Claim #17, having been filed after the bar date., it is disallowed and the Court finds that NLG has no standing in this case based upon the note, claim or lien emanating therefrom. Accordingly it is

ORDERED AND ADJUDGED that Count I, II

and III of Plaintiff's Third Amended Complaint and NLG's Amended Counterclaim are GRANTED IN PART AND DENIED IN PART as follows:

1. NLG, LLC's judgment on the promissory note, the Scola Judgment, recorded at Book 26406, Page 3259-3260, CFN2008R0446831, also recorded at Book 26357 Pages 3948-3949 CFN20080361591, the Note and the Mortgage recorded at Book 25559 Pages 4266-4272 CFN2007R0410013, NLG, LLC's foreclosure Judgment entered in favor of NLG and against CFN200R0410013 NLG, LLC's foreclosure Judgment entered in favor of NLG and against Elizabeth Hazan on December 4, 2015, the Gordo Foreclosure Judgment recorded at Book 29902 Pages 3737-3742 CFN20150812181 affecting Debtor's homestead Property known as 6913 Valencia Drive, Miami Florida 33109 with the following legal description:

    LOT 7, Block 2, LINDISFARNE ON FISHER ISLAND SECTION 10 according to the Plat thereof, recorded in PLAT Book 157 Page 64, of the Public Records of Miami-Dade County, Florida.

have been satisfied and paid, and are deemed **SATISFIED OF RECORD** and Debtor has good title to said Property against the claims or purported claims by, through, under, or against it by NLG, LLC and the title to the property is forever quieted as to all claims of NLG, LLC.

2. Selective shall give credit to NLG, LLC in the amount of $4,876,654.29 toward NLG's outstanding debt to Selective pursuant to the Quebec Judgment.

| | |
|---|---|
| | 3.  NLG's proof of claim #17 is disallowed and NLG, LLC has no claim against the Debtor<br><br>Liza Hazan a/k/a Elizabeth Hazan under the Note, Mortgage or any court order.<br><br>4.  Counts IV, V, VI, VIII, and IX of Plaintiff's Third Amended Complaint are set for trial by separate order.ö . |
| Total | 45453.38 |

**Equity**

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 14 | Equity Individual interest holder | no | retained |

D.    **Means of Implementing the Plan**

1.    *Source of Payments*

Debtor works as a business consultant specializing in identifying locations for high-end restaurants andretailers around the world. She has always earned at least $350,000 per year and in 2014 a personal income of $420,000.

Debtor has executed in the last quarter of 2016 and 2017 contracts that have earned her income comparable to past years, to be paid in installments, and additional payments throughout the construction phase, and the last remaining portion upon opening of the clients for business.

Debtor has contracts to expand a nationwide and worldwide very high end retail operator that has already over 50 existing stores and is planning to open over 100 new locations in the next five years.

Debtor has also exclusive contracts with high end restaurants and is responsible for their expansion nationwide. Debtor is in charge of finding new locations and is also responsible of their construction, architectural plans etc. all the way through their opening of their new locations.

Debtorøs husband controls a company called Real Estate Holdings Group, L.D.C. (õREHGö) which owns a New York condominium on Fifth Avenue and 62nd street New York Apt 1 A NYC NY 10065 appraised at $4,500,000.00 that has in excess of $2,500,000.00 in equity. The company, REHG, has agreed to refinance and also sell the condominium to fund the plan in order to assure successful reorganization and completion of the plan.

The New York condominium will be on the market listed for sale with New York Real Estate Broker The Corcoran Group.

The Debtorøs primary asset is her homestead residence located at 6913 Valencia Drive, Fisher Island,Florida (the õPropertyö) valued at $12 million.

Additionally debtor has scheduled household furniture, dishes and china, household electronics andclothing, shoes and accessories and jewelry, fixtures and art valued at $327,500.

The equity in Fisher Island would also support a refinancing, which could also be used supportfunding a plan if necessary.

2.    *Post-confirmation Management*

The Post-Confirmation Managers of the Debtor, and their compensation, shall be as follows:

| Name | Affiliations | Insider (yes or no)? | Position | Compensation |
|------|-------------|----------------------|----------|--------------|
| Liza Hazan | Debtor | yes | Debtor | n/a |

E.    **Risk Factors**

Certain substantial risk factors are inherent in most plans of reorganization in Chapter 11 cases.  If such Plans are accepted, it is usually because they represent a greater return in dividends than in a liquidating Chapter 7 case.  This Plan bears the risk that the Debtorøs income may be reduced or her expenses may increase, all of which may reduce the Debtor's ability to make payments under this Plan.  However, any distribution to unsecured creditors will be greater than what would be realized in liquidation.

ALL THE RISK FACTORS INHERENT IN A PLAN OF REORGANIZATION UNDER CHAPTER 11 ARE PRESENT IN THIS CASE.  CREDITORS ARE URGED TO CAREFULLY READ THIS DISCLOSURE STATEMENT AND THE ACCOMPANYING PLAN OF REORGANIZATION SO THAT AN INFORMED JUDGMENT CAN BE MADE WITH RESPECT TO VOTING ON THE PLAN.

F.    **Executory Contracts and Unexpired Leases**

The Plan, in Article 6, lists all executory contracts and unexpired leases that the Debtor will assumeunder the Plan. There are none. Assumption means that the Debtor has elected to continue to perform theobligations under such contracts and unexpired leases, and to cure defaults of the type that must be curedunder the Code, if any. Article also lists how the Debtor will cure and compensate the other party to suchcontract or lease for any such defaults.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of anydefaults, or the adequacy of assurance of performance, you must file and serve your objection to the Planwithin the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

All executory contracts and unexpired leases that are not listed in Article 6 will be rejected under thePlan. Consult your adviser or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Planwithin the deadline for objecting to the confirmation of the Plan.

***The Deadline for Filing a Proof of Claim Based on a Claim Arising from the Rejection of a Lease or Contract is***no later than thirty (30) days after the date of the order confirming this Plan. Any claim based onthe rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court ordersotherwise.

G.      **Tax Consequences of Plan**

*Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their TaxLiability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.*

A summary description of certain United States ("U.S.") federal income tax consequences of the Plan is providedbelow. The description of tax consequences below is for informational purposes only and, due to lack of definitivejudicial or administrative authority or interpretation,substantial uncertainties exist with respect to various U.S.federal income tax consequences of the Plan as discussed herein. Only the potential material U.S. federal income taxconsequences of the Plan to the Debtor and to a hypothetical investor typical of the holders of Claims andInterestswho are entitled to vote to confirm or reject the Plan are described below. No opinion of counsel has been sought orobtained with respect to any tax consequences of the Plan, and no tax opinion is being given in this DisclosureStatement. No rulings or determinations of the Internal Revenue Service (the "IRS") or any other tax authorities havebeen obtained or sought with respect to any tax consequences of the Plan, and the discussion below is not bindingupon the IRS or such other authorities. No representations are being made regarding the particular tax consequencesof the confirmation and consummation of the Plan to the Debtor or to any holder of Claims in Impaired Classes orClass 4 Equity Interests. No assurance can be given that the IRS would not assert, or that a court would not sustain, adifferent position from any discussed herein.

The discussion of the U.S. federal income tax consequences below is based on the InternalRevenue Code of 1986,as amended (the "Tax Code"), Treasury Regulations promulgated and proposed thereunder, judicial decisions, andadministrative rulings and pronouncements of the IRS and other applicable authorities, all as in effect on the datehereof. Legislative, judicial or administrative changes or interpretations enacted or promulgated in the future couldalter or modify the analyses and conclusions set forth below. It cannot be predicted at this time whether any taxlegislation will be enacted or, if enacted, whether any tax law changes contained therein would affect the taxconsequences to the holders of Claims. Any such changes or interpretations

may be retroactive and couldsignificantly affect the U.S. federal income tax consequences discussed below.

**THIS DISCUSSION DOES NOT ADDRESS FOREIGN, STATE OR LOCAL TAXCONSEQUENCES OFTHE PLAN, NOR DOES IT PURPORT TO ADDRESS THE U.S. FEDERAL INCOME TAXCONSEQUENCES OF THE PLAN TO SPECIAL CLASSES OF TAXPAYERS (SUCH AS FOREIGNENTITIES, NONRESIDENT ALIEN INDIVIDUALS, PASS-THROUGH ENTITIES SUCH ASPARTNERSHIPS ANDHOLDERS THROUGH SUCH PASS-THROUGH ENTITIES, S CORPORATIONS,MUTUAL FUNDS, INSURANCE COMPANIES, FINANCIAL INSTITUTIONS, SMALL BUSINESSINVESTMENT COMPANIES, REGULATED INVESTMENT COMPANIES, CERTAIN SECURITESTRADERS, BROKER-DEALERS AND TAX-EXEMPT ORGANIZATIONS). FURTHERMORE, ESTATEAND GIFT TAX ISSUES ARE NOT ADDRESSED HEREIN AND TAX CONSEQUENCES RELATING TOTHEALTERNATIVE MINIMUM TAX ARE GENERALLY NOT DISCUSSED HEREIN.**

**NO REPRESENTATIONS ARE MADE REGARDING THE PARTICULAR TAX CONSEQUENCES OFTHE PLAN TO ANY HOLDER OF CLAIMS. EACH HOLDER OF A CLAIM IS STRONGLY URGED TOCONSULT ITS OWN TAX ADVISOR REGARDING THE U.S. FEDERAL, STATE, LOCAL ANDFOREIGN TAXCONSEQUENCES OF THE TRANSACTIONS DESCRIBED HEREIN AND IN THE PLAN.**

## IV.    CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. Theseinclude the requirements that: the Plan must be proposed in good faith; at least one impaired class of claimsmust accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equityinterest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidationcase, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible.These requirements are not the only requirements listed in §1129, and they are not the only requirements forconfirmation.

11 USC 1129(a)(15) provides: In a case in which the debtor is an individual and in which the holder ofan allowed unsecured claim objects to the confirmation of the planô

(A) the value, as of the effective date of the plan, of the property to be distributed under the plan on account ofsuch claim is not less than the amount of such claim; or

(B) the value of the property to be distributed under the plan is not less than the projected disposable incomeof the debtor (as defined in section 1325 (b)(2)) to be received during the 5-year period beginning on the datethat the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.

In the case at bar, Debtor has provided for payments not less than projected disposable income of thedebtor during a five year period beginning with the first payment due under the plan.

## A.    Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that therequirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor orequity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder hasa claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that classes are impaired and that holders of claims in each ofthese classes are therefore entitled to vote to accept or reject the Plan. The Plan Proponent believes thatclasses are unimpaired and that holders of claims in each of these classes, therefore, do not have the right tovote to accept or reject the Plan.

### 1. What Is an Allowed Claim or an Allowed Equity Interest?

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled theclaim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated,or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proofof claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holderholding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules theobjection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the FederalRules of Bankruptcy Procedure.

***The deadline for filing a proof of claim in this case was 5/17/16 for claims and 7/16/16 forgovernment units.***

### 2. What Is an Impaired Claim or Impaired Equity Interest?

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in aclass that is *impaired* under the Plan. As provided in §1124 of the Code, a class is considered impaired if thePlan alters the legal, equitable, or contractual rights of the members of that class.

### 3. Who is **Not** Entitled to Vote

The holders of the following five types of claims and equity interests are *not* entitled to vote:

É holders of claims and equity interests that have been disallowed by an order of the Court;

É holders of other claims or equity interests that are not õallowed claimsö or õallowed equityinterestsö (as discussed above), unless they have been õallowedö for voting purposes.

É holders of claims or equity interests in unimpaired classes;

É holders of claims entitled to priority pursuant to §§507(a)(2), (a)(3), and (a)(8) of the Code; and

É holders of claims or equity interests in classes that do not receive or retain any value under thePlan;

É administrative expenses.

***Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of thePlan [and to the Adequacy of the Disclosure Statement].***

### *4. Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim,or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, andshould cast one ballot for each claim.

## B.    **Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class ofcreditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impairedclasses have voted to accept the Plan, unless the Plan is eligible to be confirmed by õcram downö on non-acceptingclasses, as discussed later in Section B.2.

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) ofthe allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at leasttwo-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept thePlan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of theallowed equity interests in the class, who vote, cast their votes to accept the Plan.

### *2. Treatment of Non-accepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if thenon-accepting classes are treated in the manner prescribed by §1129(b) of the Code. A plan that bindsnonaccepting classes is commonly referred to as a õcram downö plan. The Code allows the Plan to bindnonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmationexcept the voting requirements of §1129(a)(8) of the Code, does not õdiscriminate unfairly,ö and is õfair andequitableö toward each impaired class that has not voted to accept the Plan.

*You should consult your own attorney if a ö̈cramdown"confirmation will affect your claim or equityinterest, as the variations on this general rule are numerous and complex.*

### C.    Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not acceptthe Plan will receive at least as much under the Plan as such claim and equity interest holders would receive ina chapter 7 liquidation. A liquidation analysis is attached to this Disclosure Statement as exhibit B.

### D.    Feasibility

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or theneed for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidationor reorganization is proposed in the Plan.

#### 1. *Ability to Initially Fund Plan*

The Plan Proponent believes that the Debtor will have enough cash on hand on the effective date of thePlan to pay all the claims and expenses that are entitled to be paid on that date. Tables showing the amount ofcash on hand on the effective date of the Plan, and the sources of that cash are attached to this disclosurestatement as Exhibits C and D.

#### 2. *Ability to Make Future Plan Payments And Operate Without Further Reorganization*

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make therequired Plan payments.

The Plan Proponent has provided projected financial information. Those projections are listed in ExhibitD.

***You Should Consult with Your Accountant or other Financial Advisor If You Have AnyQuestions Pertaining to These Projections.***

## V.    EFFECT OF CONFIRMATION OF PLAN

### A.    DISCHARGE OF DEBTOR

Discharge. In a case in which the debtor is an individualô

**(A)**unless after notice and a hearing the court orders otherwise for cause, confirmation of the plandoes not discharge any debt provided for in the plan until the court grants a discharge on completionof all payments under the plan;

**(B)**at any time after the confirmation of the plan, and after notice and a hearing, the court may grant adischarge to the debtor who has not completed payments under the plan ifô

**(i)** the value, as of the effective date of the plan, of property actually distributed under the plan onaccount of each allowed unsecured claim is not less than the amount that would have been paid onsuch claim if the estate of the debtor had been liquidated under chapter 7 on such date;

**(ii)** modification of the plan under section 1127 is not practicable; and

**(iii)** subparagraph (C) permits the court to discharge; and

**(C)** (*)the court may grant a discharge if, after notice and a hearing held not more than 10 days beforethe date of the entry of the order granting the discharge, the court finds that there is no reasonablecause to believe that—

**(i)** section522(q)(1) may be applicable to the debtor; and

**(ii)** there is pending any proceeding in which the debtor may be found guilty of a felony of the kinddescribed in section 522(q)(1)(A) or liable for a debt of the kind described in section 522(q)(1)(B); andif the requirements of subparagraph (A) or (B) are met.

Pursuant to 11 U.S.C. § 1141(d)(5)(A), the Debtor shall be discharged from all pre-Confirmation debts except as is provided in the Plan, pursuant to the procedures set forth herein, upon completion all payments required under the Plan to unsecured and priority creditors. Upon thesatisfaction of all payments required under the Plan to unsecured and priority creditors, the Reorganized Debtor shall file a Final Report of Estate and Motion for Final Decree Closing Case onthe Court approved local form.

(a)    Notwithstanding the above, the Debtor may request that the Court close this bankruptcyproceeding prior to the entry of an Order of Discharge, pursuant to the following procedures:

(b)    The Debtor may file a Motion to Temporarily Close Bankruptcy Case Prior to Entry ofOrder of Discharge (the "Motion to Close") after the following events have occurred: (I) payment ofthe Initial Payment (defined in the Plan) to unsecured and priority creditors; (ii) payment of alloutstanding quarterly United States Trustee Fees as of the date of the Order approving the Motion toTemporarily Close; and (iii) the filing of all outstanding federal income tax returns. The Motion toClose shall certify that each of the above conditions have been met.

(c)    The Motion to Close (and Notice of Hearing thereto) shall be served to all creditors andinterested parties. The Court may grant the Motion to Close, pursuant to 11 U.S.C. § 350(a), if eachof the above conditions have been met.

(d)    During the time that this bankruptcy case is temporarily closed, the provisions of theconfirmation order shall remain in effect with respect to thetreatment of creditor claims that existed as of the bankruptcy petition date, as long as the Debtorcontinues to be in compliance with the Plan and the Court's Order Confirming Debtor's Plan ofReorganization (the "Confirmation Order"), and as long as the Debtor timely makes all of thepayments to unsecured and priority creditors, as contemplated under the Plan.

(e)    Upon the satisfaction of all payments required under the Plan to creditors, the Debtormay file a motion to reopen this bankruptcy proceeding, pursuant to 11 U.S.C. § 350(b). Any Clerk ofCourt fees associated with filing of the motion to reopen shall be waived. The motion to reopen shallbe verified and served upon all creditors and parties in interest and shall demonstrate that the Debtorhas made all of the payments contemplated under the Plan to creditors.

(f)    Upon the re-opening of this bankruptcy proceeding, the Debtor shall promptly file a FinalReport of Estate and Motion for Final Decree Closing Case on the Court-approved local

form, whichshall certify that all payments required under the Plan to creditors have been made. The Court maythen grant the Debtor a discharge, pursuant to 11 U.S.C. § 1141(d)(5).

B.    **Modification of Plan**

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, theCourt may require a new disclosure statement and/or revoting on the Plan.

The Plan Proponent may also seek to modify the Plan at any time after confirmation only if (1) the Planhas not been substantially consummated *and* (2) the Court authorizes the proposed modifications after noticeand a hearing.

C.    **Final Decree**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules ofBankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the PlanConfirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively,the Court may enter such a final decree on its own motion.

Respectfully submittedNovember 15, 2017:

By: /s/ Liza Hazan
The Plan Proponent

By: David W. Langley, Esq
8551 W. Sunrise Blvd.
Suite 303
Plantation, FL 33322
dave@flalawyer.com
Phone 954ô 356-0450
By: /s/*David W. Langley*

Attorney for the Plan Proponent