**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT**
**IN AND FOR MIAMI-DADE COUNTY, FLORIDA**
**CIVIL DIVISION**

**CASE NO. 2013-25902 CA 01**

JP Morgan Bank, NA

      Plaintiff,

vs.

Elizabeth Hazan a/k/a Liza Hazan; Unknown
Spouse of Elizabeth Hazan a/k/a Liza Hazan; NLG,
LLC, 6913 Valencia, LLC; Western National Life
Insurance Company f/k/a AIG Annuity Insurance
Company; Fisher Island Community Association,
Inc.; Valencia Estates Homeowners' Association,
Inc.; Unknown Parties in Possession #1, If living,
And all Unknown Parties claiming by, through,
Under and against the above named Defendant(s)
Who are not known to be dead or alive, whether said
Unknown Parties may claim an interest in Spouse,
Heirs, Devisees, Grantees, or Other Claimants;
Unknown Parties in Possession #2, If living,
And all Unknown Parties claiming by, through,
Under and against the above named Defendant(s)
Who are not known to be dead or alive, whether said
Unknown Parties may claim an interest in Spouse,
Heirs, Devisees, Grantees, or Other Claimants.

      Defendants.

_____/

**NLG, LLC'S ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM AND**
**CROSSCLAIM**

    Defendant/Counterclaim and Crossclaimant, NLG, LLC ("NLG"), through undersigned

counsel, files this Answer,  Affirmative Defenses, Counterclaim and Crossclaim to the

Foreclosure Complaint (the "Complaint") filed by JP Morgan Chase Bank, NA ("JP Morgan").

**ANSWER AND AFFIRMATIVE DEFENSES**

NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 2 of 11

1.      Paragraph 1 of the Complaint describes the nature of the purported claims asserted by JP Morgan in the Complaint and does not require a response. To the extent a response is required, the allegations are admitted.

2.      Admitted.

3.      Admitted.

4.      Admitted.

5.      Denied.

6.      Denied.

7.      Admitted.

8.      Denied.

9.      NLG is without knowledge as to the allegations contained in paragraph 9 and therefore demands strict proof thereof.

10.      NLG is without knowledge as to the allegations contained in paragraph 9 and therefore demands strict proof thereof.

11.      Denied.

12.      Denied.

13.      Denied.

14.      NLG is without knowledge as to the allegations contained in paragraph 9 and therefore demands strict proof thereof.

15.      Denied.  6913 Valencia LLC's interest in the subject property was foreclosed out by NLG's Foreclosure Judgment and is also inferior to NLG's lien interest in the subject property.

16.      Denied.

NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 3 of 11

17.    Denied.  Fisher Island Community Association's interest in the subject property was foreclosed out by NLG's Foreclosure Judgment and is also inferior to NLG's lien interest in the subject property.

18.    Denied.  Valencia Estates' interest in the subject property was foreclosed out by NLG's Foreclosure Judgment and is also inferior to NLG's lien interest in the subject property.

19.    Denied.

20.    Denied.

## AFFIRMATIVE DEFENSES

21.    As its first affirmative defense, NLG states that Plaintiff's claims are barred by the doctrine of res judicata for the reasons set forth in NLG's crossclaim.

22.    As its second affirmative defense, NLG states that Plaintiffs' claims are barred by the doctrine of collateral estoppel for the reasons set forth in NLG's crossclaim.

23.    As its third affirmative defense, NLG states that Plaintiffs' claims are barred by the doctrine of estoppel for the reasons set forth in NLG's crossclaim.

24.    As a fourth affirmative defense, NLG states that the Plaintiffs' claims are barred by previous dismissals of the same causes of action by the Plaintiff in 2008 and 2011.

25.    As a fifth affirmative defense, NLG states that the Plaintiffs' claims are barred by their respective statutes of limitation.

26.    As a sixth affirmative defense, NLG is without knowledge whether Plaintiff complied with paragraph 22 of the mortgage, which requires notice of acceleration and therefor alleges that Plaintiff failed to comply with the notice requirement, subject to conducting discovery.

NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 4 of 11

27.    As a seventh affirmative defense, NLG asserts that the Plaintiff lacked standing at the time this action was filed as the mortgagee listed in the Complaint is JP Morgan, but the mortgagee was Washington Mutual Bank at the time of filing.

28.    As an eight affirmative defense, NLG asserts that Plaintiff has failed to record and pay documentary stamps on the Loan Modification Agreement mentioned in the Complaint.

## COUNTERCLAIM

29.    Plaintiff alleges that on March 7, 2007, Defendant Hazan executed a promissory note and mortgage recorded in Official Records Book 25450, Page 2835, of the Public Records of Miami-Dade County, Florida. The mortgage listed the lender as "Washington Mutual Bank, FA." The mortgage was attached to the Complaint as Exhibit B and is incorporated by reference herein.

30.    The Complaint does not allege that this mortgage was ever assigned to Plaintiff.

31.    On March 8, 2007, Hazan executed and delivered to NLG a promissory note in the principal amount of $1,275,000, secured by a Mortgage of even date recorded in Official Records Book 25559, Page 4266, of the Public Records of Miami-Dade County, Florida. Attached is the Note as Exhibit "A" and the Mortgage as Exhibit "B".

32.    The Complaint alleges that Hazan executed a Loan Modification Agreement. The Loan Modification was attached to the Complaint as Exhibit C and is incorporated by reference herein. Exhibit C was dated June 20, 2011, and shows it was in favor of Plaintiff, JPMORGAN CHASE BANK, N.A., with an effective date of August 1, 2011, increasing the Principal Balance to $4,282,432.36.  It does not show that the Loan Modification was ever recorded.

NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 5 of 11

33.     NLG never agreed to subordinate its interest to Plaintiff and neither Hazan nor Plaintiff alerted NLG to the loan modification.  NLG only learned of the loan modification when it was attached to the Complaint in this case.

34.     As such, Plaintiff JP Morgan and/or Washington Mutual lost its priority position with respect to NLG when it entered into the Loan Modification Agreement with Hazan and did not obtain NLG's consent.

35.     NLG has retained undersigned counsel to represent it in this Counterclaim, is required to pay counsel a fee for it services, and is entitled to an award of reasonable attorney's fees and costs against Plaintiff.

36.     All conditions precedent to the filing of this Counterclaim have been performed, have been waived, have occurred or have been satisfied.

**WHEREFORE**, NLG prays that the Court enter judgment (a) confirming that NLG has a valid lien on the Property for the total amount specified in the Foreclosure Judgment, plus per diem interest and legal fees after the date of entry, superior in dignity to any right, title, interest or claim of the Plaintiff or Defendants, (b) reserving judgment to grant NLG further relief with respect to the Property, (c) awarding NLG its reasonable attorney's fees and costs against Plaintiff or Defendants, and (d) granting such other and further relief as the Court deems appropriate.

## CROSSCLAIM

Cross-claimant NLG, through undersigned counsel, hereby files this Crossclaim against all named Defendants and alleges as follows:

### Preliminary Statement

NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 6 of 11

37.     NLG is the holder of a valid lien against the Property, superior in dignity to any interest of any Defendant and Plaintiff herein, under an Order Granting Foreclosure (the "Foreclosure Order") entered on December 1, 2015, and a Final Judgment of Foreclosure (the "Foreclosure Judgment") entered in December 4, 2015 by Circuit Judge Monica Gordo in the case of *NLG, LLC v. Elizabeth Hazan, et al.*, Case No. 11-42770-CA 02 in Miami-Dade County Circuit Court (the "Foreclosure Action"). The Final Judgment was recorded at Official Records Book 29902, Page 3737, of the Public Records of Miami-Dade County, Florida. Correct copies of the Foreclosure Order and Foreclosure Judgment are attached as Exhibits "C" and "D."

38.     Judge Gordo ruled in NLG's favor on all of all issues in a detailed fifteen page (plus exhibits) Order Granting Foreclosure on December 1, 2015, which was followed by the entry of the Foreclosure Judgment on December 4, 2015.

39.     Defendant Hazan filed a Notice of Appeal to the Third District Court of these orders and was assigned a Case No. 3D16-0315. On February 10, 2016, NLG filed its Motion to Dismiss the appeal. Hazan filed four motions for extension of time before filing a Response to the Motion to Dismiss on March 28, 2016. NLG filed its Reply on April 4, 2016. Two and a half hours later, Hazan filed a Notice of Voluntary Dismissal. On the next day, the Third District dismissed the appeal.

40.     On April 26, 2016, the Court granted NLG's motion for attorney's fees pursuant to section 57.105, Florida Statutes and Rule 9.410 of the Fla. R. App. P.

41.     This rendered both the Order Granting Foreclosure on December 1, 2015, and the Foreclosure Judgment on December 4, 2015, to be the "law of the case."

**<u>Factual Allegations</u>**

**A.  The Note, Note Judgment, Mortgage and Foreclosure Action.**

NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 7 of 11

42.     In 2007, NLG sold a home located at 6913 Valencia Drive, Fisher Island, Florida 33109 to Hazan for $5,100,000, and received a purchase money note and mortgage on the Property in the amount of $1,275,000. Correct copies of the Note and the Mortgage are attached as Exhibits "A" and "B."

43.     On April 28, 2008, based on the Debtor's default under a settlement agreement stemming from the Debtor's default under the Note, NLG obtained a default final judgment against the Debtor for $1,618,071.29 plus post-judgment interest (the "Default Final Judgment") in the case of *NLG, LLC v. Hazan*, Case No. 07-19532, which was affirmed on appeal twice.

44.     After entry of the Default Final Judgment, NLG and Hazan entered into a second settlement agreement, which Hazan defaulted in February 2009.

45.     On December 21, 2011, NLG filed a complaint to foreclose its Mortgage on the Property in the case of *NLG, LLC v. Elizabeth Hazan, et al.* (*i.e.*, the NLG Foreclosure Action), under Case No. 11-42770-CA 02.

46.     On January 2, 2013, the circuit court judge then presiding over the NLG Foreclosure Action entered judgment in favor of Hazan. That judgment was reversed on appeal in a detailed written opinion reported under *NLG, LLC v. Hazan*, 151 So. 3d 455 (Fla. 3d DCA 2014).

**B.  The Third DCA issues its Opinion and Mandate in the NLG Appeal.**

47.     On September 3, 2014, the Third District issued its Opinion in *NLG v. Hazan*, 151 So. 3d 455, reversing the judgment in favor of Hazan in the Foreclosure Action and adjudicating the following issues:

        a.  The entry of the Default Final Judgment in NLG's favor did not preclude NLG's later enforcement of the Mortgage in the NLG Foreclosure Action;

    b. NLG's Mortgage had not been extinguished; and

    c. NLG had standing to pursue the NLG Foreclosure Action, with its manager Chris Kosachuk (the same manager through which it acts today) being a proper representative of NLG.

48. The Third District denied motions for rehearing and rehearing *en banc*, and entered its Mandate in accordance with its opinion on November 25, 2014. A correct copy of the Third District's Opinion and Mandate is attached as Exhibit "E" to this Crossclaim.

49. After over a year of additional litigation, on December 1, 2015, Judge Gordo entered her Order Granting Foreclosure, which took into consideration the material facts and disputes between NLG and Hazan, including the facts alleged above, and determined that NLG was entitled to foreclose its valid Mortgage on the Property.

50. On December 4, 2015, Judge Gordo entered her Foreclosure Judgment, entering in rem relief in favor of NLG and adjudicating that NLG holds a lien on the Property in the amount of $4,876,654.29. On February 3, 2016, the Debtor filed a Notice of Appeal, but voluntarily dismissed her appeal on April 4, 2016. The Foreclosure Judgment is now final, non-appealable and the "law of the case."

51. Judge Gordo set a foreclosure sale for January 12, 2016. Hazan filed her Bankruptcy Case on January 11, 2016 to stay the foreclosure sale.

52. On November 29, 2016, the Bankruptcy Court granted relief from the automatic stay to all parties to this action, including NLG. The relief was granted to litigate the foreclosure claim "to the point of judgment, but not to conduct a foreclosure sale of the Property."

NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 9 of 11

53.    NLG has retained undersigned counsel to represent it in this action, is required to pay counsel a fee for it services, and is entitled to an award of reasonable attorney's fees and costs against Selective and the Debtor.

54.    All conditions precedent to the filing of this action have been performed, have been waived, have occurred or have been satisfied.

## COUNT I

55.    NLG incorporates the allegations of paragraphs 37 through 54 of the Crossclaim as though fully set forth herein.

56.    This is an action by NLG against the named Crossclaim Defendants.

57.    The NLG Foreclosure Judgment is a final non-appealable judgment of a state court of competent jurisdiction which is binding upon all of the parties to this action and cannot be revisited by this Court under principles of res judicata, collateral estoppel or otherwise. Furthermore, it is the law of the case as between and among all parties herein.

58.    In accordance with the Foreclosure Judgment, NLG has a valid lien on the Property for the total amount specified in the Foreclosure Judgment "superior in dignity to any right, title, interest or claim of the Defendants [in the NLG Foreclosure Action], and all persons, corporations, or other entities claiming by, through or under the defendants or any of them," plus per diem interest since the date of entry of the NLG Foreclosure Judgment and attorneys' fees incurred thereafter.

59.    For the reasons stated above, NLG prays that this Court should enter judgment in NLG's favor confirming that Judge Gordo's final, non-appealable Foreclosure Judgment is binding on the parties to this action and confirming that NLG holds a valid lien against the

NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 10 of 11

Property superior in dignity to any interest in the Property held by the Crossclaim and Counterclaim Defendants.

**WHEREFORE**, NLG respectfully requests that the Court enter judgment (a) confirming that NLG has a valid lien on the Property for the total amount specified in the Foreclosure Judgment superior in dignity to any right, title, interest or claim of the Plaintiff or Defendants, (b) reserving judgment to grant NLG further relief with respect to the Property, (c) awarding NLG its reasonable attorney's fees and costs against Plaintiff or Defendants, and (d) granting such other and further relief as the Court deems appropriate.

Dated:  October 1, 2018

Respectfully submitted,

ADR Miami LLC
1172 So. Dixie Hwy. #341
Coral Gables, Florida 33146
Tel: (305) 667-6609
Fax: (800) 380-4155

By: _____/s/ Juan Ramirez, Jr._____
**Juan Ramirez, Jr.**
Florida Bar No. 201952
jr@adrmiami.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished via email on this 1st day of October, 2018, on all counsel or parties of record on the Service List below.

By: _____/s/ Juan Ramirez, Jr._____
Attorney for Defendant and Crossclaimant, NLG, LLC

## SERVICE LIST

Robin Reyes

NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 11 of 11

*Attorney for Plaintiff JPMorgan Chase, NA*
roreyes@logs.com
sfgbocaservice@logs.com

Nicole Moskowitz, Esq.
*Attorney for Defendant Elizabeth Hazan*
NLGlaw@yahoo.com

Micheal Simon
*Attorney for Defendant 6913 Valencia, LLC*
msimon@3slaw.com

Roger Slade, Esq.
*Attorney for Defendant Valencia*
*Estates Homeowners' Association, Inc.*
rslade@dhaberlaw.com

Jonathan Goldstein, Esq.
*Attorney for Defendant Valencia*
*Estates Homeowners' Association, Inc.*
jgoldstein@dhaberlaw.com

Gian Ratnapala, Esq.
*Attorney for Defendant Fisher Island Community*
*Association, Inc.*
gian@peytonbolin.com
bankforeclosure@peytonbolin.com

David W. Langley
*Attorney for Defendant* Liza Hazan a/k/a Elizabeth Hazan
dave@flalawyer.com, emily@flalawyer.com, monica@flalawyer.com

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 1 of 72

# EXHIBIT A

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 2 of 72

<br>

NOTE

U.S. $1,275,000.00

Miami, Florida
March 6, 2007

FOR VALUE RECEIVED the undersigned, and if more than one, jointly and severally ("Maker"), promises to pay to the order of NLG, LLC ("Holder"), or to its successors or assigns, ONE MILLION DOLLARS TWO HUNDRED SEVENTY-FIVE THOUSANDAND ZERO CENTS ($1,275,000.00) in lawful money of the United States, with interest, payable as follows:

1. THREE HUNDRED THOUSAND DOLLARS AND ZERO CENTS ($300,000.00) of principal shall be due and payable on April 10, 2007;
2. THREE HUNDRED THOUSAND DOLLARS AND ZERO CENTS ($300,000.00) of principal shall be due and payable on September 10, 2007; and,
3. FOUR HUNDRED THOUSAND DOLLARS AND ZERO CENTS ($400,000.00) of principal shall be due and payable on January 10, 2008.
4. TWO HUNDRED SEVENTY-FIVE THOUSAND AND ZERO CENTS ($275,000.00) of principal shall be due and payable on September 10, 2008

Interest at the rate of TEN percent (10%) per annum shall accrue on the outstanding principal balance. Accrued and unpaid interest shall be paid in a single installment on September 10, 2008.

The payments due hereunder shall be payable by wire transfer to Wachovia Bank, N.A., Account # 2000015278142, ABA # 031201467, or such other place as Holder may designate in writing for the benefit of NLG, LLC.

The full balance of principal, along with all accrued and unpaid interest, shall be due and payable, unless sooner paid in one lump sum payment on March 10, 2008. This Note may be prepaid in whole or in part at any time without penalty, together with accrued interest on the principal prepaid to the date of payment. Any partial prepayment shall be applied first to the payment of interest on the unpaid principal amount at the interest rate, and the remainder thereof to payment on account of principal.

The principal amount of this Note may be prepaid in whole or in part at any time without penalty. Any partial prepayment shall be applied against the next maturing payment of principal.

The Maker waives demand, protest and notice of maturity, non-payment or protest and all requirements necessary to hold Maker liable.

The Maker further agrees to pay all costs of collection, including reasonable attorney's fees in case the principal of this Note or any payment on the principal or any interest thereon is not paid at the respective maturity thereof, or in case it becomes necessary to protect the security hereof, whether suit be brought or not.

If any installment of interest or principal under this Note is not paid within ten (10) days from the due date, the entire principal amount outstanding hereunder and accrued and unpaid interest at the default interest rate of twenty-four percent (24%) per annum thereon (the "default interest rate") shall at once become due and payable, at the option of the Holder.

This Note is to be construed and enforced according to the laws of the State of Florida.

Ex "A"

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 3 of 72

Notwithstanding anything herein to the contrary, it is not the intention of the parties to charge or receive nor shall there at any time be charged any interest which would result in a rate of interest being charged which is in excess of the maximum rate permitted to be charged by law; and in the event that any sum in excess of the maximum legal rate of interest is paid or charged, the same shall, immediately upon discovery thereof, be deemed to have been a prepayment of principal (which prepayment shall be permitted, and be without premium or penalty) as of the date of such receipt, and all payments made thereafter shall be appropriately reapplied to interest and principal to give effect to the maximum rate permitted by law, and after such reapplication, any excess payment shall be immediately refunded to Maker.

This Note is secured by a Florida Real Estate Purchase Money Second Mortgage, Assignment of Leases and Rents and Security Agreement (the "Mortgage"), dated of even date herewith, encumbering property situated in the State of Florida, which Mortgage was granted by the Maker to the Holder, to which reference is hereby made for a description of the mortgaged property, the nature and extent of the security, the rights of the Holder in respect thereof and the terms and conditions upon which this Note is issued. The unpaid balance of the principal amount, plus accrued interest, shall become immediately due and payable at the option of the Holder upon the happening of an event by which said balance shall or may become due and payable under the terms of the Mortgage.

Maker:

_____
ELIZABETH HAZAN, a single woman

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 4 of 72

# EXHIBIT B

EXHIBIT "B"

PREPARED BY AND RECORDED COPIES
SHOULD BE RETURNED TO:
Thomas M. David, Esq.
Weisenfeld & Associates, P.A.
2900 S.W. 28 Terrace, Penthouse
Miami, Florida 33133

CFN 2007R0410013
OR Bk 25559 Pgs 4266 - 4272 (7pgs)
RECORDED 04/24/2007 12:37:00
MTG DOC TAX 4,462.50
INTANG TAX 2,550.00
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

## PURCHASE MONEY SECOND MORTGAGE, ASSIGNMENT OF LEASES AND RENTS AND SECURITY AGREEMENT

THIS PURCHASE MONEY SECOND MORTGAGE AND SECURITY AGREEMENT (hereinafter the ("Mortgage") executed the _8th_ day of March, 2007 by ELIZABETH HAZAN, a single woman (hereinafter referred to as "Mortgagor"), to NLG, LLC, a Delaware Limited Liability Company, (hereinafter referred to as "Mortgagee").

### WITNESSETH:

FOR GOOD AND VALUABLE CONSIDERATION, and also in consideration of the aggregate sum named in the Note of even date herewith (the "Note"), hereinafter described, the said Mortgagor grants, bargains, sells, aliens, remises, releases, conveys and confirms unto the said Mortgagee, its successors and assigns, in fee simple, all that certain real property of which Mortgagor is now seized and possessed, and in actual possession, situated in the county of Miami-Dade, State of Florida, to-wit:

Lot 7, Block 2, of LINDISFARNE ON FISHER ISLAND SECTION 10, according to the Plat thereof, recorded in Plat Book 157, Page 64, of the Public Records of Miami-Dade County.

TOGETHER WITH ALL structures and improvements now and hereafter located on said real property and all licenses and permits used or required in connection with the use of said real property, and all leases of said property now or hereafter entered into and all right, title and interest of the Mortgagor thereunder, including without limitation, rents, issues, proceeds and profits accruing and to accrue from said real property, all of which are included within the foregoing description. Also, all gas, steam, electric, water and other heating, plumbing, ventilating, security, irrigating and power, extensions, appliances, fixtures, and appurtenances, including air conditioning, ducts, machinery and equipment, which are now or may hereafter pertain to or be used with, in or on said real property, though they be either detached or detachable (the real property and tangible and intangible personal property as described above, are hereinafter collectively referred to as the "Mortgaged Property").

TO HAVE AND TO HOLD the same together with the tenements, hereditaments, and appurtenances, unto the said Mortgagee, its successors and assigns, in fee simple.

AND the said Mortgagor, for itself and its successors and assigns, covenants with the said Mortgagee, its successors and assigns, that the said Mortgagor is indefeasibly seized of the Mortgaged Property in fee simple; that there is a dedicated public right of ingress and egress to the Mortgaged Property; that the said Mortgagor has full power and lawful right to the Mortgaged Property in fee simple as aforesaid; that the Mortgaged Property is free from all encumbrances except as may be set forth elsewhere herein; that the lien hereof is a second mortgage lien on the Mortgaged Property; and that the said Mortgagor hereby fully warrants the title to the Mortgaged Property and will defend the same against the lawful claims of all person whomsoever, subject only as set forth herein.

1

PROVIDED ALWAYS, that if the said Mortgagor, its successors or assigns, shall pay unto the said Mortgagee, its successors or assigns, all of the amount due under that certain Note from Mortgagor to Mortgagee of even date herewith in the principal amount of ONE MILLION TWO HUNDRED SEVENTY-FIVE THOUSAND AND NO/100 ($1,275,000.00) with the final payment due as provided in the Note on March 10, 2008 and shall further perform, comply with and abide by each and every stipulation, agreement, condition and covenant of the said Note and of this Mortgage, then this Mortgage and the estate thereby created shall cease and be null and void, and this instrument shall be released by the Mortgagee. All release documentation shall be prepared and recorded at the expense of Mortgagor and shall be furnished by Mortgagor to Mortgagee for execution.

AND the Mortgagor, for itself and its successors and assigns, hereby covenants and agrees:

1.    To pay all and singular, the principal and interest and other sums of money payable by virtue of the aforementioned Note and this Mortgage, or either, promptly when due.

2.    To pay all and singular taxes, assessments, levies, liabilities, obligations and encumbrances of every nature on the Mortgaged Property promptly and prior to the time the same shall become delinquent. The Mortgagor shall deliver to the Mortgagee receipts evidencing the payment of said taxes, assessments, levies, etc., immediately upon the payment thereof as required in this Paragraph; provided, however, that the receipt evidencing payment of the ad valorem taxes lawfully imposed for the preceding calendar year shall be delivered to Mortgagee no later than March 15 of each year.

3.    To pay all and singular the costs, charges and expenses, including reasonable attorneys' fees and costs of abstracts of title examination, incurred or paid at any time by the Mortgagee, its successors or assigns, because of the failure on the part of the Mortgagor, its successors or assigns, to perform, comply with and abide by each and every of the stipulations, agreements, conditions and covenants of the aforementioned Note and this Mortgage, or either of same.

4.    To perform, comply with and abide by each and every stipulation, agreement, condition and covenant in the aforesaid Note and this Mortgage.

5.    To permit, commit, or suffer no waste, impairment, abandonment, or deterioration of the Mortgaged Property, or any part thereof, and upon the failure of the Mortgagor to keep the buildings or any other item of security hereunder now or hereafter located on the Mortgaged Property in good condition or repair, the Mortgagee may demand the immediate repair of said buildings or such other security, or an increase in the amount of security, or the immediate repayment of the debt secured hereunder.

6.    (a)  To keep any and all buildings now or hereafter on the Mortgaged Property insured under policies of all-risk insurance (which shall include, but not be limited to, fire, extended coverage and vandalism), in a sum acceptable to the Mortgagee, but in no event less than the total of the principal balance of the Note plus the principal balance of the note secured by any prior mortgage encumbering the Mortgaged Property, in a company or companies acceptable to the Mortgagee, and the premiums for all such insurance shall be paid by the Mortgagor not later than fifteen (15) days before same are due. The original of such policy or policies, or a certificate of insurance, shall be delivered to and held by the Mortgagee and monies due thereunder shall be made payable to the Mortgagee, his successors or assigns, to the extent of his interest, by having attached or contained in the policy or policies a loss-payable clause and proper endorsements;

(b)  Subject to the rights of the holder of a prior mortgage encumbering the Mortgaged Property, in the event any sum of money becomes payable under the insurance policy or policies, the Mortgagee, its successors or assigns, shall have the

2

option to receive and apply the same on account of the indebtedness hereby secured or
permit the Mortgagor to receive and use all or any part thereof for other purposes,
without thereby waiving or impairing any equity, lien or right under or by virtue of this
Mortgage;

(c)  Notwithstanding anything to the contrary contained herein and so
long as Mortgagor is not in default hereunder, Mortgagee agrees that, in the event of a
casualty loss to the Mortgaged Property, or any portion thereof, Mortgagee will permit
Mortgagor to use any and all insurance proceeds to repair, replace or restore the
Mortgaged Property to the condition it was prior to such casualty; provided that
Mortgagor provides Mortgagee with certification from an architect or engineer as to the
cost of such repair, replacement or restoration and that, to the  extent that the insurance
proceeds are not sufficient to cover such costs, Mortgagor agrees to disburse and
expend the funds necessary to cover the costs of repairing, replacing or restoring the
Mortgaged Property that exceed that available insurance proceeds prior to using said
proceeds;

(d)  Upon the failure of Mortgagor to obtain required insurance, the
placing of such insurance and the paying of the premium of such insurance or any part
thereof by the Mortgagee shall not be deemed to waive or affect any right of the
Mortgagee hereunder, including the right to foreclose this Mortgage, and each and
every payment of insurance so made by the Mortgagee shall be considered additional
principal due under the Note and shall bear interest from the date of payment thereof at
the rate of twenty-four percent (24%) per annum, and this Mortgage shall secure the
payment of same; Every such payment shall be deemed additional monies owed by the
Mortgagor to the Mortgagee, shall be payable on demand of the Mortgagee therefore,
and shall be secured by the lien of this Mortgage;

(e)  If the Mortgagee acquires title to the Mortgaged Property by
foreclosure proceedings or otherwise, any unearned premiums on a hazard insurance
policy covering the Mortgaged Property and held by the Mortgagee are hereby assigned
to and shall belong to the Mortgagee. If at any time during the lien of the Mortgage any
insurance policies shall be cancelled and returned premiums available, these returned
premiums shall belong to the Mortgagee and at the option of the Mortgagee shall be
credited by the Mortgagee against the indebtedness secured hereunder.  Any rights of
the Mortgagee to any insurance proceeds shall in no way be affected or impaired by
reason of the fact that the Mortgagee may have instituted foreclosure proceedings
hereunder.

7.  To further secure payment of the indebtedness of the Mortgagor to the
Mortgagee, the Mortgagor does hereby sell, assign, transfer and set over unto the
Mortgagee all of the leases, rents, issues and profits of the Mortgaged Property.  This
assignment shall become operative upon any default being made by the Mortgagor
under the terms of the Mortgage or the Note secured hereby, the aforementioned first
mortgage, or either of same and shall remain in full force and effect so long as any
default continues to exist in the making of any of the payments or the performance of
any of the covenants of this Mortgage or the Note secured hereby, and the Mortgagee
shall have the right to enter upon the Mortgaged Property and collect same directly from
persons in possession.  In the event that the Mortgagor should further assign the
leases, rents, issues and profits of the Mortgaged Property, or any part thereof, without
the consent of Mortgagee, then the entire principal sum secured hereby, with accrued
and unpaid interest and any other charges shall, at the option of the Mortgagee,
become immediately due and payable.  Any subsequent assignment of the rents,
deposits, revenues and profits of the Mortgaged Property, or any part thereof, approved
by Mortgagee, shall at all times be inferior and subordinate to the assignment granted
hereby and to the rights of the Mortgagee hereunder.

8.  In the event the Mortgagor fails to pay any tax or other charge or
obligation required to be paid by the Mortgagor hereunder, within the time set forth for
such payment, the Mortgagee shall have the right, but shall not be required to pay such
charge or obligation without waiving or affecting the option of the Mortgagee to consider
this Mortgage in default.  Every such payment so made shall be considered additional

3

Exhibits to Response in Opposition to Affirmative Defenses, Counterclaim and Crossclaim
Case No. 16-10389-AJC
Page 8 of 72

principal due under the Note and shall bear interest from the date thereof at the rate of twenty four percent (24%) per annum. Every such payment shall be deemed additional monies owed by the Mortgagor to the Mortgagee, shall be payable on demand of the Mortgagee therefore, and shall be secured by the lien of this Mortgage.

9.    If any of the sums of money due on the Note or otherwise herein referred to are not promptly and fully paid or if any of the stipulations, agreements, conditions and covenants contained in the Note and this Mortgage, or either of same, are not duly performed, complied with and abided by, within ten (10) days after an applicable due date, the same shall be considered a default of this Mortgage and the Note; and the aggregate sum set forth in the Note then remaining unpaid, with interest accrued and unpaid, and all monies secured hereby, shall become due and payable forthwith, or thereafter, at the option of the Mortgagee, as fully and completely as if all the said sums of money were originally stipulated to be paid on such day, anything in the Note or in this Mortgage to the contrary notwithstanding; and thereupon or thereafter, at the  option of the Mortgagee, without notice or demand, foreclosure proceedings or other suit at law or in equity may be prosecuted as if all monies secured hereby had matured prior to its institution.

10.    The following shall be considered additional acts of default, which, upon occurrence, shall allow the Mortgagee to pursue the various remedies for default hereunder; (a)  The filing by the Mortgagor of a voluntary petition in bankruptcy or the Mortgagor's adjudication as a bankrupt or insolvent; or (b)  The entry by a court of competent jurisdiction of an order, judgment or decree approving a petition filed against Mortgagor seeking any  reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or further federal or state law or regulation relating to bankruptcy, insolvency or other relief for debtors, which order, judgment or decree remains unvacated and unstayed for sixty (60) days from the date of entry thereof; (c)  an event of default under the aforementioned first Mortgage; or, (d) if foreclosure proceedings are instituted with regard to any other lien against the Mortgaged Property whether prior to or inferior to the lien of this Mortgage; or, (e) the creation or allowance of any additional mortgage encumbrance secured by the Mortgaged Property whether prior to or inferior to the lien of this Mortgage.

11.  That in the event the Mortgaged Property or any part thereof, shall be condemned and taken for public use under the power of eminent domain, the Mortgagee shall have the right to require that all damages awarded for the taking of or damages to the Mortgaged Property, including interest thereon, shall be paid to the Mortgagee, not to exceed the then unpaid balance of this Mortgage and the Note secured hereby, together with all interest and charges then outstanding, and, at the option of the Mortgagee the same may be applied to payments of principal in the inverse order of maturity.

12.  That no extensions of the time or modification of the terms of payment of the Note by the Mortgagee shall release, relieve, or discharge the Mortgagor from the payment of any of the sums hereby secured, but in such event the Mortgagor shall nevertheless be eligible to pay such sums according to the terms of such extension or modification unless specifically released and discharged in writing by the Mortgagee. Any acceptance by the Mortgagee of part payment of any installment of principal or interest, or both, or of part performance of any covenant, or delay by the Mortgagee for any period of time in exercising the option to mature the entire debt secured hereby, shall not operate as a waiver of the right to exercise such option to mature the entire debt secured hereby.

13.  In the event of a suit being instituted to foreclose this Mortgage, the Mortgagee shall be entitled to apply at any time pending such foreclosure suit to the court having jurisdiction thereof for the appointment of a receiver of all and singular the Mortgaged Property, and of all rents, incomes, profits, issues and revenues thereof, from whatever source derived; and thereupon it is hereby expressly covenanted and agreed that the court shall forthwith appoint such receiver with  the usual powers and duties of receivers in like cases; and said appointment shall be made by the court as a matter of strict right to the Mortgagee, and without reference to the adequacy or

4

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 16-10389-AJC
Page 9 of 72

inadequacy of the value of the Mortgaged Property, or to the solvency or insolvency of the Mortgagor or any other party defendant to such suit.

14.  That if any action or proceeding shall be commenced by any person other than the Mortgagee (except an action to foreclose this Mortgage, or to collect the debt secured hereby) to which action, or proceeding, the mortgagee is made a party or in which it shall become necessary to defend, or uphold, the lien of this mortgage, all reasonable sums paid by the Mortgagee for the expense of any litigation to prosecute, or defend the rights and lien created by this Mortgage (including court costs and reasonable attorneys' fees at all trial and appellate levels), shall be paid by the Mortgagor, together with interest thereon at the rate of twenty-four percent (24%) per annum and any such sum and the interest thereon, shall be a claim upon the Mortgaged Property, attaching or accruing, subsequent to the lien of this Mortgage and shall be deemed to be secured by this Mortgage and shall be deemed an additional payment obligation under the Note secured hereby.  The sums paid by the holder hereof in accordance with the terms of this paragraph shall be paid by the Mortgagor unto the holder hereof within fifteen (15) days of said payment, without demand.  Upon failure of Mortgagor to make said payment, the Mortgagee, at its option may declare this Mortgage and the Note secured hereby to be in default, thereupon maturing all of the unpaid indebtedness, including the sums advanced hereunder.  In any action or proceeding to foreclose this Mortgage, or to recover or collect the debt secured hereby, the provisions of law and this Mortgage respecting the recovering of costs, disbursements and allowances shall prevail unaffected by this covenant.

15.  Upon the occurrence of a default hereunder, the principal amount of the Note secured hereby, together with all accrued and unpaid interest, and together with all sums which may have been advanced by Mortgagee and which are secured hereby, shall bear interest at the lesser of twenty-four percent (24%) or the highest rate permitted by the laws of the State of Florida, until paid in full.

16.  No right, power or remedy conferred upon or reserved to Mortgagee by the Note, this Mortgage or any other agreement executed as a part of the loan evidenced by the Note is exclusive of any other right, power or remedy, and each and every right, power and remedy given hereunder or under the Note or any other instrument securing the Note or now or hereafter existing at law, in equity or by statute, shall be cumulative, at the option of Mortgagee.  A waiver in one or more instances of any of the terms, covenants, conditions or provisions hereof, or of the Note or obligations secured hereby, shall apply to the particular instance or instances and at the particular time or times only, and no such waiver shall be deemed a continuing waiver, but all of the terms, covenants, conditions and other provisions of this Mortgage and of the Note secured hereby shall survive and continue to remain in full force and effect.

17.  To the extent that the Mortgaged Property shall be deemed to be personal property, this Mortgage shall serve as a "security agreement" within the meaning of the Uniform Commercial Code as adopted in the State of Florida.  Mortgagor hereby grants to Mortgagee a security interest in and to all of those portions of the Mortgaged Property which may ultimately be held to be personal property.  With respect to such personal property, Mortgagee shall have all rights afforded secured parties by the Uniform Commercial Code, as adopted in the State of Florida, and as may hereafter be modified or amended, in addition to, but not in limitation of, the other rights afforded the Mortgagee hereunder.

18.  If all or any part of the Mortgaged Property, or any interest therein, is sold, conveyed, transferred (including a transfer by agreement for deed or land contract) or further encumbered by Mortgagor without Mortgagee's prior written consent, then, and in that event, Mortgagor shall be deemed in default and Mortgagee may declare all sums secured by this Mortgage immediately due and payable.  Any and all leases of all or part of the Mortgaged premises shall be subordinate to the lien of the Mortgagee arising pursuant to this Mortgage.

19.  The mailing of a written notice of demand, addressed to the owner of record of the Mortgaged Property, directed to the said owner at the last address actually

5

furnished to the Mortgagee, or directed to said owner at the Mortgaged Property, and mailed by certified United States mail, shall be sufficient notice and demand in any case arising under this instrument and required by the provision hereof or by law; provided, however, that the provisions of this Paragraph shall not be construed as requiring notice from the Mortgagee to the Mortgagor unless specifically provided by other provisions hereof or by provisions of the Note.

20.  All payments received by the Mortgagee shall be applied first to accrued and unpaid interest and then to the principal of the Note.

21.  Notwithstanding anything to the contrary contained herein and/or in the Note, it is the intention of the parties that any and all interest charged, collected and/or paid shall not exceed the maximum effective rate of interest allowed under applicable law.  Should any amounts, characterized as interest, in excess of said maximum rate, be charged, collected and/or paid, such excess shall be refunded to the Mortgagor or credited against the sums due the Mortgagee pursuant to the terms of this Mortgage and the Note secured hereby.

22.  This Mortgage is and shall be a Second Purchase Money Mortgage of the Mortgaged Property, subject and subordinate only to that certain first Mortgage given by Mortgagor to Washington Mutual Bank, F.A., in the original principal amount of THREE MILLION EIGHT HUNDRED TWENTY-FIVE THOUSAND AND NO/100 ($3,825,000.00).

23.  The Mortgagor shall from time to time with ten (10) days after written demand by the Mortgagee, execute in such form as shall be required by the Mortgagee, an estoppel certificate, duly acknowledged, setting forth the amount of principal and interest unpaid under the Note and the general status of this Mortgage.  Failure of the Mortgagor to make and deliver the estoppel certificate within the required time shall constitute a breach of this Mortgage and a default hereunder.

24.  Any abstract or abstracts of title covering the Mortgaged Property shall be delivered to Mortgagee or his designated agent, which shall at all times during the term of this Mortgage, remain in the possession of the Mortgagee, and in the event of the foreclosure of this mortgage or other transfer of title, all right, title and interest of the Mortgagor in and to such abstract or abstracts of title shall pass to the purchaser or grantee.

25.  This Mortgage and the Note shall be governed by the substantive and procedural laws of the State of Florida.  The terms "Mortgagor" and "Mortgagee" whenever used herein shall include the heirs, personal representatives, successors and assigns of the respective parties hereto.  Whenever used the singular number shall include the plural and the plural the singular, and the use of any gender shall included all genders.

26.  In the event any one or more of the provisions contained in this Mortgage or in the Note secured hereby shall for any reason be held to be invalid, illegal or unenforceable in any respect, and if the deletion thereof would not adversely affect the receipt of any material benefit by and to any party hereunder or substantially increase the burden of any party hereto, such validity, illegality or unenforceability shall, at the option of the Mortgagee, not affect any other provision of this Mortgage.

27.  The Mortgagor hereby waives any right it may have to a jury trial in any action which may be brought under the Mortgage or the Note secured hereby.

6

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim   4272

Case No. 2013-25902 CA 01

Page 1 of 72

LAST PAGE

28.    This Mortgage constitutes the complete agreement between the parties hereto as to the subject matter hereof; and it may not be amended, changed or modified orally, except by a writing signed by the party to be charged by said amendment, change or modification.

IN WITNESS WHEREOF, the said Mortgagor has caused these presents to be duly executed as of the day and year first above.

Signed, sealed and delivered
in the presence of:

_Lourdes Marrero_
Print or Type Name

_Melbis Avila_
Print or Type Name

MORTGAGOR:

_____
ELIZABETH HAZAN, a single woman

STATE OF FLORIDA          )
                          )
COUNTY OF MIAMI-DADE      )

The foregoing instrument was acknowledged before me, the undersigned, this 8th day of March, 2007, by Elizabeth Hazan.

NOTARY PUBLIC-STATE OF FLORIDA
Melbis Avila
Commission # DD522194
Expires: FEB. 23, 2010
Bonded Thru Atlantic Bonding Co., Inc.

[NOTARIAL SEAL]

_Melbis Avila_
NOTARY PUBLIC

Personally Known _____ OR   Produced Identification ✓

Type of Identification Produced _Florida Drivers License_

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 12 of 72

# EXHIBIT C

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION

CASE NO.: 11-42770-CA 02

NLG, LLC,

      Plaintiff,

v.

ELIZABETH HAZAN; an individual;
UNKNOWN SPOUSE OF ELIZABETH HAZAN;
an individual; 6913 VALENCIA, LLC,
a Florida Limited Liability Corporation;
J.P. MORGAN CHASE BANK, N.A.;
a foreign Corporation, FISHER ISLAND
COMMUNITY ASSOCIATION, INC.; a Florida
Non Profit Corporation; VALENCIA ESTATES
HOMEOWNERS ASSOCIATION, INC., a Florida
Non Profit Corporation; and JOHN DOE and
JANE DOE, individually, as unknown Tenants
in possession of the Subject Property

      Defendants

_____/

### ORDER GRANTING FORECLOSURE

THIS ACTION came before the Court on October 14, 2015, on Plaintiff's Second

Amended Motion for Judgment of Foreclosure and pursuant to the Florida Rules of Civil

Procedure and the opinion of the Third District Court of Appeal, the Court hereby FINDS,

ORDERS AND ADJUDGES as follows:

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 14 of 72

The history of the litigation between the parties was set out in detail when the matter

went up on appeal to the Third District.  The facts and procedural history recited in the opinion

constitute the law of the case.  In its opinion, the Third District stated as follows:

### Facts and Procedural Background

It is undisputed that NLG sold a home on Fisher Island to Ms. Hazan in 2007 for $5,100,000.00, receiving a purchase money note and mortgage on the residence from Ms. Hazan for $1,275,000.00 of that amount. The note and mortgage required an instalment payment of $300,000.00 one month after the sale, and the note was to mature six months after the sale.

When the required payments were not forthcoming, NLG filed a lawsuit for the collection of the promissory note in the Miami-Dade circuit court. A settlement agreement was entered into, but required payments again were not made. In April 2008, and in accordance with the settlement agreement, a default final judgment on the promissory note was entered against Ms. Hazan and in favor of NLG for $1,618,071.29, plus post-judgment interest. That judgment was recorded on May 2, 2008. The final judgment was affirmed by this Court. *Hazan v. NLG, LLC*, 995 So. 2d 504 (Fla. 3d DCA 2008). Ms. Hazan then obtained new counsel and moved to vacate the judgment on the promissory note. The motion was denied and Ms. Hazan's further appeal was dismissed by this Court. *Hazan v. NLG, LLC*, 19 So. 3d 319 (Fla. 3d DCA 2009).

NLG sought and obtained a sheriff's deed to the Fisher Island property by enforcing its judgment. Ms. Hazan moved to vacate that deed, however, on the grounds that the property was her homestead. The then-assigned circuit judge entered an order in December 2008 "quieting title," although Ms. Hazan's motion and the record establish that the order merely extinguished the sheriff's deed. Later, and in this appeal as well, Ms. Hazan argued that the quiet title order also extinguished the lien of NLG's mortgage.

The parties nevertheless entered into a second settlement agreement, and Ms. Hazan made three of the specified payments before defaulting again in February 2009. After additional settlement negotiations were unavailing, NLG filed a complaint to foreclose its mortgage on the Fisher Island home in 2011. In 2012, NLG amended its complaint to add as a defendant the holder of a recorded junior mortgage for $2,000,000.00. NLG alleges that this mortgage was given by Ms. Hazan to a sham Florida limited liability company established by her mother.

The foreclosure case proceeded to non-jury trial, and the trial court entered a final judgment in favor of Ms. Hazan, incorporating the transcript of his post-trial ruling (January 2, 2013) into the final judgment "as though set forth herein." This appeal followed.

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 15 of 72

*NLG, LLC v. Hazan*, 151 So. 3d 455, 455-456 (Fla. 3d DCA 2014)

The Third District issued its mandate on November 25, 2014.

### *Status of the Pleadings After Mandate*

Since the mandate issued, Defendant Hazan has been trying to reopen the case to amend her answer and affirmative defenses, starting on December 2, 2014, with the filing by a non-party, Sean Neil Meehan, Hazan's husband, of a Satisfaction of Mortgage. NLG filed it Motion for Entry of Judgment of Foreclosure on January 6, 2015. On January 12, 2015, Attorney Ray Garcia entered an appearance for Hazan, and proceeded to file eleven Notices of Filing. He followed this with a 65-page Verified Motion to Dismiss and a 64-page Verified Memorandum in Opposition to Plaintiff Motion for Entry of Final Judgment. On March 3, 2015, this Court denied Hazan's Motion to Dismiss.

Mr. Garcia then filed a 21-page Motion to Take Judicial Notice of Court Orders, a 64-page Motion for Summary Judgment, followed by 17 Notices of Filing. On April 8, 2015, Mr. Garcia filed Hazan's Motion for Leave to File Amended Answer, seeking to raise seventeen (17) affirmative defenses.

On May 1, 2015, this Court denied Hazan's Motion to Amend. Thus, as the pleadings stand, there is no legal reason to deny NLG a judgment pursuant to the mandate of the Third District. In fact, it would be error to do otherwise. *See Bank of Am., N.A. v. Lukas*, 166 So. 3d 965, 966 (Fla. 4th DCA 2015), citing *Feltus v. U.S. Bank Nat'l Ass'n*, 80 So. 3d 375, 376 (Fla. 2d DCA 2012) ("A pleading filed in violation of rule 1.190(a) is a nullity, and the controversy should be determined based on the properly filed pleadings.").

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 16 of 72

At that same hearing on May 1, 2015, Attorney Mark Cohen appeared and argued to the Court on behalf of Selective Advisors Group, LLC, even though that entity had never moved to intervene. Although Mr. Cohen represented to this Court that he did not know what the relationship was between Hazan and Selective Advisors, it is undisputed that the sole Managing Member of Selective Advisors, Sean Neil Meehan, is Hazan's husband. After this Court denied Hazan's motion to amend, Selective still did not move to intervene. It was not until October 7, 2015, that Selective Advisors first moved to intervene. A comparison of the Motion to Intervene with Hazan's Proposed Answer and Affirmative Defenses reveals that the Motion is trying to inject the very same issues and arguments that this Court ruled could not be presented by Hazan. Nothing happened after May 1, 2015, that would change Selective's alleged rights to intervene, other than the fact that they filed a Satisfaction of Judgment of the New York Judgment by Confession discussed below. The motion may be rejected as a matter of law.

### Intervention

Under Florida Rule of Civil Procedure 1.230, a motion to intervene may be granted to "[a]nyone claiming an interest in pending litigation." Selective Advisors' motion fails to set forth what interest it is claiming in the pending litigation. The ability to intervene is a permissive right granted in the trial court's discretion. *De Sousa v. JP Morgan Chase, N.A.*, 170 So. 3d 928, 929 (Fla. 4th DCA 2015); *Andresix Corp. v. Peoples Downtown Nat'l Bank*, 419 So. 2d 1107, 1107 (Fla. 3d DCA 1982) ("We affirm the trial court's order denying the motion to intervene filed by Andresix Corporation upon a holding that Andresix, as a purchaser of

4

property which was then the subject of a mortgage foreclosure action and accompanying lis

pendens by Peoples Downtown National Bank, was not entitled to intervene in such action.").

The Florida Supreme Court long ago explained the requirements for intervention.  In

*Union Cent. Life Ins. Co. v. Carlisle*, 593 So. 2d 505 (Fla. 1992), the Court stated that "[t]he test

to determine what interest entitles a party to intervene is set forth in *Morgareidge v. Howey*,

75 Fla. 234, 238-39, 78 So. 14, 15 (1918):

> [T]he interest which will entitle a person to intervene . . . must be in the
> matter in litigation, and of such a direct and immediate character that the
> intervenor will either gain or lose by the direct legal operation and effect of the
> judgment. In other words, the interest must be that created by a claim to the
> demand in suit or some part thereof, or a claim to, or lien upon, the property or
> some part thereof, which is the subject of litigation."

Carlisle, 593 So. 2d at 507.

A careful review of the motion to intervene does not disclose that Selective has any

interest in the litigation.  The Wherefore Clause merely requests intervention.  But if Selective is

trying to collect on the Judgment by Confession, it is undisputed that the judgment has been

satisfied.  Selective's efforts to intervene are a transparent attempt by Hazan's husband, not to

assert its rights, but to obstruct the foreclosure of his wife's property.  To allow intervention by

Selective would be an abuse of the intervention rule.

Furthermore, intervention would not achieve such an obstruction.  As the Third District

recently stated in *State v. Fla. Workers' Advocates*, 167 So. 3d 500 (Fla. 3d DCA 2015), even if

Selective were allowed to intervene, they would take "the procedural posture of the case as it

stood when they were allowed to intervene." *Id.* at 505, *citing Omni Nat'l Bank v. Ga. Banking

Co.*, 951 So. 2d 1006 (Fla. 3d DCA 2007). Its intervention would be in "subordination to the

then-existing claims in the lawsuit."  The court then quotes from *Envtl. Confed'n of Sw. Fla. Inc.*

5

*v. IMC Phosphates, Inc.*, 857 So. 2d 207, 211 (Fla. 1st DCA 2003): "Intervention is a dependent remedy in the sense **that an intervenor may not inject a new issue into the case**. . . . Furthermore, the rights of an intervenor are conditional in that they exist only so long as the litigation continues between the parties..." *Fla. Workers' Advocates*, 167 So. 3d at 505. (emphasis added).

Moreover, courts are very reluctant to grant intervention after a final judgment has been entered. The narrow exception to the rule prohibiting post-judgment intervention arises when the interests of justice so require. *De Sousa*, 170 So. 3d at 930, citing *Wags Transp. Sys., Inc. v. City of Miami Beach*, 88 So. 2d 751, 752 (Fla. 1956). In *De Sousa*, the court stated that the case did not align with the circumstances in *Wags* to meet the narrow exception to the general rule prohibiting post-judgment intervention, in part because *Wags* involved the subject matter of zoning, not foreclosure. *Id.*

### Substitution

The motion to intervene also requests to substitute the party plaintiff based on an alleged judicial assignment of a judgment in Case No. 07-19532 that dates back to a non-final order entered by Judge Peter Lopez (the "Lopez Order") on August 20, 2014.  As will be discussed later, that judgment was judicially assigned while its enforceability was pending in an appeal of this case.  It is significant that Selective waited over a year since the opinion of the Third District was announced to claim that NLG's interest in the litigation had been transferred and it was entitled to be substituted under Florida Rule of Civil Procedure 1.260(c).

This effort suffers from the same infirmity as Selective's efforts to intervene, as it is undisputed that there is no outstanding judgment against NLG.  Nothing prevented Selective

from filing its motion after August 20, 2014, other than Mr. Meehan hoping that his wife would prevail in the pending appeal.  The only new developments since August 20, 2014, are (1) the opinion reversing this case and the subsequent mandate, and (2) the Consent Judgment from the New York State Court that was domesticated in Miami-Dade County under Case No. 14-10475, which has been dismissed as the underlying judgment has been satisfied.

**Selective Advisors' Arguments**

Even though Selective Advisors should be denied leave to intervene as a matter of law, this Court will discuss the arguments raised by it.  In a nutshell, Selective's motion seeks to argue that this action cannot proceed because NLG has lost all its rights against Hazan.

First, the motion seeks to have Selective substituted as party plaintiff, based on the Lopez Order" in Case No. 14-10475.  Selective argues that this order allows it to stand in the shoes of NLG ostensibly to collect on a New York Judgment by Confession that had been domesticated in that case.  However, on October 1, 2015, the case was dismissed by Judge Lopez, stating:  "It appearing the judgment has been satisfied of record, this cause is dismissed & no further proceeding will be taken."  Because it is undisputed that the underlying judgment has been satisfied and the Florida case domesticating that judgment has been dismissed, Selective's right to stand in the shoes of NLG have been likewise extinguished.

Next Selective argues that a judgment entered in Case No. 07-19532 CA 11 was assigned to it in the Lopez Order.  NLG had obtained a Default Final Judgment on April 28, 2008, in the amount of $1,618,071.29, against Hazan ("Default Judgment").  In the foreclosure action filed on December 21, 2011—long before the 2014 Judge Lopez domestication action—NLG sought to foreclose on the money due under the Default Judgment in both the initial complaint and the

amended complaint. In Paragraph 10 of the Amended Complaint that was tried on December 26 and 27, 2012, NLG pleaded the Default Judgment. In her Answer, Hazan's second and third affirmative defenses asserted that the Default Judgment was not owned by NLG. The sixth affirmative defense alleged that NLG improperly split its causes of action by obtaining a Default Judgment on the promissory note without pursuing a foreclosure at that time. The seventh affirmative defense was that NLG was forum shopping by filing a new action instead of proceeding under the same case in which it had obtained the Default Judgment. The eighth affirmative defense was that after obtaining the Default Judgment, NLG entered into a settlement agreement with Hazan that did not reserve the right to foreclose and now its only remedy was under the Default Judgment. The ninth affirmative defense was that NLG was limited to enforcing the Default Judgment in the division in which it was obtained.

The case went to trial on December 26 and 27, 2012, at the end of which Judge Eig entered judgment in favor of Hazan by way of a "Final Judgment for Defendant Elizabeth Hazan" dated February 8, 2013. That was the judgment which was appealed to the Third District. The District Court heard oral argument on July 14, 2014, and issued its opinion reversing the final judgment on September 3, 2014. It subsequently issued its mandate on November 25, 2014.

As can be seen from this chronology, at the time of the entry of the Lopez Order, there was no Default Judgment that could have been assigned, as that judgment had been subsumed into the final judgment in favor of Hazan. *See Geico Gen. Ins. Co. v. Paton*, 150 So. 3d 804, 808 (Fla. 4th DCA 2014) (stating that the final judgment subsumed an earlier order).

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 21 of 72

Even if the Default Judgment survived the Final Judgment in favor of Hazan, the issue of its enforceability was an integral part of the litigation and trial in this case, not a collateral matter. In fact, in its Answer Brief to the Third District, it was Hazan's first argument—that the trial court correctly found that NLG was limited to the remedy of its existing money judgment because of the doctrine of election of remedies. Clearly the enforceability of the Default Judgment was the central issue before the Third District after the filing of the Notice of Appeal on March 11, 2013. In fact, in its Analysis, this is the first issue discussed in the district court opinion: "First, NLG's prior suit on the promissory note and recordation of a judgment on the note was not an election of remedies precluding the later enforcement of the mortgage." *NLG, LLC v. Hazan*, 151 So. 3d 455, 456 (Fla. 3d DCA 2014).

It is well established that while an appeal is pending, the lower court may not enter orders that will deprive the appellate court of jurisdiction. During the appeal, the lower court's jurisdiction is limited to enforcing the judgment. *See Wassman v. Travelers Cas. & Sur. Co.*, 797 So. 2d 626, 631 (Fla. 5th DCA 2001) ("It is also clear that 'when a case has merged into a final judgment and an appeal has been perfected therefrom . . . jurisdiction in the trial court terminates, except as to enforcement of the judgment.'"), *citing State ex rel. American Home Ins. Co. v. Seay*, 355 So. 2d 822, 824 (Fla. 4th DCA 1978). *See also Waltham A. Condominium Asso. v. Village Management, Inc.*, 330 So. 2d 227, 229 (Fla. 4th DCA 1976) (stating that "the trial court is without power to finally dispose of the cause by dismissal or otherwise so as to in form or effect interfere with the power and authority of the appellate court."); *see also State ex rel. Schwartz v. Lantz*, 440 So. 2d 446, 448-449 (Fla. 3d DCA 1983) (stating that "Since *Waltham*, every district court in this state has, at least once, vacated a trial court order because

9

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 22 of 72

it altered a judgment on appeal.") (citing numerous cases). *And see Fulton v. Poston Bridge &*

*Iron, Inc.,* 122 So. 2d 240, 242 (Fla. 3d DCA 1960) (quoting from Corpus Juris Secundum that

"the lower court has no jurisdiction, pending an appeal by amendment of the record or

proceedings or otherwise, to change the status of the case or to interfere with the rights of

parties under the judgment or order."); *Fritz v. Sroczyk,* 202 So. 2d 796, 798 (Fla. 1st DCA 1967)

("Upon the filing of the notice of appeal the trial court lost jurisdiction to take any further

action...").

It is axiomatic that this Court in whose division the foreclosure action had been filed

since 2011, had no jurisdiction to judicially assign the Default Judgment during the appeal, as

the validity and enforceability of the judgment was pending before the Third District. Thus,

while the foreclosure suit was pending before the Third District, the only proper remedy for

Selective to pursue would have been to seek leave from the appellate court to relinquish

jurisdiction for the purpose of judicially assigning the judgment. Selective chose not to elect

that remedy.

### The "New York Judgment by Confession"

The foreclosure action in this case was tried by Judge Eig on December 26 and 27, 2012.

None of the nine affirmative defenses mentioned the New York Judgment by Confession.

Hazan made a strategic decision not to try this issue.

It was not until April, 2014, that Quebec, Selective and Hazan started their efforts to

enforce the aforementioned Consent Judgment from the New York State Court that was

domesticated in Miami-Dade County under Case No. 14-10475. It is undisputed that that the

Domesticated New York Judgment has been dismissed as the underlying judgment has been

satisfied.   On April 4, 2014, Selective Advisors Group LLC was incorporated in Delaware. Quebec filed the New York Judgment by Confession in Miami-Dade County on April 21, 2014. Shortly thereafter, on April 30, 2014, Quebec assigned the judgment to Selective.

On July 14, 2014, the Third District held oral argument where the issue of whether the mortgage was wiped out by NLG obtaining its Default Judgment entered on April 28, 2008, played a prominent part.  Instead of moving the Third District to relinquish jurisdiction to assert the New York Judgment by Confession, or seeking to intervene in the foreclosure case, which was the older case in this division, Selective instead obtained the domestication Order on August 20, 2014.

The docket sheet in the New York Judgment by Confession case shows that NLG had already moved to vacate the judgment and had a hearing scheduled for August 6, 2014.  The matter was adjourned to September 29, 2014; November 10, 2014; December 1, 2014; January 12, 2015; March 16, 2015; and to May 18, 2015.  This court had repeatedly stayed ruling on this matter in order to allow the parties a chance to argue the Motion to Vacate the Judgment before the New York Court.  On this last court setting, Selective, the judgment **creditor**, filed a bankruptcy petition two hours before the scheduled time, in the U.S. Bankruptcy Court for the Eastern District of New York, apparently using the bankruptcy stay to avoid the vacatur hearing before the New York State Court Judge on the Judgment by Confession.  The bankruptcy petition was signed by the manager of Selective, Sean N. Meehan (Ms. Hazan's husband).  The Court appointed Marc Pergament as Trustee for the Estate.

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 24 of 72

On July 1, 2015, the Trustee conducted an examination under oath of Mr. Meehan.[1]

The sole creditor listed was Selective's prior attorney, Joseph Nierman, who was alleged to be

owed $3,500.  The sole asset was the Judgment by Confession, premised on an Affidavit signed

by Raymond Houle who claimed to be president of Quebec while simultaneously acting as

manager of NLG.  "The Affidavit of Confession did not provide any additional information to

substantiate the basis for the Judgment." (Affirmation, Par. 9).  Mr. Meehan was placed under

oath and he testified "that he had no knowledge of the underlying basis for the Judgment and

that he claimed that no money was paid to Quebec for the Assignment of the Judgment, except

there was an unspecified "deal' whereby [Selective] would pay a certain amount to the Assignor

upon collection of the Judgment." (Affirmation, Par. 10).

Mr. Meehan also testified about the pending foreclosure of 6913 Valencia Drive, Fisher

Island, Florida, which is also his residence.  He disclosed that title is held by his wife, Elizabeth

Hazan.  The Trustee then stated in Paragraph 17:  "As Mr. Meehan's testimony was not

plausible with respect to the entry of the Order and Judgment [signed by Judge Jean K.

FitzSimon in the Pennsylvania bankruptcy] nor with respect to the underlying Judgment [the

Judgment by Confession], I believe that dismissal of this case with prejudice is appropriate..."

The Trustee also found the excuse for the filing of the bankruptcy – the claim of Mr. Nierman

for fees – to be "suspicious." (Affirmation, Par. 19).

In its motion to intervene, Selective states in Par. 27: "With respect to New York, NLG

has failed to re-file or restore its motion to vacate Selective's Judgment, after Selective's

---

[1] The Trustee submitted an Affirmation in Support of a dismissal with prejudice in Case No. 815-72153-A736 which was the subject of a motion by NLG to take judicial notice and Hazan having filed no objection, the motion is hereby granted and the Affirmation is attached as Exhibit "A."

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 25 of 72

bankruptcy was dismissed on August 28, 2015, even though two months have elapsed from that date." What Selective leaves out is that NLG did indeed attempt to schedule once again on September 3, 2015, its motion to vacate the Judgment by Confession by way of letter to the presiding judge. This prompted a letter dated September 4, 2015, to the presiding judge from Selective's New York lawyer, James F. Vlahadamis. The letter stated that plaintiff had accepted payment in full satisfaction of the judgment, making it "unsuitable for this Court to entertain any application of NLG, LLC (such as one filed by letter on September 3, 2015) seeking to restore the motion to vacate the judgment as there currently exists no judgment to vacate and the matter remains moot."[2] At the hearing on NLG's motion for entry of a judgment based on the mandate of the Third District, Selective offered no explanation as to why it took from August 20, 2014, to September 4, 2015, for the judgment to be satisfied.

The New York Judgment by Confession may have been entitled to full faith and credit while it was an outstanding judgment. The judgment, however, has been satisfied. There is no judgment entitled to deference by the courts of Florida.

But even if the judgment was still outstanding, the U.S. Supreme Court has stated that "[a] judgment rendered in violation of due process is void in the rendering State and is not entitled to full faith and credit elsewhere." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980). As the Trustee stated after conducting an examination under oath of Mr. Meehan, the Judgment by Confession was entered with Mr. Houle acting for both the plaintiff and the defendant. The records submitted by Selective in its motion to intervene shows that NLG received no notice or opportunity to be heard because

---

[2] The letter is attached as Exhibit "B."

Houle was acting for both Quebec and NLG.  Without notice, a foreign court lacks personal jurisdiction, and the "foreign judgment need not be recognized." *Williams v. Cadlerock Joint Venture, L.P.*, 980 So. 2d 1241, 1243 (Fla. 4th DCA 2008).

By continuously postponing the hearing on NLG's motion to vacate before the New York court, NLG has never had a full and fair opportunity to litigate the issue of personal jurisdiction in the foreign court.  *See Whipple v. JSZ Fin. Co., Inc.*, 885 So. 2d 933, 936 (Fla. 4th DCA 2004); Williams, 980 So. 2d at 1243; see also Stoll v. Gottlieb, 305 U.S. 165, 172-73, 59 S. Ct. 134, 83 L. Ed. 104 (1938) ("After a party has his day in court, with opportunity to present his evidence and his view of the law" as to jurisdiction, "a former judgment in a state court is conclusive" and not subject to collateral attack).

If a defendant has not had "the opportunity to contest jurisdiction, he may raise the issue subsequently in a proceeding brought to enforce the judgment." *Williams*, 980 So. 2d at 1243 (citation omitted). *See also Riskin v. Miklos*, 569 So. 2d 940, 941 (Fla. 3d DCA 1990) ("[W]here the jurisdictional issue is not fairly litigated in the initial court, the defendants are free to raise the question de novo in the jurisdiction in which enforcement of the judgment is attempted.").

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 27 of 72

*Conclusion*

For the foregoing reasons, the Second Amended Motion for Judgment of Foreclosure is

hereby GRANTED.   The Court will hereafter enter a Final Judgment of Foreclosure upon the

presentation of updated affidavits.


ORDERED at Miami, Miami-Dade County, Florida, on this 1st day of December, 2015.



_____
Circuit Court Judge

MONICA GORDO
CIRCUIT  COURT JUDGE

Judgment Prepared by:
Plaintiff's Counsel:
Juan Ramirez, Jr
Diaz, Reus & Targ, LLP
100 SE 2nd Street, Suite 3400
Miami, Florida 33131

Copies Furnished to:

Roger Slade, Esq.
Jonathan S. Goldstein, Esq.
Matthew David Glachman, Esq.
Mark Cohen, Esq.
Daniel A. Milian, Esq.
Bruce Jacobs, Esq.

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 28 of 72

# EXHIBIT "A"

Case 16-10389-AJC   Doc 742-3   Filed 10/04/18   Entered 10/06/15 14:29:22

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

In Re:                                           Chapter 7

Selective Advisors Group LLC,                    Case No. 815-72153-A736

            Debtor.                              <u>Affirmation in Support</u>

--------------------------------------------------------X

Marc A. Pergament, duly affirms under the penalties of perjury as follows:

1.     I am an attorney admitted to practice law in the United States Court of Appeals for the Second Circuit and the United States District Court for the Eastern and Southern Districts of New York and am a member of Weinberg, Gross & Pergament LLP, attorneys for the Trustee.

2.     I am also the Trustee of this Estate and am familiar with the facts and circumstances set forth herein.

3.     This Affirmation is submitted in support of my request that the Court scheduling a hearing on shortened notice: (a) approving the dismissal of this bankruptcy case with prejudice; (b) authorizing the Debtor to pay Weinberg, Gross & Pergament LLP the sum of $6,500.00 for services rendered; and (c) such other and further relief that this Court deems just and proper.

4.     On May 18, 2015, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. The initial bankruptcy filing was a bare bones petition filed by the Debtor. The manager who signed the petition was Sean N. Meehan. Mr. Meehan failed to appear at the § 341(a) meeting scheduled for June 24, 2015. The Debtor's counsel appeared on that date and requested an adjournment of the 341(a) meeting.

5.     I directed the Debtor to file all necessary schedules and a Statement of Financial Affairs by June 30, 2015 and appear for an examination pursuant to § 341(a) on July 1, 2015.  A further request for an adjournment of the § 341(a) meeting was declined.

6.     On July 1, 2015, Mr. Meehan appeared for an examination with Debtor's counsel after the Debtor had filed the schedules and Statement of Financial Affairs, which were filed on June 30, 2015.

7.     My review of the file, schedules and documents that had been previously provided to me indicated that there are many facts that questioned the good faith filing by the Debtor in this Chapter 7 case.

8.     Specifically, the schedules revealed that the sole creditor of the Debtor was its former attorney, Joseph Nierman, and he was alleged to be owed the sum of $3,500.00. The Debtor's Schedule F indicated that it was a disputed claim.

9.     The Debtor's counsel disclosed that the Debtor was formed in August 2014 and its sole asset was a Judgment that it held by way of Affidavit of Confession of Judgment against NLG LLC in the sum of $5,000,000.00, plus interest.  The Judgment, however, was based on an Assignment by 9197-5904 Quebec Inc. to the Debtor of a Judgment that it had obtained against NLG LLC, which had been filed in the New York County Clerk's office on February 22, 2012.  A copy of the Assignment of Judgment is annexed hereto as Exhibit "A." However, that Judgment was premised on an Affidavit signed by Raymond Houle who claimed to be the president of 9197-5904 Quebec, Inc., and was also the manager of NLG LLC.  The Affidavit of Confession did not provide any additional information to substantiate the basis for the Judgment.  A copy of the Affidavit of Confession of Judgment of NLG LLC and Affidavit of Raymond Houle is annexed hereto as Exhibit "B."

2

10.     After applying the oath, I questioned Mr. Meehan at his § 341(a) meeting concerning the Judgment and he advised me that he had no knowledge as to the underlying basis for the Judgment and that he claimed that no money was paid by the Debtor to 9197-5904 Quebec, Inc. for the Assignment of the Judgment, except that there was an unspecified "deal" whereby the Debtor would pay a certain amount to the Assignor upon collection of the Judgment.

11.     As I questioned Mr. Meehan in depth at the § 341(a) meeting, it became apparent that the Judgment was the subject of a contentious dispute with NLG LLC. I reviewed certain public records and certain information which indicated that there is a pending foreclosure lawsuit in the State of Florida with respect to the real property known as 6913 Valencia Drive, Miami, Florida ("Miami Residence") and the Miami Residence was also Mr. Meehan's residence. Mr. Meehan disclosed that title to the Miami Residence was held by his wife, Elizabeth Hazan, and that she was in a dispute with NLG LLC concerning foreclosure of the Miami Residence.

12.     Mr. Meehan testified that he filed bankruptcy in the United States Bankruptcy Court for the Eastern District of New York because the place of business of this Debtor was 103 West Tano Road, Hampton Bays, New York ("Hampton Bays Residence"), which is the residence of Mr. Meehan's parents and he claims that he sometimes spends the summers at the Hampton Bays Residence, although he does not presently reside there.

13.     Thus, there is a question as to the validity of the venue selected by Mr. Meehan for this bankruptcy case.

14.     I was in communication with NLG LLC's counsel and he provided me with substantial information and documents, including documentation indicating that the United

3

Case 16-10389-AJC    Doc 742-3    Filed 10/04/18    Entered 08/06/13 14:29:22

States Bankruptcy Court for the Eastern District of Pennsylvania had previously determined that an involuntary bankruptcy proceeding that had been filed against Christopher Kosachuk was a bad faith filing and that Court determined that an award of monetary sanctions of $190,173.71 in favor of Mr. Kosachuk and against 9197-5904 Quebec, Inc. was warranted. A copy of that Order and Judgment of the Honorable Jean K. FitzSimon is annexed hereto as Exhibit "C."

15.    Judge FitzSimon's Judgment also awarded sanctions against 9197-5904 Quebec, Inc. in the sum of $960,968.55.

16.    The dispute with respect to the Judgment is evident.

17.    As Mr. Meehan's testimony was not plausible with respect to the entry of the Order and Judgment nor with respect to the underlying Judgment, I believe that dismissal of this case with prejudice is appropriate so the Debtor and NLG LLC can continue their litigation in other forums.

18.    NLG LLC had moved by order to show cause to vacate the Judgment that had been filed by 9197-5904 Quebec, Inc. and the bankruptcy was filed a couple of hours before the hearing to be heard by the Supreme Court of the State of New York, County of New York, on May 18, 2015 for the vacating of the Judgment as NLG LLC had not learned of that Judgment until 2015.

19.    I inquired of Mr. Meehan as to the claim of Mr. Nierman and he explained that there was a dispute as to the amount owed and that reason for the bankruptcy filing was that Mr. Nierman was refusing to turnover his litigation file concerning the dispute with NLG LLC. I found that claim to be suspicious as the Debtor already had obtained an Assignment of Judgment of 9197-5904 Quebec, Inc. against NLG LLC and thus, the litigation file was of no import. Mr. Meehan was unable to provide any explanation.

Case 16-10389-AJC    Doc 742-3    Filed 10/04/18    Page 44 of 83

20.    For these reasons, I negotiated a resolution whereby this case is dismissed with prejudice and my firm is paid for services rendered.  A copy of the Stipulation is annexed hereto as Exhibit "D."

21.    I have requested a hearing on shortened notice as the Debtor would be benefited by a lengthy delay.

22.    It is also requested that this Court waive the requirement of the filing of a memorandum of law as no novel issue of law is present with respect to the issues herein.

23.    No prior application has been made to this or any other Court for the relief requested herein.

WHEREFORE, it is respectfully requested that this Honorable Court grant the Trustee's motion in its entirety and such other and further relief that this Court deems just and proper.

Dated:   Garden City, New York
         August 6, 2015

Marc A. Pergament

5

# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Index No. 101875/2012

-------------------------------------------------------x
9197-5904 QUEBEC INC
  Plaintiff,

                        -against-

NLG LLC
                        Defendant.
-------------------------------------------------------

ASSIGNMENT OF JUDGMENT

This indenture made the 30th day of April 2014, between 9197-5904 Quebec inc a Canadian Corporation located at 5552 Queen Mary Road Suite #4, City of Hampstead, State of Quebec, Canada H3X 1V9 party of the first part, and Selective Advisors Group, LLC, located at 16192 Coastal Highway Lewes. Delaware 19958 County of Sussex, party of the second part,

WHEREAS, on the 22nd day of February,2012 a judgment was entered in the Supreme Court, County of NY, in favor of 9197-5904 Quebec Inc , and against NLG LLC, a Delaware Limited Liability Company located at 854 Pheasant Run Road, West Chester, PA in the sum of $5,000,000.00 plus interest from February 22nd 2012 plus costs of $225.00, and said judgment was duly entered in the office of the Clerk of the County of New York State, NY on the 22nd day of February 2012.

NOW THIS INDENTURE WITNESSETH, that the said party of the first part, in consideration of $10 and other valuable consideration to them duly paid has sold, and by these presents does assign, transfer and set over, unto the said party of the second part, Selective Advisors Group, LLC, its executors, administrators, and assigns, the said judgment and all sum or sums of money that may be had or obtained by means thereof, or on any proceedings to be had thereupon.

Also, the said party of the first part does hereby constitute and appoint the said party of the second part, its executors, administrators, and assigns, their true and lawful attorney irrevocable, with power of substitution and revocation, for the use and at the proper costs and charges of the said party of the second part, to ask, demand, and receive, and to obtain executions, and take all lawful ways for the recovery of the money due or to become due on said judgment and on payment to acknowledge satisfaction, or to discharge the same; and attorneys one or more under them for the purpose aforesaid, to make and substitute, and at pleasure to revoke; hereby ratifying and confirming all that their said attorney or substitute shall lawfully do in the premises. Also, the said party of the first part does covenant, that that they will not collect or receive the full payment of the judgment, or any part thereof, nor release or discharge the said judgment but will allow all lawful proceedings therein to be taken by the said party of the second part, saving the said party of the fist part harmless of and from any costs in the premises.. This assignment is made without recourse to the party of the first part in any event whatsoever.

IN WITNESS WHEREOF, the party of the first part has hereunto set his hand and seal the day and year first above written.

On behalf of 9197-5904 QUEBEC INC :

RAYMOND HOULE, president

## ACKNOWLEGEMENT

State of _____Quebec_____

County of _____D'Arcy McGee_____ ss.:

On the ____3____ day of ____June____ in the year 20*14*, before me, Raymond Houle, personally appeared, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public

Raymond Houle

## CERTIFICATE OF CONFORMITY

I, Pierrette Tardif, a duly licensed notary public in the Province of Quebec, Canada, affirm under penalty of perjury and certify that I witnessed the signature of Raymond Houle as applied to the document annexed to this certificate, which was signed and dated on June 3/ 2014. The matter in which was signed was, and is, in accordance with, and conforms to, the laws for taking oaths at acknowledgments, in the Province of Quebec, Canada.

Dated: June 3/ 2014

NOTARY PUBLIC
NAME:

PIERRETTE
TARDIF
# 198036

# EXHIBIT B

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

**Address of Plaintiff:**
3765 Saint-Kevin, Ste 9
Montreal, Quebec H3T 1H8
Canada

9197-5904 Quebec, Inc.

                              **Plaintiff,**

Index No.:

**JUDGMENT BY CONFESSION**

           **against**

NLG, LLC, a Delaware Limited Liability Company,

                              **Defendant.**

12101875

| | | |
|---|---|---|
| Amount Confessed | $5,000,000.00 | |
| Interest | $0.00 | $ 5,000,000.00 |
| Costs by Statute | $15.00 | |
| Transcript | | |
| Fees on Execution | | |
| Satisfaction | | |
| Filing Fee | $210.00 | $ 5,000,225.00 |

        The undersigned, Attorney at Law of the State of New York, affirms that he is the

attorney of record for the Plaintiff herein and states that the disbursements specified are correct

and true and have been or will necessarily be made or incurred herein and are reasonable in

amount and affirms this statement to be true under the penalties of perjury.

Dated:  February 16, 2012

**MARZEC LAW FIRM, PC**

I HEREBY CERTIFY THAT I HAVE
ADJUSTED THIS BILL OF COSTS AT
$ 225.00

FEB 22 2012

Norman Goodman
CLERK

Darius A. Marzec, Esq.
Attorney for Plaintiff
225 Broadway, Suite 3000
New York, NY 10007
(212) 267-0200

**FILED**

FEB 22 2012

**COUNTY CLERKS OFFICE
NEW YORK**

EXHIBIT A

JUDGMENT entered the _22ⁿᵈ_ day of _February_, 20_12_

On the foregoing affidavit of Confession of Judgment made by the defendant herein,

sworn to the on the 16th day of February 2012,

**NOW, ON MOTION OF MARZEC LAW FIRM, PC,** attorney for plaintiff, it is

ADJUDGED that 9197-5904 Quebec, Inc. Plaintiff, with the address of  3765 Saint-

Kevin, Suite 9, Monteal, Quebec H3T 1H8, Canada, do recover of **NLG**, LLC,* Defendant, with

the address of 6499 North Powerline Road, Suite 304, Fort Lauderdale, Florida 33309, the sum

of $5,000,000.00 with interest of $0.00, making a total sum of $5,000,000.00 together with

$225.00 costs and disbursements, as taxed by the clerk          amounting in all to the sum of

$5,000,225.00 and that the plaintiff have execution therefor.

_Norman Goodman_
CLERK

**FILED**

FEB 22 2012

COUNTY CLERK'S OFFICE
NEW YORK

✳ Defendant's full name is:
NLG, LLC, a Delaware Limited
Liability Company

EXHIBIT A

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

Index No. 01875/12

9197-5904 Quebec, Inc.,

                                    Plaintiff,

            against

NLG, LLC, A Delaware Limited
Liability Company,
                                    Defendant.

**AFFIDAVIT OF
CONFESSION OF
JUDGMENT**

**FILED**

FEB 22 2012

COUNTY CLERKS OFFICE
NEW YORK

**STATE OF NEW YORK**

**COUNTY OF NEW YORK**          ss.:

Raymond Houle, being duly sworn, deposes and says; that deponent is the Manager and duly authorized agent of the defendant Limited Liability Company and is duly authorized to make this Affidavit on behalf of the LLC defendant herein.

The defendant hereby confesses judgment herein and authorizes entry thereof against defendant in the sum of $5,000,000.00.

Defendant's address is 6499 North Powerline Road, Suite 304, Fort Lauderdale, Florida 33309; Defendant authorizes entry of judgment in New York County, New York, if said residence address is not in New York State.

This confession of judgment is for a debt justly due to the plaintiff arising from the following facts: Fraud and Abuse of Process.

This affidavit, if made in connection with an agreement for the purchase for $1,500.00 or less of any commodities for any use other than a commercial or business use upon any plan of deferred payments whereby the price or cost is payable in two or more installments, was executed, subsequent to the time a default occurred in the payment of an installment thereunder.

Sworn to before me this
16 day of Febuary, 2012

                                    9197-5904 Quebec, Inc. by Raymond Houle, Manager
                                    MANAGER, NLG LLC

                                    Darius A. Marzec
                                    Notary Public State of New York
                                    No. 02MA6186309
                                    Qualified in Queens County
                                    Commission Expires 04/28/2012

NOTARY PUBLIC

EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Index No. 10 875/12

9197-5904 Quebec, Inc.,

                                    Plaintiff,

        against

NLG, LLC,

                                    Defendant.

**AFFIDAVIT OF
RAYMOND HOULE**
REGARDING FACTS
SUPPORTING
JUDGMENT

STATE OF NEW YORK

COUNTY OF NEW YORK        ss.:

Raymond Houle, being duly sworn, deposes and says; that deponent is the Manager and duly authorized agent of the defendant Limited Liability Company and is duly authorized to make this Affidavit on behalf of the LLC defendant herein.

This confession of judgment is for a debt justly due to the plaintiff arising from the following facts: Defendant has consistently abused its legal position by filing frivolous litigation documents, affidavits, pleadings, and motions, in and without the state, misrepresenting the truth concerning key facts regarding the mode of operation, personnel, employees, corporate documents and status of defendant; Defendant has failed to abide by rules of court with respect to discovery, disclosures and subpoena power of the court and counsel, and has made litigation process difficult, wasteful, and expensive to adversary/ies. All actions of Defendant constitute abuse of process and fraud upon the court and parties involved, who were unduly damaged by such fraudulent conduct and abuse of process by Defendant. The conduct of Defendant was intentional and malicious and calculated to cause additional expense, delay and harassment to defendant's adversaries; such conduct was illegal, improper, unethical and unnecessary to the administration of justice and process in these matters, giving Plaintiff a cause of action.

EXHIBIT A

Exhibits to NJ G. LLC's Answer, Affirmative Defenses Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 42 of 72'

RAYMOND HOULE

Sworn to before me on the 21 day of February, 20 12

Notary Public

Darius A. Marzac
Notary Public State of New York
No. 02MA6186309
Qualified in Queens County
Commission Expires 04/28/20.

Darius A. Marzac
Notary Public State of New York
No. 02MA6186309
Qualified in Queens County
Commission Expires 04/28/20 12

FILED

FEB 2 2 2012

COUNTY CLERK'S OFFICE
NEW YORK

EXHIBIT A

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**                                    Index No.

9197-5904 Quebec, Inc.,

                                        **Plaintiff,**

        **against**

NLG, LLC., A DELAWARE LIMITED LIABILITY
            COMPANY,

                                        **Defendant.**

---

**JUDGMENT BY CONFESSION**
**AFFIDAVIT OF JUDGMENT BY CONFESSION**

---

**ATTORNEYS FOR PLAINTIFF**
Marzec Law Firm, P.C.
Darius A. Marzec, Esq.
225 Broadway, Suite 3000
New York, NY 10007
212-267-0200

**FILED AND
DOCKETED**

FEB 2 2 2012

AT   10:25 A M
N.Y., CO. CLK'S OFFICE

---

**CERTIFICATION**

Pursuant to Section 130-1.1, the following documents are hereby certified:

By: Darius A. Marzec, Esq.
MARZEC LAW FIRM PC
Attorneys for Plaintiff
225 Broadway, Ste. 3000
New York, NY 10007
(212) 267-0200

DOCKETED BY

EXHIBIT A

Exhibits to Answer, Affirmative Defenses, Counterclaims and Crossclaim
Case No. 2013-25902 CA 01
Page 44 of 72

# EXHIBIT C

Case 16-10389-AJC    Doc 742-3    Filed 10/04/18    Page 56 of 83

Exhibits to NEG, EPC's Answer, Affirmative Defenses, Counterclaim and Crossclaim 00/06/15 14:29:22
Case No. 2013-25902 CA 01
Page 45 of 72

Case 12-16438-jkf*SEALED*    Doc 211 *SEALED*    Filed 03/24/15    Entered 03/24/15
                15:32:21    Desc Main Document    Page 1 of 2

## IN THE UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF PENNSYLVANIA

In re:                                          :    DISMISSED CHAPTER 7 INVOLUNTARY

                                                :    CASE NO. 12-16438(JKF) *SEALED*
CHRISTOPHER    KOSACHUK,    a.k.a.              :
CHRIS KOSACHUK                                  :
                                                :
                                                :

### ORDER AND FINAL JUDGMENT

Upon consideration of the Motion of Christopher Kosachuk to Declare this Involuntary

Bankruptcy Petition a Bad Faith Filing, for Costs, Compensatory and Punitive Damages, to Seal

the Records and Sanctions (the "Motion") with respect to 9197-5904 Quebec, Inc. and the

arguments of counsel and evidence admitted at the trial conducted before this Court on March

18, 2015, it is **ORDERED, ADJUDGED AND DECREED:**

1.      The Motion is **GRANTED** as to 9197-5904 Quebec, Inc. without effect on the

Motion as to the claims asserted and relief sought in the Motion against Darius A. Marzec, Esq.

2.      Final Judgment for monetary sanctions in the amount of $192,173.71 pursuant to

11 U.S.C. §§ 105(a) and 303(i)(1), representing the reasonable costs and attorneys' fees incurred

by Mr. Kosachuk in this matter, is awarded to Chris Kosachuk against 9197-5904 Quebec, Inc.,

plus prejudgment interest and post judgment interest at the federal judgment rate of interest.

3.      Final Judgment for monetary sanctions in the amount of $ 960,968.55 pursuant to

11 U.S.C. § 303(i)(2)(B) and this Court's inherent powers, representing punitive damages, is

awarded to Chris Kosachuk against 9197-5904 Quebec, Inc., plus prejudgment interest and post

judgment interest at the federal judgment rate.

118113055_1

4.      Final Judgment pursuant to 11 U.S.C. § 105(a) and this Court's inherent powers, is awarded to Chris Kosachuk that the indebtedness of Chris Kosachuk with respect to that certain judgment issued by the Supreme Court, County of New York, under Index No. 103896/2004 in favor of Eugenia Lorret and against Chris Kosachuk in the sum of $150,732.45 accounting for $108,293.54, plus interest of $41,388.91 from November 25, 2002, plus costs of $1,050, and which judgment was thereafter modified and reduced on May 12, 2008 to the sum amount of $48,293.54, plus costs of $1,050, plus interest from November 25, 2002, and which judgment was assigned to 9197-5904 Quebec, Inc. on December 15, 2009 by Assignment of Judgment, and which judgment was further assigned to SRS Techonologies Professionals, LLC by Assignment of Judgment, dated February 10, 2014, Index No. 103896/2004, and Corrected Assignment of Judgment, dated February 10, 2014, is hereby cancelled nunc pro tunc to July 6, 2012.

5.      This Final Judgment may be recorded as a matter of public record.

6.      This Final Judgment is effective immediately upon entry and this Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and Final Judgment.

7.      Chris Kosachuk shall be entitled to writs of execution and all other legal process to enforce this Final Judgment permitted by Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure and applicable law.

March 24th 2015

BY THE COURT:

The Honorable Jean K. FitzSimon
United States Bankruptcy Judge

118113055_1

# EXHIBIT D

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

In Re:                                        Chapter 7

Selective Advisors Group LLC,                 Case No. 815-72153-A736

      Debtor.                                <u>Stipulation of Settlement</u>

--------------------------------------------------------------X

      Whereas, the Debtor having filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code,

      Whereas, the Debtor having appeared for examination pursuant to § 341(a) of the Bankruptcy Code,

      Whereas, the Trustee having raised issues as to whether this filing was a good faith bankruptcy filing by the Debtor,

      Whereas, there is an issue concerning whether the Debtor has any creditors in this bankruptcy case,

      Whereas, the Trustee's attorneys, Weinberg, Gross & Pergament LLP having expended substantial time and effort in trying to understand this bankruptcy case and all of the related litigation between the Debtor and NLG LLC,

      It is hereby Stipulated and Agreed as follows:

      1.     This bankruptcy case is dismissed with prejudice.

      2.     The Debtor shall pay the sum of $6,500.00 to Weinberg, Gross & Pergament LLP for the attorneys' fees and costs incurred in investigating the claims asserted by the Debtor in the bankruptcy petition and related State Court lawsuits.

3.    This Stipulation represents the entire agreement between the parties and may not be modified unless in writing signed by the parties and is subject to approval by the Bankruptcy Court.

4.    The parties acknowledge that the United States Bankruptcy Court for the Eastern District of New York shall retain jurisdiction with respect to the interpretation and enforcement of this Stipulation of Settlement and the terms herein.

Dated: Garden City, New York
       July 23, 2015

Weinberg, Gross & Pergament LLP
Attorneys for Trustee

By: _____

Marc A. Pergament
400 Garden City Plaza, Suite 403
Garden City, New York  11530
(516) 877-2424

Vlahadamis & Hillen, LLP
Attorneys for Debtor

By: _____

Evans M. Hillen
148 East Montauk Highway, Suite 3
Hampton Bays, New York  11946
(631) 655-4115

"So Ordered"

2

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 50 of 72

# EXHIBIT "B"

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 51 of 72

# VLAHADAMIS & HILLEN LLP

## Attorneys and Counselors at Law

8 E. Montauk Highway, Suite 3          Telephone: 631.594.5400
Hampton Bays, NY 11946                       Fax: 631.594.5401
                                                       www.vhlawny.com

*JAMES F. VLAHADAMIS                        EVANS M. HILLEN
james@vhlawny.com                           evans@vhlawny.com

*Admitted in NY & NJ

                                September 4, 2015

Via Fed Ex
Hon. Shlomo S. Hagler
c/o Meshulum Bulls
Supreme Court, Civil Term
New York County
60 Centre Street
Room 335
New York, New York 10013

> RE: 9197-5904 QUEBEC, INC. (Selective Advisors Group, LLC, Judgment Assignee)
>      v. NLG, LLC
>      Index No.:  101875/2012

Hon. Judge Hagler,

     Please be advised that my firm represents the Selective Advisors Group LLC, plaintiff judgment creditor herein. This correspondence shall constitute a courtesy notification that plaintiff accepted payment in full satisfaction of the judgment outstanding against NLG, LLC and has caused the annexed Satisfaction of Judgment to be recorded with the county clerk's office.

     Given the foregoing, it would be unsuitable for this Court to entertain any application of NLG, LLC (such as one filed by letter on September 3, 2015) seeking to restore the motion to vacate the judgment as there currently exists no judgment to vacate and the matter remains moot. Thank you for your attention to this matter.

                                Sincerely yours,

                                James F. Vlahadamis

CC:
ARI MOR, Esq. (Attorney for NLG, LLC)
JONATHAN BORG, Esq. (Attorney for ADR Miami, LLC, nonparty movant)

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 52 of 72

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------------------------------------------X
SELECTIVE ADVISORS GROUP, LLC, A DELAWARE
LIMITED LIABILITY COMPANY,
Assignee of 9197-5904 Quebec Inc

Plaintiff,              Index No: 101875/2012

NOTICE OF FILING
SATISFACTION OF
JUDGMENT

- against -

NLG, LLC, A DELAWARE LIMITED LIABILITY
COMPANY,

Defendant.
--------------------------------------------------------------------X

PLEASE TAKE NOTICE that the Plaintiff Assignee Selective Advisors Group, LLC is

hereby filing a Satisfaction of Judgment.

Dated: September 3, 2015
       New York, New York


Vlahadamis & Hillen, LLP

                              By:    /s/ James F. Vlahadamis
                                     James F. Vlahadamis, Esq.
                                     148 E. Montauk Highway
                                     Suite 3
                                     Hampton Bays, New York 11946



TO:    THE LAW OFFICES OF ARI MOR, ESQ
       347 E 65th Street, Suite 2RW
       New York, New York 2RW
       (347) 850-0378
       ari.mor.esq@gmail.com

       ATTORNEY FOR DEFENDANT
       NLG, LLC, a Delaware Limited Company

JONATHAN M. BORG BEDELL & FORMAN LLP
44 Wall Street, 10th Floor
(646) 219-7551
jborg@bedell-forman.com

ATTTORNEY FOR ADR MIAMI LLC ("ADRM")

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 54 of 72



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------X

SELECTIVE ADVISORS GROUP, LLC, A DELAWARE
LIMITED LIABILITY COMPANY,
Assignee of 9197-5904 Québec, Inc

Plaintiff,

Index No. 101875/2012

SATISFACTION OF
JUDGMENT

- against -

NLG, LLC, A DELAWARE LIMITED LIABILITY
COMPANY,

Defendant.

-------------------------------------------------------------------X

## SATISFACTION OF JUDGMENT

WHEREAS, a judgment was entered in the above entitled action On February 22, 2012 In

favor of 9197-5904 QUEBEC, INC Against NLG, LLC In the sum of $5,000,000.00 plus

costs of $225.00, and said $5,000,225.00 judgment

Which was docketed in the Office of the Clerk of the County of New York, On February

22, 2012 and

WHEREAS said judgment has been assigned on April 30, 2014 to Selective Advisors

Group, LLC and

WHEREAS said judgment has been paid in full (Plaintiff has accepted a partial payment

that is hereby deemed as payment in full satisfaction of the judgment) on September 1,

2015 and the amount of $0.00 remains unpaid, and

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 56 of 72

It is certified that there is no outstanding execution with the Sheriff or Marshal within the
State of New York, and

WHEREAS the undersigned is the holder of said judgment and said judgment has not been
assigned,

THEREFORE, full satisfaction of the judgment is hereby acknowledged and said Clerk is
hereby authorized and directed to make an entry of said satisfaction on the docket of said
judgment.

IN WITNESS WHEREOF, the party of the first part has hereunto set his hand and seal the
day and year first above written.

On behalf of
SELECTIVE ADVISORS GROUP, LLC:

Dated: 9/3/15

Sean    Neil    Meehan ; manager

ACKNOWLEGEMENT

COUNTY OF _____

On the 3rd day of _____ the year 2015 before me, Sean Neil Meehan, the
undersigned, personally appeared personally known to me or proved to me on the basis of
satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in
his/her/their capacities and that by his/her/their signature(s) on the instrument, the

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 57 of 72

...ndividual(s), or the person upon behalf of which the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

_____
Sean Neil Meehan

## CERTIFICATE OF CONFORMITY

I, _Diane Bibeau_, a duly licenced notary public in the province of _Quebec_, Canada, affirm under penalty of perjury and certify that I witnessed the signature of Sean Neil Meehan as applied to the document annexed to this certificate, which was signed and dated on September 3, 2015. The matter in which acknowledged, in accordance with, and conforms to, the laws for taking oaths at acknowledgements, in the province of Quebec, Canada.

Dated: September 3th 2015

_____
NOTARY PUBLIC
NAME:

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 58 of 72

<u>AFFIRMATION OF SERVICE</u>

STATE OF NEW YORK      )
                                        )      SS.:
COUNTY OF NEW YORK  )

I, James Vlahadamis, being sworn, say, I an attorney duly admitted to practice law in the State of New York.  On September 3, 2015, I served the within Notice of Filing of Judgment Satisfaction and Satisfaction of Judgment by depositing a true copy thereof enclosed in a post-paid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State, addressed to the following person at the last known address set forth after the name:

TO:      THE LAW OFFICES OF ART MOR, ESQ.
            347 E 65th Street, Suite 2RW
            New York, New York 2RW
            (347) 850-0578
            art.mor.esq@gmail.com

            ATTORNEY FOR DEFENDANT
            NLG, LLC, a Delaware Limited Company

            JONATHAN M. BORG BEDELL & FORMAN LLP
            44 Wall Street, 10th Floor
            (646) 219-7551
            jborg@bedell-forman.com

            ATTTORNEY FOR ADR MIAMI LLC ("ADRM")


Vlahadamis & Hillen, LLP

                                        By:      /s/ James F. Vlahadamis
                                                    James F. Vlahadamis, Esq.
                                                    148 E. Montauk Highway
                                                    Suite 3
                                                    Hampton Bays, New York 11946

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 59 of 72

# EXHIBIT D

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 60 of 72

CFN: 20150812181 BOOK 29902 PAGE 3737
DATE:12/24/2015  01:09:49 PM
HARVEY RUVIN, CLERK OF COURT, MIA-DADE C

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

NLG, LLC,

      Plaintiff

v.

ELIZABETH HAZAN; an individual;
UNKNOWN SPOUSE OF ELIZABETH HAZAN;
an individual; J.P. MORGAN CHASE BANK, N.A.;
a foreign Corporation, 6913 VALENCIA, LLC,
a Florida Limited Liability Corporation;
FISHER ISLAND COMMUNITY ASSOCIATION, INC.;
a Florida Non Profit Corporation; VALENCIA ESTATES
HOMEOWNERS ASSOCIATION, INC., a Florida
Non Profit Corporation; and JOHN DOE and
JANE DOE, individually, as unknown Tenants
in possession of the Subject Property

      Defendants

_____/

GENERAL JURISDICTION DIVISION

2011-42770 CA 01

CASE NO.: 2011-42270 CA (02)

FILED

DEC 04 2015

CLERK CIRCUIT & COUNTY COURTS

FORECLOSURE

### FINAL JUDGMENT OF FORECLOSURE
### (Pursuant to Administrative Order 09-09)

**THIS ACTION** was remanded for enforcement of Plaintiff NLG's mortgage on

mandate from the Third District Court of Appeals on November 25, 2014;

**IT IS ORDERED AND ADJUDGED** that: FINAL JUDGMENT OF

FORECLOSURE in favor of the Plaintiff is GRANTED against all Defendants. Service

of process has been duly and regularly obtained over all Defendants in this action and this

Court has jurisdiction over the parties in this action and the subject matter herein.

1.   **Amounts Due.** There is due and owing to the Plaintiff NLG, LLC the following

from Defendant ELIZABETH HAZAN:

    Principal due on the note secured by the mortgage foreclosed, as set forth in the

Opinion of the Third District Court of Appeal:

        **$1,618,071.29.**

Per diem interest from May 1, 2008 to December 3, 2015, also as set forth in the opinion

of the Third District Court:

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 61 of 72

CFN: 20150812181 BOOK 29902 PAGE 3738

## $2,953,489.91

(Per Diem interest accruing at the rate of $1,063.94 for each day after December 3, 2015 until the sale date of the property.)

Attorneys' fees prosecuting this action:

| | |
|---|---|
| Christopher David, Esq.: | $155,300 |
| Rafael Recalde, Esq.: | $25,714 |
| Jonathan Pollard, Esq.: | $7,500 |
| Megan Wells, Esq.: | $21,890 |
| Juan Ramirez, Jr, Esq.: | $137,661 |
| Title search expenses: | $150.00 |

**Court Costs:**

| | |
|---|---|
| Trial Court Filing Fee: | $1,906.00 |
| Appellate Court Filing Fee: | $300.00 |
| Service of Process: | $3,624.00 |

Less payments upon Final Judgment entered on the note dated April 28, 2008 in the action styled NLG, LLC v. Elizabeth Hazan with case number 2007-19532-CA-11:

($70,285.05)

Additional Costs:

Property Maintenance          $21,333.14

**GRAND TOTAL: $4,876,654.29**

2.    **In Rem Judgment.** This Final Judgment of Foreclosure is an **in rem judgment** against the Defendants. With the exception that any deficiency is hereby taxed against Defendant ELIZABETH HAZAN, there are no in personam damages against said other Defendants.

3.    **Lien on Property.** Plaintiff, whose address is 854 Pheasant Run Road, West Chester, PA, 19382, holds a lien for the grand total sum specified in Paragraph 1 herein. The lien of the plaintiff is superior in dignity to any right, title, interest or claim of the Defendants, and all persons, corporations, or other entities claiming by, through, or under the defendants or any of them and the property will be sold free and clear of all claims of

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 62 of 72

CFN: 20150812181 BOOK 29902 PAGE 3739

the defendants.  The plaintiff's lien encumbers the subject property located in Miami Dade County, Florida and described as:

> Lot 7, Block 2, of LINDISFARNE ON FISHER ISLAND SECTION 10, according to the Plat thereof, recorded in Plat Book 157, Page 64, of the Public Records of Miami-Dade County.

Property address: 6913 Valencia Dr., Fisher Island, FL 33109

4.      **Sale of Property.** If the grand total amount with interest at the rate described in Paragraph 1 and all costs accrued subsequent to this judgment are not paid, the Clerk of the Court shall sell the subject property at public sale on ~~December ____, 2015,~~ *January 12, 2016* to the highest bidder for cash, except as prescribed in Paragraph 6, at: www.miamidade.realforeclose.com, the Clerk's website for on-line auctions at 9:00 a.m. after having first given notice as required by Section 45.031, Florida Statutes.

5.      **Costs.** Plaintiff shall advance all subsequent costs of this action and shall be reimbursed for them by the Clerk if plaintiff is not the purchaser of the property for sale. If plaintiff is the purchaser, the Clerk shall credit plaintiff's bid with the total sum with interest and costs accruing subsequent to this judgment, or such part of it, as is necessary to pay the bid in full. The Clerk shall receive the service charge imposed in Section 45.031, Florida Statutes, for services in making, recording, and certifying the sale and title that shall be assessed as costs.

6.      **Right of Redemption.** On filing of the Certificate of Sale, defendant's right of redemption as proscribed by Florida Statutes, Section 45.0315 shall be terminated.

7.      **Distribution of Proceeds.** On filing the Certificate of Title, the Clerk shall distribute the proceeds of the sale, so far as they are sufficient, by paying: first, all of the plaintiff's costs; second, documentary stamps affixed to the Certificate; third, plaintiff's attorneys' fees; fourth, the total sum due to the plaintiff, less the items paid, plus interest at the rate prescribed in paragraph 2 from this date to the date of the sale. During the sixty (60) days after the Clerk issues the certificate of disbursements, the Clerk shall hold the surplus, if any, pending further Order of this Court.

8.      **Right of Possession.** Upon filing of the Certificate of Title, defendant(s) and all persons claiming under or against defendant(s) since the filing of the Notice of Lis Pendens shall be foreclosed of all estate or claim in the property and the purchaser at sale

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 63 of 72

CFN: 20150812181 BOOK 29902 PAGE 3740

shall be let into possession of the property, subject to the provisions of the "Protecting Tenant At Foreclosure Act of 2009."

9.    **Attorney Fees.** The Court finds, based upon the affidavits presented and upon inquiry of counsel for the plaintiff, that 211.8 hours were reasonably expended by plaintiff's counsel, Juan Ramirez, Jr. and that an hourly rate of $650 is appropriate. The Court also finds that all other attorneys' fees incurred by NLG were necessary and reasonable because of the extensive litigation in this matter.

PLAINTIFF'S COUNSEL REPRESENTS THAT THE ATTORNEY FEE AWARDED DOES NOT EXCEED ITS CONTRACT FEE WITH THE PLAINTIFF.

The Court finds that there are no reduction or enhancement factors for consideration by the Court pursuant to Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985).

10.    **NOTICE PURSUANT TO AMENDMENT TO SECTION, 45.031, FLA. ST. (2006)**

**IF THIS PROPERTY IS SOLD AT PUBLIC AUCTION, THERE MAY BE ADDITIONAL MONEY FROM THE SALE AFTER PAYMENT OF PERSONS WHO ARE ENTITLED TO BE PAID FROM THE SALE PROCEEDS PURSUANT TO THE FINAL JUDGMENT. IF YOU ARE A SUBORDINATE LIEN HOLDER CLAIMING A RIGHT TO FUNDS REMAINING AFTER THE SALE, YOU MUST FILE A CLAIM WITH THE CLERK NO LATER THAN SIXTY (60) DAYS AFTER THE SALE. IF YOU FAIL TO FILE A CLAIM, YOU WILL NOT BE ENTITLED TO ANY REMAINING FUNDS. IF YOU ARE THE PROPERTY OWNER, YOU MAY CLAIM THESE FUNDS YOURSELF. YOU ARE NOT REQUIRED TO HAVE A LAWYER OR ANY OTHER REPRESENTATION AND YOU DO NOT HAVE TO ASSIGN YOUR RIGHTS TO ANYONE ELSE IN ORDER FOR YOU TO CLAIM ANY MONEY TO WHICH YOU ARE ENTITLED. PLEASE CHECK WITH THE CLERK OF THE COURT, 140 WEST FLAGLER STREET, ROOM 908, MIAMI, FLORIDA**

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 64 of 72

CFN: 20150812181 BOOK 29902 PAGE 3741

**(TELEPHONE: (305) 375-5943), WITHIN (10) DAYS AFTER THE SALE TO SEE IF THERE IS ADDITIONAL MONEY FROM THE FORECLOSURE SALE THAT THE CLERK HAS IN THE REGISTRY OF THE COURT. IF YOU DECIDE TO SELL YOUR HOME OR HIRE SOMEONE TO HELP YOU CLAIM THE ADDITIONAL MONEY, YOU SHOULD READ VERY CAREFULLY ALL PAPERS YOU ARE REQUIRED TO SIGN, ASK SOMEONE ELSE, PREFERABLY AN ATTORNEY WHO IS NOT RELATED TO THE PERSON OFFERING TO HELP YOU, TO MAKE SURE THAT YOU UNDERSTAND WHAT YOU ARE SIGNING AND THAT YOU ARE NOT TRANSFERRING YOUR PROPERTY OR THE EQUITY IN YOUR PROPERTY WITHOUT THE PROPER INFORMATION. IF YOU CANNOT AFFORD TO PAY AN ATTORNEY, YOU MAY CONTACT THE LEGAL AID SOCIETY AT THE DADE COUNTY BAR ASSOCIATION, 123 N.W. FIRST AVENUE, SUITE 214, MIAMI, FLORIDA, (TELEPHONE: (305) 579-5733), TO SEE IF YOU QUALIFY FINANCIALLY FOR THEIR SERVICES. IF THEY CANNOT ASSIST YOU, THEY MAY BE ABLE TO REFER YOU TO A LOCAL BAR REFERRAL AGENCY OR SUGGEST OTHER OPTIONS. IF YOU CHOOSE TO CONTACT THE DADE COUNTY BAR ASSOCIATION LEGAL AID SOCIETY, YOU SHOULD DO SO AS SOON AS POSSIBLE AFTER RECEIPT OF THIS NOTICE.**

11.    **Jurisdiction.** The Court retains jurisdiction of this action to enter further orders that are proper, including, without limitation, writs of possession and deficiency judgments.

DONE AND ORDERED in Chambers at Miami-Dade County, Florida, on 12/04/15.

MONICA GORDO
CIRCUIT COURT JUDGE

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 65 of 72

CFN: 20150812181 BOOK 29902 PAGE 3742

```
┌─────────────────────────────────────────────┐
│  FINAL ORDERS AS TO ALL PARTIES              │
│  SRS DISPOSITION NUMBER    12                │
│                                              │
│  THE COURT DISMISSES THIS CASE AGAINST       │
│  ANY PARTY NOT LISTED IN THIS FINAL ORDER    │
│  OR PREVIOUS ORDER(S). THIS CASE IS CLOSED   │
│  AS TO ALL PARTIES.                          │
│              Judge's Initials   MG           │
└─────────────────────────────────────────────┘
```

The parties served with this Order are indicated in the accompanying 11th Circuit email confirmation which includes all emails provided by the submitter.  The movant shall IMMEDIATELY serve a true and correct copy of this Order, by mail, facsimile, email or hand-delivery, to all parties/counsel of record for whom service is not indicated by the accompanying 11th Circuit confirmation, and file proof of service with the Clerk of Court.

Signed original order sent electronically to the Clerk of Courts for filing in the Court file.

**Copies furnished: Parties of record**

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 66 of 72

# EXHIBIT E

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 67 of 72

# M A N D A T E

### from

## DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
## THIRD DISTRICT

This cause having been brought to the Court by appeal, and after due consideration the Court having issued its opinion;

YOU ARE HEREBY COMMANDED that such further proceedings be had in said cause as may be in accordance with the opinion of this Court, and with the rules of procedure and laws of the State of Florida.

WITNESS the Honorable Frank A. Shepherd, Chief Judge of the District Court of Appeal of the State of Florida, Third District, and seal of the said Court at Miami, Florida on this day.

| | |
|---|---|
| **DATE:** | November 25, 2014 |
| **CASE NO.:** | **13-0684** |
| **COUNTY OF ORIGIN:** | **Dade** |
| **T.C. CASE NO.:** | **11-42770** |

**STYLE:**    NLG, LLC, etc.,              v.    **ELIZABETH HAZAN,**



**ORIGINAL TO:**    Miami-Dade Clerk

cc:  Mark D. Cohen            Allan S. Reiss            Megan K. Wells

la

# Third District Court of Appeal

## State of Florida

Opinion filed September 3, 2014.
Not final until disposition of timely filed motion for rehearing.

———————

No. 3D13-684
Lower Tribunal No. 11-42770

———————

## NLG, LLC,
Appellant

vs.

## Elizabeth Hazan,
Appellee

An Appeal from the Circuit Court for Miami-Dade County, Spencer Eig, Judge.

Megan K. Wells (Miramar), for appellant.

Levine & Partners and Allan S. Reiss; Mark D. Cohen (Hollywood), for appellee.

Before SUAREZ, SALTER and LOGUE, JJ.

SALTER, J.

A mortgage lender, NLG, LLC (NLG), appeals a final judgment for the mortgagor, Elizabeth Hazan.  Finding no basis in the pleadings or applicable law

for the positions advanced by the borrower, we reverse and remand for further proceedings.

### Facts and Procedural Background

It is undisputed that NLG sold a home on Fisher Island to Ms. Hazan in 2007 for $5,100,000.00, receiving a purchase money note and mortgage on the residence from Ms. Hazan for $1,275,000.00 of that amount.  The note and mortgage required an instalment payment of $300,000.00 one month after the sale, and the note was to mature six months after the sale.

When the required payments were not forthcoming, NLG filed a lawsuit for the collection of the promissory note in the Miami-Dade circuit court.  A settlement agreement was entered into, but required payments again were not made.  In April 2008, and in accordance with the settlement agreement, a default final judgment on the promissory note was entered against Ms. Hazan and in favor of NLG for $1,618,071.29, plus post-judgment interest.  That judgment was recorded on May 2, 2008.  The final judgment was affirmed by this Court.  Hazan v. NLG, LLC, 995 So. 2d 504 (Fla. 3d DCA 2008).  Ms. Hazan then obtained new counsel and moved to vacate the judgment on the promissory note.  The motion was denied and Ms. Hazan's further appeal was dismissed by this Court.  Hazan v. NLG, LLC, 19 So. 3d 319 (Fla. 3d DCA 2009).

2

NLG sought and obtained a sheriff's deed to the Fisher Island property by enforcing its judgment. Ms. Hazan moved to vacate that deed, however, on the grounds that the property was her homestead. The then-assigned circuit judge entered an order in December 2008 "quieting title," although Ms. Hazan's motion and the record establish that the order merely extinguished the sheriff's deed. Later, and in this appeal as well, Ms. Hazan argued that the quiet title order also extinguished the lien of NLG's mortgage.

The parties nevertheless entered into a second settlement agreement, and Ms. Hazan made three of the specified payments before defaulting again in February 2009. After additional settlement negotiations were unavailing, NLG filed a complaint to foreclose its mortgage on the Fisher Island home in 2011. In 2012, NLG amended its complaint to add as a defendant the holder of a recorded junior mortgage for $2,000,000.00. NLG alleges that this mortgage was given by Ms. Hazan to a sham Florida limited liability company established by her mother.

The foreclosure case proceeded to non-jury trial, and the trial court entered a final judgment in favor of Ms. Hazan, incorporating the transcript of his post-trial ruling (January 2, 2013) into the final judgment "as though set forth herein." This appeal followed.

Analysis

3

A review of Ms. Hazan's pleadings, applicable law, and the transcript of the trial court's January 2, 2013, hearing, discloses no basis for denying foreclosure to NLG.  Default in payment was undisputed (conceded in writing, as it was, in the various settlement agreements, which also included waivers of any defenses).  The two arguments advanced by Ms. Hazan's counsel were flawed.

First, NLG's prior suit on the promissory note and recordation of a judgment on the note was not an election of remedies precluding the later enforcement of the mortgage.  Junction Bit & Tool Co. v. Village Apartments, Inc., 262 So. 2d 659 (Fla. 1972) (unsatisfied judgment on a promissory note secured by mortgage did not constitute a remedy or a bar to a suit to foreclose the mortgage).  See also Royal Palm Corporate Ctr. Ass'n, Ltd. v. PNC Bank, NA, 89 So. 3d 923 (Fla. 4th DCA 2012).

As to the second argument advanced by Ms. Hazan's counsel, the December 2008 order "quieting title" did not extinguish the mortgage or its lien.  That order quieted title in Ms. Hazan only to the extent it vacated the sheriff's deed obtained by NLG and disentitled anyone in possession (other than Ms. Hazan) to remain in possession.  Neither the motion nor the order support the extinguishment of an unpaid purchase money lien on the home (now exceeding $2,000,000.00), a lien senior to the junior mortgage granted by Ms. Hazan as these proceedings unfolded.  Because there is no legal basis for such relief in Ms. Hazan's pleadings, the trial

4

court's final judgment must be reversed. <u>BAC Home Loans Servicing, Inc. v. Headley</u>, 130 So. 3d 703, 705 (Fla. 3d DCA 2013); <u>Mullne v. Sea-Tech Constr. Inc.</u>, 84 So. 3d 1247, 1249 (Fla. 4th DCA 2012).

Regarding Ms. Hazan's affirmative defenses to the effect that NLG and its representative at trial lacked standing because of an internal dispute among the members, the trial court explicitly stated in the January 2, 2013, transcript (incorporated by the final judgment) that NLG did have standing and that its representative (Mr. Kosachuk) was a proper representative of NLG.

Accordingly, we reverse the final judgment and remand the case for further proceedings, including the enforcement of NLG's mortgage and the reinstatement of the lis pendens and amended lis pendens previously vacated by the final judgment.

Reversed and remanded.