

U.S. BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

JUN 2 9 2022

FILED_____RECEIVED_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re                                                Case No. 16-10389-AJC

LIZA HAZAN a/k/a
ELIZABETH HAZAN                                      Chapter 11

_____/

## CHRIS KOSACHUK'S MOTION TO DISMISS CASE WITH PREJUDICE

Chris Kosachuk, *pro se*, ("Movant"), in accordance with 11 U.S.C. §1112(b) and Rule 1017 of the Federal Rules of Bankruptcy Procedure, respectfully moves to dismiss this individual Chapter 11 bankruptcy case with prejudice. In support, Movant states:

### Request for Hearing before June 22, 2022

Movant requests a hearing before June 22, 2022 because there are ten different matters to be heard that day at 2:00 pm. Those matters will all be moot if this Motion to Dismiss is granted. Additionally, the United States of America on behalf of the IRS filed its own Motion to Dismiss [Doc. 1157], which should also be heard simultaneously with this Motion before the June 22 matters.

### The United States' Motion to Dismiss Debtor's Bankruptcy Case [Doc. 1157]

On June 7, 2022, the United States of America on behalf of the IRS filed a Motion to Dismiss Debtor's Bankruptcy Case for failure to maintain plan payments to the IRS. [*See* Doc. 1157]. Movant joins, adopts and incorporates by reference the IRS Motion to Dismiss as if fully re-written herein and moves this Court to dismiss this bankruptcy with prejudice. This confirmed plan has been in continuous default since its confirmation date of June 12, 2018. This Court should dismiss this bankruptcy with prejudice to the filing of a petition under any chapter of the Bankruptcy Code for a period of at least six years. **According to the table on page 3, the total amount of the payment defaults is $1,599,957.00!**

## Movant Has Article III Standing

This Court has previously ruled in a different motion that: "Movant is not a creditor in this case nor is he an interested party who has a stake in the outcome of this case or in the administration of the bankruptcy estate. Accordingly, Chris Kosochuk [*sic*] is without standing to seek the relief requested in the motion." [*See* Doc. 1106].

However, this Court has also ruled that "Having determined that Chris Kosachuk is in contempt of Court for filing the seventh lis pendens in violation of the Confirmation Order and discharge injunction." This Court also threatened Mr. Kosachuk with "monetary sanctions [of $10,000/day] and incarceration." [*See* Doc. 1073]. Thereafter, this Court stated "The Court stated on the record that, as the record stood, it was not persuaded to reconsider it's [*sic*] prior Order, but nonetheless allowed Mr. Kosachuk every opportunity to defend against the requested sanctions." [*See* Doc. 1134].

The Eleventh Circuit recently opined on the issue of bankruptcy standing in the case of *Breland v. the United States*, 989 F.3d 919 (11th Cir. 2021), which stated: "Existing standing doctrine requires a plaintiff to demonstrate (1) an actual (or imminent), concrete, and particularized injury-in-fact (2) that is fairly traceable to the defendant's challenged action and (3) that is likely redressable by a favorable decision. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000)." *Id.* at 922. It is difficult to envision a more "particularized injury-in-fact" than the threatened incarceration of the movant Kosachuk.

Because this Court has already caused a concrete and particularized injury-in-fact to Mr. Kosachuk (as described above) that is fairly traceable to the challenged action and that is likely redressed by a favorable decision. The enforcement of the bankruptcy plan and confirmation

order against Mr. Kosachuk gives him standing to challenge the confirmed bankruptcy plan because the debtor has materially defaulted on the confirmed plan. The Contempt Order is redressable in that a dismissal of this bankruptcy would also expunge Mr. Kosachuk of contempt. Thus, Mr. Kosachuk satisfies all the requirements for Article III standing to move to dismiss this bankruptcy.

### Jurisdiction, Venue and Statutory Predicate

1.      This Court has jurisdiction to hear this matter and enter a final order granting the relief requested herein pursuant to 28 U.S.C. §§ 1334 and 157(b)(2).

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief requested herein are 11 U.S.C. §1112(b) and Rule 1017 of the Federal Rules of Bankruptcy Procedure.

### CONFIRMED PLAN PAYMENT DEFAULTS

Below is a table summarizing all the confirmed plan payment defaults by this Debtor in chronological order with the very first payment default occurring on the day of confirmation June 12, 2018. This Motion to Dismiss will set out in greater detail how Hazan has blatantly defaulted on her plan obligations so as to make a mockery of her bankruptcy.

| Date of Payment Default | Creditor | Amount |
|---|---|---|
| June 12, 2018 | Fisher Island Comm. Assoc. | $46,555 |
| July 1, 2018 | Fisher Island Comm. Assoc | $6,730 |
| July 20, 2018 | JMB Urban Development | $275,000 |
| October 1, 2018 | Fisher Island Comm. Assoc. | $6,730 |
| October 15, 2018 | Estimated Income Taxes -IRS | $60,000 |
| December 18, 2018 | Real Estate Taxes | $57,247 |

3

| | | |
|---|---|---|
| December 12, 2018 | IRS | $22,948 |
| December 12, 2018 | IRS | $2,674 |
| January 1, 2019 | Fisher Island Comm. Assoc. | $6,730 |
| March 13, 2019 | Spencer Condominium | $109,555 |
| April 1, 2019 | Fisher Island Comm. Assoc. | $6,730 |
| June 1, 2019 | IRS | $22,948 |
| June 12, 2019 | IRS | $2,674 |
| July 1, 2019 | Fisher Island Comm. Assoc. | $6,730 |
| August 1, 2019 | Valencia Estates Monthly | $1,726 |
| September 1, 2019 | Valencia Estates Monthly | $1,726 |
| October 1, 2019 | Fisher Island Comm. Assoc. | $6,730 |
| October 1, 2019 | Valencia Estates Monthly | $1,726 |
| October 15, 2019 | Estimate Income Taxes-IRS | $150,000 |
| November 1, 2019 | Valencia Estates Monthly | $1,726 |
| November 25, 2019 | Real Estate Taxes | $59,844 |
| December 1, 2019 | Valencia Estates Monthly | $1,726 |
| December 12, 2019 | IRS | $22,948 |
| December 12, 2019 | IRS | $2,674 |
| January 1, 2020 | Fisher Island Comm. Assoc. | $6,730 |
| January 1, 2020 | Valencia Estates Monthly | $1,726 |
| February 1, 2020 | Valencia Estates Monthly | $1,726 |
| March 1, 2020 | Valencia Estates Monthly | $1,726 |
| April 1, 2020 | Valencia Estates Monthly | $1,726 |

| | | |
|---|---|---|
| April 1, 2020 | Fisher Island Comm. Assoc. | $6,730 |
| May 1, 2020 | Valencia Estates Monthly | $1,726 |
| June 1, 2020 | Valencia Estates Monthly | $1,726 |
| June 12, 2020 | IRS | $22,948 |
| June 12, 2020 | IRS | $2,674 |
| July 1, 2020 | Fisher Island Comm. Assoc. | $6,730 |
| July 1, 2020 | Valencia Estates Monthly | $1,726 |
| August 1, 2020 | Valencia Estates Monthly | $1,726 |
| September 1, 2020 | Valencia Estates Monthly | $1,726 |
| October 1, 2020 | Valencia Estates Monthly | $1,726 |
| October 1, 2020 | Fisher Island Comm. Assoc. | $6,730 |
| October 15, 2020 | Estimated Income Taxes-IRS | $150,000 |
| November 1, 2020 | Valencia Estates Monthly | $1,726 |
| November 27, 2020 | Real Estates Taxes | $58,627 |
| December 1, 2020 | Valencia Estates Monthly | $1,726 |
| December 12, 2020 | IRS | $22,948 |
| December 12, 2020 | IRS | $2,674 |
| January 1, 2021 | Valencia Estates | $10,156 |
| January 1, 2021 | Fisher Island Comm. Assoc. | $6,730 |
| January 1, 2021 | Valencia Estates Monthly | $1,726 |
| February 1, 2021 | Valencia Estates Monthly | $1,726 |
| March 1, 2021 | Valencia Estates Monthly | $1,726 |
| April 1, 2021 | Valencia Estates Monthly | $1,726 |

| April 1, 2021 | Fisher Island Comm. Assoc. | $6,730 |
|---|---|---|
| May 1, 2021 | Valencia Estates Monthly | $1,726 |
| June 1, 2021 | Valencia Estates Monthly | $1,726 |
| June 1, 2021 | Valencia Estates | $10,156 |
| June 12, 2021 | IRS | $22,948 |
| June 12, 2021 | IRS | $2,674 |
| July 1, 2021 | Fisher Island Comm. Assoc. | $6,730 |
| July 1, 2021 | Valencia Estates Monthly | $1,726 |
| August 1, 2021 | Valencia Estates Monthly | $1,726 |
| September 1, 2021 | Valencia Estates Monthly | $1,726 |
| October 1, 2021 | Valencia Estates Monthly | $1,726 |
| October 1, 2021 | Fisher Island Comm. Assoc. | $6,730 |
| October 15, 2021 | Estimated Income Taxes-IRS | $150,000 |
| November 1, 2021 | Valencia Estates Monthly | $1,726 |
| November 1, 2021 | Valencia Estates | $10,156 |
| November 19, 2021 | Real Estates Taxes | $59,282 |
| December 1, 2021 | Valencia Estates Monthly | $1,726 |
| December 12, 2021 | IRS | $22,948 |
| December 12, 2021 | IRS | $2,674 |
| January 1, 2022 | Fisher Island Comm. Assoc. | $6,730 |
| January 1, 2022 | Valencia Estates Monthly | $1,726 |
| February 1, 2022 | Valencia Estates Monthly | $1,726 |
| March 1, 2022 | Valencia Estates Monthly | $1,726 |

| | | |
|---|---|---|
| April 1, 2022 | Valencia Estates Monthly | $1,726 |
| April 1, 2022 | Valencia Estates | $20,313 |
| April 1, 2022 | Fisher Island Comm. Assoc. | $6,730 |
| May 1, 2022 | Valencia Estates Monthly | $1,726 |
| June 1, 2022 | Valencia Estates Monthly | $1,726 |
| June 12, 2022 | IRS | $22,948 |
| June 12, 2022 | IRS | $2,674 |
| | **Total Defaulted Payments** | **$1,599,957.00** |
| | | |
| | | |
| | | |
| | | |

## Background

4.      Liza Hazan a/k/a Elizabeth Hazan (the "Debtor") filed her Chapter 11 Petition over six years ago, on January 11, 2016 (the "Petition Date"), the day before a Miami-Dade County Clerk foreclosure auction was to take place on her Fisher Island Property.

5.      At the time of the petition filing, the Debtor had several million dollars of delinquent and unpaid creditors.   By way of example the IRS was owed $444,733.17, [Claim 3-1], JMB Urban Development LTD ("JMB") was a judgment creditor of Debtor Hazan and owed $664,380.47, [Claim 4-2], the Valencia Estates Homeowners' Association was owed $195,072.14 [Claim 10-1] and the Fisher Island Community Association ("FICA") was owed over $500,000 but as a secured creditor FICA did not file a proof of claim.

6.      JMB timely filed a proof of claim for $664,380.47.  [*See* Proof of Claim 4-2]. The Debtor failed to schedule JMB's judgment as a liability.   As such, the Debtor's voluntary petition and schedules were fraudulent.

7.      Thereafter JMB filed an adversary proceeding to determine the non-dischargeability of debt pursuant to 11 U.S.C. §§ 523(a)(2) and (6) and Federal Rule of Bankruptcy Procedure 4007 against Debtor/Defendant Liza Hazan *aka* Elizabeth Hazan. [*See JMB v. Hazan*. Case No. 16-ap-1188-AJC Doc. 1].

8.      JMB brought the action to object to the dischargeability of debt owed by the Debtor to JMB under a final judgment entered by the Circuit Court of Cook County, Illinois, which forms the basis of JMB's proof of claim in this case. JMB alleged that the debt should not be discharged because it is subject to the "fraud" exceptions contained in 11 U.S.C. §§ 523(a)(2) and (6), for money obtained by the Debtor by false pretenses, false representation, or actual fraud and while the Debtor was acting in a fiduciary capacity.

9.      The adversary proceeding concluded with the entry of an Agreed Final Judgment entered on July 20, 2016 in the non-dischargeable amount of $275,000 along with provisions for a timely payment of said Judgment pursuant to the Confirmed Plan.  [*See JMB v. Hazan*. Case No. 16-ap-1188-AJC Doc. 21 and attached hereto as Exhibit 1 of the Appendix on page A.3].

10.     Each party negotiated for key provisions provided for in the Agreed Final Judgment.  JMB agreed to reduce the amount it was owed to $275,000, but was now a non-dischargeable judgment and would be timely paid in full by the Debtor on or before July 20, 2018 without further litigation or collection activity and expense.

11.     JMB agreed to support and vote for Debtor's Plan of Reorganization so long as said Plan required payment to JMB in the amounts set forth in this Non-Dischargeability

Judgment prior to the Second Anniversary Date (July 20, 2018), and does not treat JMB in a manner less favorable to other unsecured creditors under the plan with respect to its now agreed upon $275,000 unsecured nondischargeable claim. For an avoidance of doubt, while the Debtor may establish a convenience class of small claims to which it may pay 100 cents at confirmation--provided this class does not exceed $30,000 in the aggregate, the Debtor shall not make any other cash payments to its other creditors unless JMB receives a like percentage of cash on its $275,000 claim at the time of the distribution.  JMB's claim is claim #4 in the Plan.

12.    In reliance of the Agreed Final Judgment, JMB gave the debtor breathing room and time to confirm the Plan.

13.    JMB has patiently waited for years, dutifully voted for the Plan and with JMB's support the Plan was confirmed.

14.    At or just before the Confirmation Hearing on May 30, 2018, the Debtor paid Creditor Valencia Estates Homeowner's Association $74,101.63 of the $195,072.14 owed according to the Plan as Claim #10. [*See* Doc. 563. P11].

15.    This payment equals 38% of what was owed to this Creditor and triggered an immediate of 38% payment to JMB or approximately $104,000 pursuant to the Agreed Final Judgment.  However, the Debtor defaulted in making this 38% payment to JMB.

16.    Pursuant to the terms of the Agreed Final Judgment, the Debtor was to satisfy the judgment in full by July 20, 2018.  Again, the Debtor defaulted on the confirmed plan payment to JMB due by July 20, 2018. Indeed, the Debtor's financial projections attached to her Fifth Amended Disclosure Statement, [Doc. 562-4], showed a $275,000 payment to JBM in July 2018.

17.    On August 15, 2018, S&S Collections, Inc., the collection arm of the Debtor's personal lawyer Michael Simon of Simon & Sigalos, filed a notice of Compliance Regarding

Claim #13. [*See* Doc. 737]. The Notice read: "Undersigned counsel received the settlement funds and the settlement is paid in full." This payment in full to S&S triggered a full payment to JMB. The Debtor again failed to honor her agreement and failed to pay JMB.

18. The Debtor clearly defrauded JMB into supporting the Plan and into accepting 41% of what it was owed when the Debtor was and is capable of paying JMB 100% of what is owed.

19. The Debtor owed a substantial tax liability to the IRS (about $444,733.17). [*See* Doc. 21 p. 13, Doc. 563 p. 15, IRS Proof of Claim #3, which recorded a lien on the Debtor's Spencer Condo attached to its proof of claim form and IRS Motion to Dismiss Doc. 1157].

20. Although the Debtor claimed in the Fifth Amended Disclosure Statement that she had completed her investigation into potentially avoidable transfers the Spencer Condo Transfer was not mentioned at all in her Fifth Amended Disclosure Statement or in her bankruptcy schedules or amended schedules. [*See* Doc. 562 p. 12 and Doc. 21 and 90].

21. Debtor Hazan concealed her ownership interest in the Spencer Condo but did schedule a mortgage to U.S. Bank recorded on the Spencer Condo [*See* Schedule Doc. 21 p 19], another mortgage to Real Time Solutions recorded on the Spencer Condo [*See* Schedule Doc. 21 p 19], the unpaid Spencer Condo fees [*See* Schedule Doc. 21 p 20] and IRS tax liens. [*See* Schedule Doc. 21 p 19].

22. Later in her Schedules on page 32 the Debtor listed the following under Legal Actions, Repossession and Foreclosures:

> (a) The Board of Managers of the Spencer Condominium v. Hazan et. al. Case No 154149-2012 in the Supreme Court of New York. The nature of the suit is unpaid condo fees.

(b) US Bank, NA v. Hazan et. al. Case No. 850240-2014 in the Supreme Court of New York. The nature of the suit is residential foreclosure

(c) Spencer Condominium v. Hazan et. al. Case No 111644-2009 in the Supreme Court of New York. The nature of the suit is unpaid condo fees.

23. On page 38 of her Schedules, in the Section titled: Give Details About Your Business or Connections to Any Business, Debtor Hazan lists businesses with the address of 1 East 62nd Street, Apt. 1a, New York, NY 10065.

24. Debtor Hazan clearly is still the beneficial owner of the Spencer Condo even though she fraudulently conveyed the title for zero consideration. Attached hereto as Exhibit 2 of the Appendix [A.8] is a mortgage recorded on the Spencer Condo to the Hazan's post-petition bankruptcy attorney Geoffrey Aaronson's law firm, for $145,000. Attorney Aaronson was counsel of record for the Debtor in the Bankruptcy Case and filed the petition on January 11, 2016.

25. This mortgage is still outstanding because US Bank filed an amended foreclosure complaint on February 1, 2022 with Debtor Hazan and her bankruptcy attorney Geoffrey Aaronson's law firm both as named defendants.  Attached hereto as Exhibit 3 of the Appendix [A.16] is the New York foreclosure complaint naming Aaronson, Schantz & Beiley PA as a defendant.

26. This mortgage also discloses mortgages to three other unsecured but preferred creditors, Bruce Jacobs, Esq. for $55,000, Robert P. Lithman, Esq. for $95,000 and Mark Cohen, Esq. for $25,000. These three attorneys represented Hazan and her husband's corporation, Selective Advisors Group, LLC, at various stages of the state court foreclosure proceedings in front of Judge Gordo.

27. All three attorneys were listed as unsecured creditors in the Debtor's original bankruptcy petition and became secured creditors to the detriment of the other creditors.

28. Attorney Aaronson was present at the confirmation hearing, supported confirmation but never disclosed his secured creditor status, nor the other attorneys' secured creditor status to the Court, to the detriment of all other creditors.

29. In fact, he told the Court: "Good afternoon, Your Honor. Geoffrey Aaronson, Aaronson Schantz Beiley, P.A., also former counsel for the debtor. I'm appearing here on behalf of my firm, basically just an interested party. We're appropriately dealt with in the plan." May 30, 2018 Confirmation Hearing Transcript p. 4. [Doc. 707 p. 4 lines 11-15].

30. Attorney Aaronson knew that representation he just made was misleading and without belief in its truth, or was made with reckless disregard for the truth because Mr. Aaronson was the holder of a Mortgage executed on November 14, 2016, secured by the Spencer Condo and thus his claim was not actually part of the Plan and was converted from unsecured to secured.

31. In fact, Attorney Aaronson even notarized the mortgage, signed by Sean Neil Meehan the debtor's husband, and agreed that upon satisfaction, he would return the original Promissory Note and Mortgage directly to Debtor Elizabeth Hazan. [*See* A.10].

32. Attorney Aaronson made the false representation to induce the court to rely upon it; the court did rely upon it; and, as a consequence of such reliance, the court entered the confirmation order.

33.     Attorney Aaronson had a claim in the Plan of $145,000 and received a mortgage on the Spencer Condo for $145,000. As such, Attorney Aaronson has a security interest for his claim for his previously unsecured claim.

34.     Had JMB (and other creditors presumably) known that the Debtor was still the beneficial owner of the Spencer Condo and able to execute mortgages in favor of creditors at 100 cents on the dollar, JMB would have never accepted just 41 cents on the dollar for its claim and would have never voted for and supported the Plan. Only the debtor's personal attorneys were offered these undisclosed preferential deals to convert their unsecured claims to secured claims. The Debtor's double dealing is truly offensive and tantamount to bankruptcy fraud.

35.     In a filing before Judge Gayles, in the case of *NLG, LLC v. Liza Hazan, a/k/a Elizabeth Hazan*, case no. 18-22564-CIV-GAYLES Doc. 50 page 15, the Debtor claims: "Based on an appraisal, the [Spencer] condominium unit was believed to have "in excess of $2,500,000.00 in equity."

36.     This Bankruptcy Petition and all related filings, as well as the Plan, the Confirmation Order and Discharge Order are all products of bad faith, fraud and collusion amongst this Debtor and her attorneys to the detriment of all other creditors.  This type of bad faith, fraud and collusion is precisely why the Court in Illinois awarded JMB a judgment in the first place.

37.     It is now readily apparent that the Debtor had and has no intention of honoring the Agreed Final Judgment, nor payments to other creditors pursuant to the confirmed plan and that the Debtor has $2.5 million in New York that she is concealed from the bankruptcy and later liquidated.  As such, dismissal is not only appropriate but mandatory because the confirmed plan is in complete default.

38.     Debtor Hazan and her attorneys can't be trusted to manage this debtor's affairs in Chapter 11 bankruptcy for the benefit of all creditors. They gave preferential treatment to themselves with a callous and blatant disregard for other creditors, the bankruptcy code and all

their responsibilities under the Bankruptcy Code as a Chapter 11 debtor. This perversion of the bankruptcy process must end immediately before any more harm ensues.

39.    This Court confirmed the Debtor's Plan on June 12, 2018, over written and oral objections. [*See* Doc. 691].

40.    Ever since the Confirmation Order was entered, the Debtor has defaulted on almost all her confirmed plan payments.

41.    For example, on June 12, 2018, the day of confirmation, the Debtor defaulted on her payment to the Fisher Island Community Association. In the plan the Debtor committed herself to "pay the net amount if any of all Fisher Island Community Association's post-petition fees in the amount of $46,555.48… at confirmation…" [*See* Doc. 563, p.13]. She has paid nothing, not even the current monthly HOA fees and accumulated arrearages in the amount of over **$734,340.35** [*See* Exhibit 4 [A.116]]. Indeed, the last time the debtor made a payment to the Fisher Island Community Association was in 2008 even though she agreed to pay them in her confirmed plan. Payments to the Fisher Island Community Association are due quarterly in advance so the first ongoing payments to Fisher Island was due on July 1, 2018 which the debtor failed to make. The debtor has failed to pay each quarterly payment due thereafter (October 1, 2018, January 1, 2019, April 1, 2019, July 1, 2019 etc.).

42.    The IRS is another creditor who was to be paid through the confirmed plan. The Debtor has defaulted on her confirmed plan payments to the IRS (owed $444,733.17).

43.    The IRS recently recorded two new tax liens on April 19, 2022 and April 27, 2022 [*See* Exhibit 5 [A.117]], bringing the outstanding balance owed to the IRS to over $500,000. These new tax liens and the IRS's Motion to Dismiss prove that the debtor failed to make the confirmed plan payments to the IRS.

44.    Indeed, in the IRS' Motion to Dismiss, the IRS confirms that the debtor only made one plan payment to the IRS on June 21, 2018 and thus has been in continuous default of her confirmed plan payments to the IRS for four years.

45.    Upon information and belief, the debtor has not paid her income taxes due post confirmation either even though she estimated that she would pay $150,000/year in income taxes in her confirmed plan. [*See* Doc. 562-4]. If the Debtor had filed the required post confirmation quarterly operating reports, we would know for sure.

46.    The Debtor also defaulted on her payments to creditor, Valencia Estates Homeowners' Association. As the record shows, Valencia Estates recently filed a foreclosure in state court, attached as Exhibit 6 [A.120], after having already filed a lis pendens attached as Exhibit 7 [A.159] and a Claim of Lien attached as Exhibit 8 [A.161] showing that the Debtor defaulted on the January 2, 2021 plan payment in the amount of $20,312.50 and all subsequent payments due every five months thereafter in the same amounts]. [*See* Doc. 563. P. 11]. The Debtor has also defaulted on the $1,041.66 ongoing monthly payments due to Valencia Estates every month post confirmation as of the August 2019 payment. [*See* Doc. 563. P. 12 and Doc. 1098 p. 5].

47.    On April 29, 2022, Valencia Estates filed a motion for stay relief to conduct a foreclosure auction on the Fisher Island Property which prompted the filing of this bankruptcy in the first place. [*See* Docs. 1098 to 1098-5].

48.    On May 19, 2022, the Court ruled that it would grant stay relief to Valencia Estates if it is not paid in full by June 22, 2022. [*See* Doc. 1134].

49.     On July 20, 2018, just a month after confirmation, the Debtor failed to pay JMB the $275,000 called for in the Plan. [*See* Doc. 563. P.21]. This default put the Confirmed Plan in continuous default for almost four years.

50.     The Debtor has failed to maintain insurance on the Fisher Island Property, which is cause for dismissal under 11 U.S.C. § 1112(b)(4)(C) and failed to pay the real estate taxes, which is cause for dismissal under 11 U.S.C. § 1112(b)(4)(I).  Attached hereto as Exhibit 9 [A.163-166] are the 2018, 2019, 2020 and 2021 Miami Dade County Real Estate tax bills **all paid by JP Morgan Chase Bank** respectively on November 28, 2018 in the amount of $57,247.08, [A.163], on November 25, 2019 in the amount of $59,844.46 [A.164] and on November 27, 2020 in the amount of $58,627.29 [A.165] and on November 19, 2021 in the amount of $59,281.76 [A.166]. The Plan did not call for JP Morgan Chase Bank to pay the Debtor's real estate taxes.

51.     Additionally, the Debtor has been in continuous litigation with JPMorgan Chase Bank since 2013 in the Miami-Dade Circuit Court. On April 14, 2021, the Debtor, *pro se*, filed a 12-page Report with the State Court arguing that the Chase's "mortgage lien was wiped out in the Chapter 11 bankruptcy." A copy of the Report is attached as Exhibit 10 [A.168].

52.     The Debtor defaulted on her plan payment to the Spencer Condominium in the amount of $109,554.86. [Doc. 563. P. 16]. In the confirmed Plan, the Debtor represented that Real Estate Holdings Group L.D.C. ("REHG"), the then current owner of the Spencer Condo (an entity owned and managed by the debtor's husband Sean Neil Meehan), would pay the $109,554.86. However, REHG transferred the title to the unit without paying any of the money owed despite claiming to have received $4.1 million according to the transfer tax paid to the City of New York. [*See* Exhibit 11 [A.179]].

53.    The Confirmed Plan called for payments to creditors and the Debtor has defaulted on most every Confirmed Plan payment.

54.    Because the Debtor has materially defaulted on the Confirmed Plan, she should be denied any further relief and this Court should dismiss this bankruptcy case with prejudice pursuant to § 1112(b)(4)(N) because there is nothing to liquidate and a dismissal with prejudice is in the best interest of all the creditors.

55.    The Debtor has also failed to file any post-confirmation quarterly reports because she did not want to highlight for this Court, the UST or any other party, all her material defaults of the Confirmed Plan which is cause for dismissal under 11 U.S.C. § 1112(b)(4)(F).

56.    The Debtor's only asset is the Fisher Island Property which she has declared as her homestead and thus exempt.  Accordingly, there are no assets to liquidate, thus a conversion is not in the best interest of the creditors and would serve no purpose.

57.    The Confirmed Plan was not made in good faith and in fact was made in bad faith as proven by the record and all the defaults of the confirmed plan with the first default occurring on the same day as confirmation.

## MEMORANDUM OF LAW

The Courts have repeatedly stated that in analyzing whether a plan has been proposed in good faith under § 1129(a)(3), "the important point of inquiry is the plan itself and whether such a plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code." *In re Am. Cap. Equip., LLC*, 688 F.3d 145, 156 (3d Cir. 2012). Specifically, under Chapter 11, the two "recognized" policies, or objectives, are "preserving going concerns and maximizing property available to satisfy creditors[.]" *Bank of Am. Nat.'l Trust and Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 453 (1999) (citing *Toibb v.*

*Radloff*, 501 U.S. 157, 163, (1991)). More generally, the Bankruptcy Code's objectives include: "giving debtors a fresh start in life," *Walters v. U.S. National Bank of Johnstown*, 879 F.2d 95, 98 (3d Cir. 1989), "discourag[ing] debtor misconduct," *id.*, "the expeditious liquidation and distribution of the bankruptcy estate to its creditors," *Integrated Solutions, Inc. v. Service Support Specialties*, 124 F.3d 487, 489 (3d Cir. 1997), and achieving fundamental fairness and justice. *In re Kaiser Aluminum Corp.*, 456 F.3d 328, 339-43 (3d Cir. 2006). In this Bankruptcy, the only objective that has been achieved is to give the Debtor a fresh start, which she is obviously squandered by allowing her debts to secured and unsecured creditors pile up by not making the Confirmed Plan payments and attempting to hide these defaults from the US Trustee, the Court and other creditors.

In accordance with 11 U.S.C. § 1112(b), the Court should dismiss with prejudice this individual Chapter 11 bankruptcy case because there is nothing to liquidate. Section 1112(b) states:

> Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

Section 1112(b)(4)(N) sets forth cause as a "material default by the debtor with respect to a confirmed plan," which is precisely the case with this Debtor. She has defaulted over 80 times starting on July 1, 2018.

Here, cause plainly exists to dismiss this case, which has been languishing in continuous default for almost four years while not making the confirmed plan payments. Clearly, the Debtor has acted in a manner inconsistent with her own confirmed plan. This Court has inadvertently encouraged debtor misconduct and its orders have not achieved fundamental fairness and justice.

As additional causes for dismissal are (1) Debtor's withdrawal of tens of thousands of dollars from the DIP bank account in cash without explanation [11 U.S.C. § 1112(b)(4)(D)]; Debtor's failure to file Post Confirmation Operating Reports [11 U.S.C. § 1112(b)(4)(F)]; and Debtor's failure to pay the taxes owed to the Miami Dade County Real Estate Tax Collector after the date of the order for relief (January 11, 2016) [11 U.S.C. § 1112(b)(4)(I)].

Clearly this Debtor has displayed a total disregard for the Confirmed Plan and her bankruptcy should be dismissed with prejudice.

The term "cause" is not defined by the Bankruptcy Code, but Section 1112(b)(4) lists sixteen (16) examples of cause which justify dismissal. The examples set forth in this subsection are meant to be nonexclusive. *See In re Global Shipments, LLC*, 391 B.R. 193, 204–05 (Bankr. S.D. Ga. 2007). In this case, the record supports a finding of cause, at a minimum, under Sections 1112(b)(4)(C) (D) (F) (I) and (N).

There is no question that under 11 U.S.C. § 1112(b), a bankruptcy court "has broad discretion to dismiss or convert a Chapter 11 case for cause". *Han v. Linstrom,* No. 02 CV 213, 2002 WL 31049846, at *4 (N.D. Ill. Sept. 12, 2002) (Guzman, J.). The court's analysis proceeds in two steps: first, it must determine whether "cause" exists for either dismissal or conversion. *Id.* Next, it decides "which option is in the best interest of creditors and the estate." *In re Superior Siding & Window, Inc.,* 14 F.3d 240, 242 (4th Cir.1994) (citation and internal quotation marks omitted). In the second step, the court must compare "the creditors' interests in bankruptcy with those they would have under state law," and must "consider the interest of *all* creditors." *Id.* at 243 (original emphasis).

Every creditor and interested party to this bankruptcy will be better served with a dismissal with prejudice of this bankruptcy. Allowing this debtor to use the confirmed plan as a

sword against certain parties and a shield against other parties is an abuse of the bankruptcy code. Most importantly because the debtor has no assets other than the homesteaded Fisher Island Property, there is absolutely no benefit to the estate, any creditor or interested party from conversion as there are no assets to liquidate in a chapter 7 conversion. Thus, dismissal with prejudice is the only proper remedy.

## **CONCLUSION**

Based on the chart on page 3 this Debtor has defaulted on more plan payments than she has actually made. This Court must end this abuse of the bankruptcy system and make certain that this debtor can never abuse the bankruptcy code or other courts again in such an egregious and bad faith manner.

**WHEREFORE,** for the foregoing reasons, the Court should dismiss this bankruptcy with prejudice to the filing of a petition under any chapter of the Bankruptcy Code for a period of at least six years and grant such other and further relief as the Court deems appropriate.

Dated June 9, 2022

Respectfully submitted,

**Chris Kosachuk**
*/s/ Chris Kosachuk*
***Pro Se Movant***
854 Pheasant Run Rd.
West Chester, PA 19382
(305) 490-5700
chriskosachuk@gmail.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was emailed to the Clerk of Court for electronic filing on this 9th day of June, 2022 pursuant to Administrative Order 2021-10 .

Respectfully submitted,

**Chris Kosachuk**
*/s/ Chris Kosachuk*
***Pro Se Movant***
854 Pheasant Run Rd.
West Chester, PA 19382
(305) 490-5700
chriskosachuk@gmail.com

## SERVICE LIST

***Served via CM/ECF***

Geoffrey S. Aaronson on behalf of Creditor Aaronson Schantz Beiley P.A.
gaaronson@aspalaw.com

Joel M. Aresty, Esq. on behalf of Creditor Joel M. Aresty P.A.
aresty@mac.com

Joel M. Aresty, Esq. on behalf of Defendant Liza Hazan
aresty@mac.com

Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Rebecca N Casamayor on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
rcasamayor@dhaberlaw.com

Robert P. Charbonneau, Esq. on behalf of Creditor Fuerst, Ittleman David & Joseph, P.L.
rpc@ecccounsel.com,
nsocorro@ecclegal.com;bankruptcy@ecclegal.com;bankruptcy.ecc@ecf.courtdrive.com

Adam A Diaz on behalf of Creditor U.S. Bank National Association
adiaz@shdlegalgroup.com, southerndistrict@shdlegalgroup.com

Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC
bkfl@albertellilaw.com

Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium
bnasralla@furrcohen.com, atty_furrcohen@bluestylus.com

Joe M. Grant, Esq. on behalf of Creditor Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc.
ROBERT.GUSRAE@GMAIL.COM

David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
dhaber@dhaberlaw.com,
ngomez@dhaberlaw.com;rcasamayor@dhaberlaw.com;dbhpaservice@dhaberlaw.com

Kevin L Hing on behalf of Creditor JPMorgan Chase Bank, National Association
khing@logs.com, electronicbankruptcynotices@logs.com

David W. Langley on behalf of Counter-Defendant Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Debtor Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Plaintiff Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

Tamara D McKeown on behalf of Defendant Liza Hazan
tdmckeown@mckeownpa.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Ashley Prager Popowitz on behalf of Creditor Real Time Resolutions, Inc.
Ashley.popowitz@mrpllc.com, flbkecf@mrpllc.com

Andrew D. Zaron, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association
azaron@leoncosgrove.com, jgomez@leoncosgrove.com

Guy A. Van Baalen
Office of the US Trustee for Region 21
Guy.A.VanBaalen@usdoj.gov

Mary Ida Townson
Office of the US Trustee for Region 21
maryida.townson@usdoj.gov

Ramona D. Elliot
Executive Office of the US Trustee
ramona.d.elliott@usdoj.gov

Heather Ries on behalf of Trustee Alfred T. Giuliano
hries@foxrothschild.com

Raychelle Tasher on behalf of the United States of America, Internal Revenue Service
*Assistant United States Attorney*
United States Attorney's Office
Southern District of Florida
Civil Division (Bankruptcy)
Raychelle.Tasher@usdoj.gov