Page 1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 16-10389-AJC
Chapter 11

In Re:

LIZA HAZAN,
    Debtor.
_____/
SELECTIVE ADVISORS GROUP,
    Debtor.
_____/

ECF # 1021, 1036
August 18, 2021

    The above-entitled cause came on for a telephonic hearing before the HONORABLE A. JAY CRISTOL, one of the Judges of the UNITED STATES BANKRUPTCY COURT, in and for the SOUTHERN DISTRICT OF FLORIDA, on Wednesday, August 18, 2021, commencing at or about 2:02 p.m., and the following proceedings were had:

    Transcribed from a digital recording by:
    Helayne Wills, Court Reporter

OUELLETTE & MAULDIN COURT REPORTERS, INC.
(305) 358-8875

```
 1  APPEARANCES VIA COURTSOLUTIONS:
 2
        DAVID W. LANGLEY, P.A., by
 3      DAVID W. LANGLEY, ESQ.,
        on behalf of the Debtor
 4
 5      ADR MIAMI, LLC, by
        JUAN RAMIREZ, JR., ESQ.,
 6      on behalf of NLG and Juan Ramirez, Esq.
 7
        CHRIS KOSACHUK
 8      Pro Se
 9
        ALSO PRESENT VIA COURTSOLUTIONS
10      ECRO - Electronic Court Reporting Operator
        LIZA HAZAN
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1  ECRO: The first case is 16-1439,
2  Selective Advisors Group.
3  Mr. Chris Kosachuk, can you please say
4  your appearance?
5  MR. KOSACHUK: Yes. Chris Kosachuk,
6  K-O-S-A-C-H-U-K, on behalf of myself.
7  MR. RAMIREZ: This is Juan Ramirez,
8  R-A-M-I-R-E-Z, on behalf of myself and NLG.
9  THE COURT: Mr. Ramirez, you've got to get
10 closer to the mic. You're coming very weak.
11 Continue.
12 MR. RAMIREZ: I'm sorry, Judge. Juan
13 Ramirez, R-A-M-I-R-E-Z, on behalf of myself and NLG,
14 LLC, Judge.
15 ECRO: Mr. David Langley.
16 MR. LANGLEY: Yes. Good afternoon, Your
17 Honor. David Langley, L-A-N-G-L-E-Y, appearing on
18 behalf of Selective.
19 THE COURT: Anyone else?
20 ECRO: Mr. Joe Grant.
21 THE COURT: Mr. Grant, are you there? I
22 think Mr. Langley may be appearing for him.
23 MR. LANGLEY: Yes. I don't believe
24 Mr. Grant will be appearing.
25 THE COURT: Okay. Anyone else? No other

Page 4

1    appearances?  Very well then.
2            Mr. Langley, are you proceeding on Court
3    Paper 399?
4            MR. LANGLEY:  Judge, if I may, since we
5    have other related matters in the Hazan case, we
6    would be okay with continuing 399 in the Selective
7    adversary.  There's just two motions in the main
8    case, the Hazan case, that we would want to proceed
9    with.
10           THE COURT:  Anyone have any objection to
11   that?
12           MR. RAMIREZ:  No objection.
13           THE COURT:  Very well then.  What are we
14   proceeding on, what court paper?
15           MR. LANGLEY:  Well, Judge, in the main
16   case, the Hazan case, 16-10389, there are two
17   matters where we would request a ruling today.  I
18   know when we've had these matters come up before,
19   you were concerned that there's still an appeal
20   pending in the 11th Circuit.  For reasons I'll get
21   into, I don't think that prevents you from ruling on
22   Docket Entry 1021, and the request in 1036 for a
23   final decree.
24           THE COURT:  I don't see those numbers.
25   Where did you get those numbers?  I see Court Papers

OUELLETTE & MAULDIN COURT REPORTERS, INC.
(305) 358-8875

1    1031 and 1032.
2             MR. LANGLEY:  I'm looking online at your
3    calendar for today, and I see 1021, 1031, 1033 and
4    1036.
5             THE COURT:  And what are they?  I don't
6    see them on my calendar.
7             MS. GUTIERREZ:  Your Honor, it's on Page
8    5.
9             THE COURT:  Page 5?
10            MS. GUTIERREZ:  He's referring to the
11   application for final fee, 1036.
12            THE COURT:  Hold on a second.  I'm trying
13   to get to that page.  I haven't found them yet.
14            I see 1033, 1021 and 1036.  1036, is that
15   one of them?
16            MR. LANGLEY:  Yes.  That's one of them,
17   and 1021.  1021, Judge, is a motion for sanctions,
18   and two things.  One is, regardless of any appeal
19   the trial court always has jurisdiction to enforce
20   its own orders.  What I'd like to do on ECF 1021 is
21   just to basically simplify this, Judge.
22            You ruled previously that Kosachuk and
23   Mr. Ramirez should release the lis pendens that they
24   filed against the property, and you advised them
25   that if they didn't do that, you would award a

1   $1,000 a day daily fine, as of April 10, 2019.
2              Again, just to simplify this, a lot of the
3   relief that we requested in that motion, what I
4   would go to is, in our prayer for relief, it
5   indicates that the last and final lis pendens
6   recorded by Kosachuk and Ramirez, was January 29th
7   of this year, January 29, 2021.  That appears at the
8   top of Page 18.
9              Then what we requested was, number one, a
10  permanent injunction enjoining Kosachuk, Ramirez,
11  Astrid Gabbe and NLG from recording any more lis
12  pendens against the property; next, deeming all
13  recorded lis pendens filed by NLG, Kosachuk, and
14  Ramirez and Astrid Gabbe, as null and void and of no
15  effect; and then award $1,000 a day, daily fine,
16  from January 29, 2021 until today; enter a judgment
17  with that relief in it, and then enter a final
18  decree and close this case, and you'll never hear
19  from us again.
20             On that, Judge, I would point out that the
21  case is ripe to be closed out.  You've entered a
22  confirmation order that's been appealed and they
23  lost that.  You've entered a discharge order.  They
24  tried to appeal that and they lost that.  You
25  entered a final judgment in an adversary.  The first

1  appeal was dismissed.  The second appeal, the
2  District Court found that it was equitably moot.
3         There's now still something pending in the
4  11th Circuit, but I would argue to the Court that
5  it's really of no effect, and won't have any effect
6  on what I'm asking you to rule today, and that is,
7  because in the state court where this whole thing
8  started, the case that we referred to in the
9  adversary as the Gordo case, that Judge Gordo
10 originally handled, where a foreclose ruling was
11 entered.
12        In that case, Judge Hogan Scola, who took
13 over that division, ruled that Selective Advisors
14 Group replace NLG, that it be the proper party, that
15 the clerk was ordered to replace Selective as the
16 party plaintiff, and that all rights of any kind to
17 foreclose belonged to Selective.
18        That, by the way, it's an attachment to
19 the document which has been recorded at 1032 and
20 1033.  Because it has double relief, it's filed
21 twice, but it shows up today as 1033.  On Page 14 of
22 that document as an attachment is Judge Hogan
23 Scola's order that substituted Selective as the
24 plaintiff in that foreclosure case.
25        The next document, at Page 16 of 19, is

1  where Selective dismissed the foreclosure case with
2  prejudice.  And the remaining pages are where the
3  Third DCA refused the petition for writ -- I believe
4  it was a -- yeah, a petition for writ of mandamus,
5  and denied their motion for rehearing.  So there is
6  no longer anything of substance still pending.
7           The whole point of these appeals was, NLG
8  wanted to somehow get back to where they could try
9  to foreclose.  Well, they no longer have any
10 interest in that foreclosure case.  They no longer
11 have anything.  They didn't timely file a proof of
12 claim.  You ruled that they had no interest in the
13 property.  The state court completely separate has
14 ruled they have no interest in the property.  They
15 have nothing.
16          There's no -- any ruling by the 11th
17 Circuit would at most be some kind of pure victory,
18 but it won't affect what I'm asking you to rule on
19 today.  There is -- you would be enforcing your own
20 prior order by wording the thousand dollars a day,
21 and then closing out -- entering the final decree,
22 and the case could be closed.
23          And I anticipate that Mr. Kosachuk is
24 going to argue and Mr. Ramirez is going to argue all
25 kinds of things that they know nothing about.

1   They're going to claim that Ms. Hazan hasn't paid
2   this or hasn't done that, and they have no idea what
3   she's been doing or paying or what arrangements
4   she's worked out with any creditors.  You've already
5   found that she substantially consummated the plan.
6   You entered her discharge.  Everything that needs to
7   be done in this case has been done, absent the entry
8   of a sanction just to enforce your prior order where
9   you directed them to do something, and you told them
10  the fine would be $1,000 a day, and they didn't do
11  it.
12          We don't need to have an evidentiary
13  hearing.  We don't need anything further.  You've
14  already set the amount.  The dates are fixed.
15  $1,000 a day, enter a judgment and close the case.
16  That's what I would request, Judge, and I think that
17  would tie things up and we would be done and then we
18  would stop bothering you.
19          THE COURT:  So your argument is
20  interesting.  The one thing I don't believe is, you
21  said I will never hear from you again.  I doubt
22  that.
23          In any event, let's find out who else
24  wishes to be heard.
25          MR. KOSACHUK:  Your Honor --

1        MR. RAMIREZ:  Chris, let me go first, if
2   you don't mind.
3        Judge, there are a lot of things that --
4        THE COURT:  You're going to have to get
5   closer to the mic.  I can't hear you.
6        MR. RAMIREZ:  Judge, there are things that
7   you shouldn't believe that Mr. Langley said.  First
8   of all, the thousand dollars a day was under a lis
9   pendens that we basically discharged when we went to
10  that order.  So if they have a complaint about the
11  rule (unintelligible) $1,000 a day order, that
12  governs the current lis pendens.
13       Number two, the confirmation order and the
14  discharge order have been appealed.  They have not
15  been ruled upon, because they're waiting for the
16  11th Circuit.  I find it odd that he would say this
17  document (unintelligible) is pending, because that
18  was not the argument they made to the 11th Circuit.
19  They in fact made very solid arguments to the 11th
20  Circuit.  None of them were that what they were
21  doing was not full of substance.
22       Everybody has been waiting for the 11th.
23  You had already ruled two or three times that we
24  should wait for the 11th Circuit.  Nothing has
25  changed since you made those rulings.  They keep

1  coming back to you over and over again.
2           As far as the Judge Scola judgment, Judge,
3  Judge Scola relied on your final judgment to rule
4  the way she did.  Now they're trying to turn around
5  and reverse the Scola judgment to have you rule
6  again.  This is bootstrapping in the most extreme.
7           If we do prevail on appeal, it's going to
8  be that this court, the Bankruptcy Court, has no
9  subject matter jurisdiction under the Rooker Feldman
10 doctrine, and once we prevail, anything that
11 emanates from that will be reversed, because the
12 order would have been entered without jurisdiction,
13 subject matter jurisdiction.  So we would go back to
14 state court and reverse Judge Scola, because of a
15 new finding by the 11th Circuit.
16          So since there's only one real matter for
17 me, and that's the 11th Circuit rule which will
18 govern the confirmation order, the discharge order
19 and all the other arguments that they're making.  I
20 think -- I don't want to repeat myself, but there's
21 nothing that has changed.  We keep coming back over
22 and over.
23          You've set this for 30 days -- I mean
24 three months to see if they ruled.  They haven't
25 ruled.  We should have just automatically rolled it

1   over for another three months and wait for a ruling
2   from the 11th.  As soon as they rule we'll be able
3   to resolve a lot of these issues.  And if we lose,
4   then, of course, we'll immediately discharge the lis
5   pendens, and if we prevail we're going to have to go
6   back to square one.
7            THE COURT:  Thank you, Mr. Ramirez.
8            Anyone else?
9            MR. KOSACHUK:  Yes, Your Honor.  Chris
10  Kosachuk speaking now.
11           I would just like to point out to the
12  Court that in its order, Docket Entry 1028, the
13  Court specifically said that it would consider
14  sanctions consistent with any decision on appeal
15  from the 11th Circuit Court of Appeal in Case Number
16  19-14049, if the 11th Circuit has ruled on the
17  pending appeal from the related adversary
18  proceeding, Adversary Number 16-1439-BKC-AJC.  And
19  nothing has changed since Your Honor said that it
20  would wait to rule on the sanctions motion.
21           I think the appropriate and prudent course
22  of action at this point is to continue to wait for
23  the 11th Circuit to rule.  The Court also made the
24  same finding in an order docketed at 1029.  So
25  that's the second one.  And again, I think the Court

1  just needs to wait until the 11th has ruled, because
2  that's what was done.
3         I would also incorporate the arguments
4  that Mr. Ramirez has made. And to the extent that
5  the Court wants to hear anything further about the
6  sanctions, I think they would only become
7  appropriate to have a hearing on it once the 11th
8  Circuit has ruled.
9         Thank you.
10        THE COURT: Thank you.
11        Anything further from any party?
12        MR. LANGLEY: Judge, David Langley, if I
13 can just reply -- respond briefly, just two issues.
14        One is, you ordered them to remove the lis
15 pendens, and you warned them not to file any more,
16 and they filed a fourth, a fifth and a sixth. So
17 they violated your order, and you can enforce that
18 by the thousand dollars a day or really anything
19 that you want. So that's relatively straightforward
20 and simple.
21        They regularly violated your orders, and
22 despite numerous warnings they keep recording these
23 lis pendens, and I think it's time to do something
24 about that. So that's one point.
25        The second point is, they have no recourse

1  back to state court.  The 11th Circuit is not going
2  to reverse the state court ruling.  They didn't get
3  a stay of that order.  They lost their appeal.
4  There's no pending appeal.  There's no process,
5  legal means, by which they can go back and undo
6  Judge Hogan Scola's ruling.
7       That ruling, again, is attached to Docket
8  Entry 1033 as an attachment, and so was the notice
9  of dismissal with prejudice of that lawsuit.  That
10 lawsuit is closed.  The foreclosure case is gone.
11 They're fighting just for the sake of fighting.  The
12 main issues in this case are done.
13      The only thing I would suggest the Court
14 can still do is sanction them for not complying with
15 your prior order, and then close out the case.
16      THE COURT:  Okay.  Thank you, Mr. Langley.
17      Anyone else have anything before we --
18      MR. RAMIREZ:  Yes, Judge.
19      On the final order that they're speaking
20 of, I filed a (unintelligible) and I quoted from
21 Rule 3022, in which number six is for all motions
22 and (unintelligible) matters and adversary
23 proceedings have been finally resolved.
24      Now, the contested matters are, number
25 one, of course, the adversary proceedings, which has

1   been appealed.  We had the oral argument in January.
2   I'm just waiting for (unintelligible).  We have a
3   confirmation order and discharge order that are
4   pending on appeal that have not been resolved.
5              As far as having the remedy in state
6   court, we do definitely have a remedy under Rule
7   1.4540, that allows us to go back, if the Court
8   relies on an order that has been declared --
9   rendered without jurisdiction.  So if the 11th
10  Circuit determines that you had no subject matter
11  jurisdiction, the final judgment that you entered,
12  no matter how long ago, it doesn't matter.  The void
13  judgment that's not become clear (unintelligible).
14             We can go back to state court and
15  everything back to normal, reinstate our proposal,
16  and finally have this matter resolved that the NLG
17  has been trying to prosecute since 2011.  We're
18  going into ten years, and we still have not gotten a
19  resolution of this matter.
20             So, Judge, well, there's nothing pending.
21  Of course there's something pending.  Everything is
22  pending.  The whole proceedings hinge on what the
23  11th is going to do, and we're waiting on that,
24  Judge.
25             MR. LANGLEY:  Judge, if I could just

1  respond on that last point?
2             As far as jurisdiction, he's making an
3  argument that -- I assume under Rooker Feldman --
4  that you may not have had jurisdiction.  That
5  doesn't apply to Judge Hogan Scola.  She clearly had
6  jurisdiction over the case and the property, and she
7  ruled in favor of Selective and they dismissed that
8  case.  There's no way to go back and address that,
9  no matter what the 11th Circuit does.
10             MR. RAMIREZ:  That's incorrect, Judge.
11  Juan Ramirez again, Judge.
12             Under federal law, Judge Scola relied on a
13  judgment that's been declared to have been rendered
14  without jurisdiction.  Under 1.4540, we can go back
15  at any time, and there's no time limit on going back
16  on a void judgment.
17             Mr. Langley, maybe he doesn't know Florida
18  Civil Procedure in state court as well as he does
19  bankruptcy.  But we can go back to state court
20  because Judge Scola's judgment clearly states it was
21  based on your final judgment, Judge.
22             MR. LANGLEY:  That doesn't mean that she
23  was without jurisdiction.  She had jurisdiction, so
24  they can't use that.  They can't use Rule 1.540 on
25  that matter.

1         THE COURT: Okay. Anything else from any
2   party? Okay.
3         I'm going to reserve ruling on -- I
4   believe we have one, two, three, four, five -- about
5   seven different items that are all on this calendar,
6   and I'm going to direct that each side, or if there
7   are three sides, we could have three submissions. I
8   want proposed orders.
9         The orders shall go through today's
10  calendar and pick up the numbers that are on the
11  calendar, starting with 399, 1032, 1031, 1036, 1021
12  and 1033, and possibly a reference to Court Paper
13  1029.
14        I'd like each of those items clearly dealt
15  with in the proposed order. If you feel that it's
16  more appropriate to have more than one order, you
17  can submit multiple orders or one order, dealing
18  with all those matters. The Court will expect them
19  in -- how soon, two weeks, 30 days?
20        MR. RAMIREZ: Thirty days.
21        Judge, I'm here in Asheville, North
22  Carolina. From here I have to drive my wife to New
23  York, because she has tests that she has to undergo
24  at Memorial Sloan Kettering. I won't get back to
25  Miami until September. So I would ask a minimum of

1    30 days, Judge.
2             THE COURT:  Thirty days.  How about 45
3    days?
4             MR. RAMIREZ:  That's even better.
5             MR. LANGLEY:  That's fine with me, Judge.
6             THE COURT:  What's 45 days out from today,
7    if you can calculate that for me?
8             MR. KOSACHUK:  Your Honor, it's
9    approximately October 8th.
10            THE COURT:  October, does that work for
11   you, Mr. Ramirez?
12            MR. RAMIREZ:  What was the date again?
13            THE COURT:  8 October.
14            MR. RAMIREZ:  That's fine, Judge.
15            THE COURT:  How about you, Mr. Langley?
16            MR. LANGLEY:  Yes, Judge.  That's fine.
17   Thank you.
18            THE COURT:  And we had -- let's see, who
19   else?  Mr. Kosachuk, does that work for you?
20            MR. KOSACHUK:  Yes, Your Honor.  That's
21   fine.
22            THE COURT:  Did I miss someone?
23            MR. LANGLEY:  Judge, that's all.
24            THE COURT:  All right.  Then we'll look
25   for those orders.  The court can advise you that it

1  believes that it is appropriate to enter a final
2  decree, and you can deal with that by agreeing with
3  it or contesting it in your proposed orders, aside
4  from the fact that I think that's clear that that
5  should be entered.  We'll have to deal with these
6  other matters, depending on how persuasively they
7  are presented.
8             That seems to take care of Selective
9  Advisors, Liza Hazan, so we can adjourn that
10 hearing.
11            (Thereupon, the hearing was concluded.)

CERTIFICATION

STATE OF FLORIDA:
COUNTY OF DADE:

        I, HELAYNE F. WILLS, Shorthand Reporter and Notary Public in and for the State of Florida at Large, do hereby certify that the foregoing proceedings were taken by electronic recording at the date and place as stated in the caption hereto on Page 1; that the foregoing computer-aided transcription is a true record of my stenographic notes taken from said electronic recording.

        WITNESS my hand this 27th day of September, 2022.

_____
HELAYNE F. WILLS
Court Reporter and Notary Public
In and For the State of Florida at Large
Commission No: HH157788  Expires 8/2/2025