1          UNITED STATES BANKRUPTCY COURT
            SOUTHERN DISTRICT OF FLORIDA
2

3                          Case No.:  16-10389-AJC
                           Chapter 11
4

5    In Re:

6    LIZA HAZAN,

7         Debtor.
     _____/

8

9

10

11                    ECF # 1228, 1255

12                    September 9, 2022

13

14

15          The above-entitled cause came on for a

16   telephonic hearing before the HONORABLE

17   A. JAY CRISTOL, one of the Judges of the UNITED

18   STATES BANKRUPTCY COURT, in and for the SOUTHERN

19   DISTRICT OF FLORIDA, on Friday, September 9, 2022,

20   commencing at or about 2:20 p.m., and the following

21   proceedings were had:

22

23

24          Transcribed from a digital recording by:
                Helayne Wills, Court Reporter
25

1   APPEARANCES VIA COURTSOLUTIONS:
2

     JOEL M. ARESTY, P.A., by
3        JOEL M. ARESTY, ESQ.,
     and
4        DAVID W. LANGLEY, P.A., by
     DAVID W. LANGLEY, ESQ.,
5        on behalf of the Debtor
6

     HABER LAW, P.A., by
7        REBECCA N. CASAMAYOR, ESQ.,
     on behalf of Valencia Estates
8
9        FOX ROTHSCHILD, by
     HEATHER L. RIES, ESQ.,
10       JESSE M. HARRIS, ESQ.,
     on behalf of Alfred Guiliano
11
12       ALSO PRESENT VIA COURTSOLUTIONS
     ECRO - Electronic Court Reporting Operator
13       LIZA HAZAN - Listen Only
     CHRIS KOSACHUK
14
15
16
17
18
19
20
21
22
23
24
25

```
 1              ECRO:  The next matter, Your Honor, is
 2   Case Number 16-10389.  That's Liza Hazan.
 3              I have Mr. Joel Aresty on the line.  If
 4   you can state your appearance, please.
 5              MR. ARESTY:  Yes.  Good afternoon, Your
 6   Honor.  Joel Aresty, representing the discharged
 7   reorganized debtor, Liza Hazan.
 8              ECRO:  Thank you.
 9              I also have attorney David Langley on the
10   line.  If you can state an appearance, sir.
11              MR. LANGLEY:  (Inaudible) L-E-Y.  I'm
12   appearing on behalf of myself.
13              ECRO:  Thank you.
14              I also have Rebecca Casamayor on the line.
15   If you could state your appearance, please.
16              MS. CASAMAYOR:  Yes, good afternoon.
17   Rebecca Casamayor, C-A-S-A-M-A-Y-O-R, on behalf of
18   the Valencia Estates Association.
19              ECRO:  Thank you.
20              I have Mr. Chris Kosachuk on the line.  If
21   you can state your appearance, sir.
22              MS. KOSACHUK:  Chris Kosachuk,
23   K-O-S-A-C-H-U-K, on behalf of myself.
24              ECRO:  Thank you.
25              I have Jesse Harris on the line.  If you
```

1    can state your appearance, sir.

2           MR. HARRIS:  Good afternoon, Your Honor.

3    Jesse Harris, H-A-R-R-I-S, on behalf of the Chapter

4    7 Trustee for the bankruptcy estate of NLG, LLC.

5           ECRO:  Thank you.

6           I also have Heather Ries on the line.  If

7    you can state your appearance, please.

8           MS. RIES:  Good afternoon, Your Honor.

9    Heather Ries, R-I-E-S, also on behalf of the Trustee

10   of NLG.

11          THE COURT:  Very well.  We have two

12   matters on the calendar.  The first matter is Court

13   Paper 1228, filed by David Langley, a motion to

14   withdraw as attorney of record.

15          Proceed, Mr. Langley.

16          MR. LANGLEY:  Yes, thank you, Judge.

17          I'm just seeking to withdraw.  Mr. Aresty,

18   of course, is main counsel now for Ms. Hazan.  I

19   just would like an order stating that I'm no longer

20   representing Ms. Hazan, and have no further

21   responsibility in the case.  And I don't believe

22   there's any opposition.

23          THE COURT:  Well, let's find out.  Does

24   anyone wish to be heard on the issue of

25   Mr. Langley's withdrawal?

1              MR. ARESTY:  Your Honor, Joel Aresty,

2    A-R-E-S-T-Y, for Ms. Hazan.  We have no objection.

3    In fact, we had previously uploaded an agreed order

4    to allow the withdrawal.

5              THE COURT:  Based on the representation

6    that the debtor consents, and there have been no

7    objections on the record, the motion is granted.

8              Mr. Aresty, you may submit an appropriate

9    order.  Run it by Mr. Langley to make sure you're

10   satisfied that it adequately withdraws him and

11   leaves the case in your hands.

12             MR. ARESTY:  Thank you, Judge.

13             MR. LANGLEY:  Thank you, Judge.

14             THE COURT:  We have another matter.

15   That's 1255.  That matter is an emergency motion

16   filed by you, Mr. Aresty, asking numerous things.

17             Why don't you go ahead and proceed to

18   present your motion.  Then (inaudible) wishes to be

19   heard.

20             MR. ARESTY:  Thank you, Your Honor.

21             Judge, we filed the motion 1255 back on

22   August 15th.  There was a hearing on August 18th,

23   which the Court will recall, there was a transcript

24   of it, and you made it very clear that I should

25   confer with Mr. Kosachuk and try to submit an agreed

1    order that would resolve the matter and allow

2    Ms. Hazan to clear the title for the purposes of her

3    refinancing or sale.

4            Subsequent to that hearing I had a chance

5    to confer with Mr. Kosachuk, and we had filed a

6    notice and request for judicial notice of e-mails at

7    Doc 1324, Judge, which attaches an exhibit of the

8    actual e-mails between Mr. Kosachuk and I.

9            Basically, I told Mr. Kosachuk very

10   clearly, and in my experience with civil contempt --

11   which this was, not a criminal contempt, as he had

12   alleged -- that the keys to the jailhouse were in

13   his hands.  I explained to him that this was not a

14   punishment, but rather a coercive process, whereby

15   he could purge any contempt by complying with the

16   Court's order, and of course, compliance with the

17   Court's orders were for him to clear the title for

18   the property so Ms. Hazan could proceed with a

19   refinancing or sale.

20           The Court will recall she had paid a

21   deposit.  She has clear title, except for the

22   Kosachuk exceptions.  She had her appraisal.  And

23   the Court received numerous documents under seal,

24   which confirmed that, which we went over at the

25   August 18th hearing.

1          At the August 18th hearing the Court made

2   it very clear in the transcript that you were

3   setting a hearing for today, you gave me an extra

4   week because of my vacation, which I appreciate.

5   But if he was unable to resolve the matter for the

6   closing, that he'd carry his toothbrush with him,

7   because this will be the end of Your Honor's

8   patience, and notwithstanding your reluctance, at

9   Page 20 you said, "Notwithstanding my reluctance to

10  take you into custody you will be determined in

11  civil contempt and will be taken into custody by the

12  marshals until the matter is resolved."

13          Then you went on to say, Your Honor, "At

14  that time the Court would be appointing someone as a

15  fiduciary to act in your behalf while you are in the

16  custody of the United States government."  That's at

17  Page 20.

18          Judge, regrettably, despite my attempt to

19  make Mr. Kosachuk understand that the keys to the

20  jail were in his hands, and all he had to do was

21  comply with your orders to purge that contempt and

22  be free, he made it very clear that he had no

23  intention of complying, that he would never let

24  Ms. Hazan sell or refinance.  He was not afraid of a

25  warrant for his arrest.  He remained defiant,

1    unrepentant, and in clear willful and malicious

2    civil contempt of this Court.

3              He just wants to hurt Ms. Hazan, harm her

4    financially, continue to slander her title, and

5    literally after a dozen warnings from this Court, as

6    you ordered August 18th, he has not done anything to

7    help facilitate the sale or the refinancing of the

8    property.

9              So, Judge, we would ask, as we asked at

10   our original Document 1255, that he needs to be

11   shown that he can't defy the power and the dignity

12   of the Court.  We'd ask for the remedy of his

13   incarceration.

14             THE COURT:  Thank you.  Anything else,

15   Mr. Aresty?

16             MR. ARESTY:  Yeah.  I'm sorry, Judge.

17             We asked for some ancillary relief, to

18   strike the offensive filings.  There's been a couple

19   of lis pendenses after the last order for contempt.

20   So obviously, the seventh and eighth lis pendenses,

21   the appeal, a motion to recuse you, the constant

22   appeals of everything, we'd ask the Court to strike

23   those, and to not accept any more filings of that

24   nature by him.

25             Thank you.

1              THE COURT:  Thank you, Mr. Aresty.

2              Is there anyone else here, other than

3    Mr. Kosachuk, that wishes to be heard on this

4    matter?

5              Mr. Aresty, what is the status of the loan

6    closing that has been stopped by virtue of these

7    filings?

8              MR. ARESTY:  Judge, the status is that

9    until and unless the Kosachuk exceptions can be

10   cleared, which he has not done voluntarily, there

11   could be -- we're stuck, because the title company

12   is not going to take the risk of litigating with

13   Mr. Kosachuk.  So the refinancing and the sale --

14   and by the way, Judge, the debtor has added another

15   broker, who I'm sure you're familiar with, The

16   Jills, to help facilitate the sale.  So in addition

17   to Sotheby's, we have The Jills working on it.  We

18   also have a refinancing on the table.  But until

19   Mr. Kosachuk is contained, we can't proceed.

20             So we're asking the Court to move that in

21   that direction, so that hopefully he will have a

22   change of mind and understand that he has to

23   cooperate with the Court's directions.

24             THE COURT:  Thank you, Mr. Aresty.

25             The Court has frequently stated that

Page 10

1   Mr. Kosachuk theoretically has no standing in this

2   case, but here he is.  The Court determines that he

3   is in civil contempt.  Civil contempt, of course, is

4   quite different than criminal contempt, but we don't

5   need to get into that now.

6           Before we go much further we'll ask if

7   Mr. Kosachuk wishes to be heard.  Mr. Kosachuk.

8           MR. KOSACHUK:  Yes, I'm here.  I do wish

9   to be heard.

10          I'm first going to object to the Court

11  holding me in civil contempt in this matter, based

12  on several critical issues.  Number one, Mr. Aresty

13  never served this motion for contempt on me.  He

14  e-mailed it to me, but that was it.  He never served

15  it.  I never waived service.  So the Court doesn't

16  have jurisdiction over me in this motion and in this

17  contempt.  So that's number one.

18          Number two, this needs to be an

19  evidentiary hearing.  Witnesses need to be called,

20  testimony needs to be taken, and we can't just do

21  this in a summary proceeding.

22          Moreover, I filed a motion to withdraw the

23  reference, as well, and made a jury demand in this.

24  So contrary to what has been said, I'm entitled to a

25  jury.  And if I'm not entitled to a jury, at a bare

1    minimum I'm entitled to an evidentiary hearing,

2    which brings me to my next point, which is,

3    Mr. Aresty is testifying to this Court.  He can't

4    testify and act as an advocate in a trial at the

5    same time.  Florida Bar Rule 4-3.7 prohibits this

6    activity.

7              The next thing is, he's obviously

8    submitted some kind of documents to this Court under

9    seal.  That's an ex parte communication with the

10   Court, that the Court has ostensibly seen.  I don't

11   know if Your Honor has seen the sealed documents or

12   not.  I would ask the Court, if it's seen the sealed

13   documents.

14             THE COURT:  The Court is unaware of the

15   sealed documents.

16             Mr. Aresty, have you filed sealed

17   documents with the Court?

18             MR. ARESTY:  Yes, Judge.  In fact, we not

19   only filed sealed documents, but Your Honor entered

20   an order authorizing the filing of sealed documents

21   on two occasions, because the documents were

22   private, proprietary closing documents.

23             THE COURT:  Okay.  Let's let Mr. Kosachuk

24   continue.

25             MR. KOSACHUK:  Thank you, Your Honor.

1            Ostensibly I'm being held in contempt

2     under documents that I can't see, that has been

3     given to the Court, that the Court hasn't seen.

4     This is pretty egregious here.

5            And I can't clear the title to the

6     property.  I'm not the only obstacle to this

7     refinancing that they're talking about, or sale.

8     I'm not an obstacle to the sale in any way, shape or

9     form.  The only obstacle to the sale is the

10    $26 million price tag that they've put on the

11    property, which is twice per square foot of what the

12    developer from Fisher Island will give you a brand

13    new turn key house.  So the debtor is squandering

14    these opportunities.

15           And let's go back over this from

16    (inaudible).  It's Document 1323.  That's a mortgage

17    to attorney Langley, in favor of attorney Langley,

18    executed by debtor Hazan on May 28th of 2018, two

19    days before the confirmation hearing.  And that's

20    critical, because attorney Langley, on May 25th of

21    2018, (inaudible) as a plan proponent, Document 681.

22    He doesn't mention this mortgage that he's received.

23           Then thereafter, the debtor files a

24    certificate of compliance, Document 682, on May 30th

25    of 2018.  That too sits silent about this.

1           So what happened at confirmation was,

2    attorney Aresty -- sorry, excuse me -- attorney

3    Langley got a mortgage from this debtor for his fees

4    that were owed.  So he converted himself from an

5    unsecured creditor to a secured creditor.  This is

6    the same thing that attorney Geoffrey Stuart

7    Aaronson did, also to the detriment of the

8    creditors.  So the debtor -- you confirmed a plan

9    that shouldn't have been confirmed, because they

10   never disclosed any of this to anybody, and the plan

11   was destined to fail.

12           Let's go over the basics here.  The Court

13   wants to hold me in contempt on a plan where the

14   debtor has been in continuous default since

15   confirmation.  The debtor hasn't even attempted to

16   comply with her own plan.  This is pretty

17   unbelievable.  And this goes way back to, she

18   defaulted on a $46,555 payment due to the Fisher

19   Island Community Association.  (Inaudible)

20   confirmation.  Defaulted right there.

21           On July 1st of 2018, she defaulted on

22   another payment to the Fisher Island Community

23   Association.  On July 20, 2018, she defaulted on a

24   $275,000 payment to unsecured creditor JMV Urban

25   Development.  She continued the default.  She missed

1    her taxes.  She didn't pay those.  And she missed

2    the December 18, 2018 payment to the IRS.

3            She also failed to pay her real estate

4    taxes this year -- that year.  She has never once

5    paid her real estate taxes to Miami-Dade County.

6    And that alone constitutes cause for dismissal.  She

7    bamboozled the IRS into withdrawing their motion,

8    but the IRS is fixing now to refile their motion to

9    dismiss this bankruptcy for failure to maintain the

10   plan payments.

11           Ms. Hazan defaulted on her plan payment in

12   December of 2018 to the IRS, and every payment

13   thereafter.  Moreover, she hasn't paid her income

14   taxes either.  All of this would have come out if we

15   would have had the post-confirmation operating

16   reports, but we don't.

17           And those issues are before the District

18   Court.  The issue of this contempt is pending appeal

19   before the District Court.  The issue of whether I

20   have standing to file a motion to dismiss is also

21   pending before the District Court.  So if anything,

22   the District Court is probably more better situated

23   to handle and adjudicate this entire matter.

24           But the Court shouldn't proceed at all.

25   The Court should dismiss this bankruptcy.  It's been

Page 15

1    a sham proceeding from day one.  The debtor hasn't

2    complied with her own plan.

3              I had nothing to do with the debtor's

4    defaults of her payment plan in 2018, or 2019, or

5    2020, or 2021, or 2022.  I'm not the reason that she

6    hasn't paid.  She hasn't paid for a very simple

7    reason.  She can't afford the Fisher Island house.

8    And that's been evident from day one, because she

9    never paid anybody.

10             She hasn't paid JPMorgan Chase Bank, who

11   has a pending foreclosure and a lis pendens on the

12   property.  She hasn't paid Valencia Estates, who has

13   a pending foreclosure analyst and a lis pendens on

14   the property.  She hasn't paid the Fisher Island

15   Community Association, who also has -- doesn't have

16   a pending foreclosure, but has a lien on the

17   property.

18             So all of these problems are the problems

19   on the title, not to mention this newly discovered

20   Langley mortgage, which was executed on May 28th of

21   2018, but wasn't recorded in Miami-Dade County until

22   August 22nd of 2022.  So two weeks ago he decided to

23   record the mortgage.  So it looks like to me

24   Mr. Langley is fixing now to move to foreclose.

25             So all of these other parties -- and this

1    is the only asset that this debtor has.  The debtor

2    doesn't have anything.  The debtor can't afford to

3    pay anything.  The debtor has been living in Fisher

4    Island for free now for 15 years, six of which under

5    this Bankruptcy Court's protection, while this

6    Bankruptcy Court at the same time has not required

7    the debtor to do any of the statutory requirements,

8    like filing operating reports, using the

9    debtor-in-possession bank account so we know she's

10   current on all this.  The debtor is in default.

11            This plan should not be enforced against

12   me or any creditor.  The Court needs to dismiss the

13   bankruptcy, restore the creditors to their

14   pre-petition status, and let them now move on in

15   state court and elsewhere.

16            This debtor does not deserve the

17   protections of the Bankruptcy Court.  She's been

18   bamboozling everybody for six years in bankruptcy,

19   and hasn't made a payment, period.  And I have

20   nothing to do with those payments.  I am not the

21   reason that she can't sell or refinance.  She can't

22   refinance the property, because she is a deadbeat,

23   in bankruptcy, with bad credit and no income.

24   That's why she can't finance the property.  It's

25   very simple.  Even a hard money lender is smart

1    enough to look at this and say, "There's no way

2    she's going to pay."

3            She hasn't paid JPMorgan Chase on their

4    bank loan, on their mortgage, in 15 years.  She

5    didn't pay NLG.  She didn't pay Valencia.  She

6    didn't pay Fisher Island.  She doesn't pay anyone.

7    She doesn't pay the IRS.  The IRS, the biggest

8    creditor virtually in any bankruptcy, and she thumbs

9    her nose at them and says, "I don't need to pay

10   them," and doesn't.

11           This is just pretty offensive that she has

12   gotten away with this for this long.  While the

13   Court wants to hold me in contempt, I think the

14   Court needs to take a long, hard look at this

15   debtor, her conduct, the attorney's conduct, and her

16   failure to comply with their own plan.  This is the

17   problem.

18           The problem is not with me.  The problem

19   is, the debtor doesn't make any money, especially,

20   not enough money to live the high life in Fisher

21   Island, which is what she's been doing for 15 years.

22   And quite frankly, it's disgusting.  The fact that

23   she's lived in Fisher Island, the most expensive ZIP

24   code in America, for free, for the last 15 years,

25   under the Bankruptcy Court's protection, is a sham.

1   And if the Bankruptcy Court allows this, it's

2   setting a terrible precedent, because there are

3   going to be many, many more to follow suit.

4            This is going to become a case study on

5   how to live a millionaire lifestyle for free by

6   defrauding your creditors, defrauding the Court, and

7   defrauding everybody you can.  This is not

8   acceptable.  This Court needs to dismiss this case

9   and be done with it.

10           This is what the Court said it was going

11  to do back in the hearing in June.  It said it

12  wasn't going past 90 days.  We're ten days away.

13           What the Court needs to do is just realize

14  the debtor is never going to pay.  The debtor is

15  never going to honor any of her obligations.  This

16  entire contempt proceeding is just a ruse to see if

17  they can induce you to try to send the marshals

18  after me.  And what good would it do?

19           Mr. Aresty claims that I have the keys to

20  the jail cell.  I don't.  They want you to enter an

21  order that detains me indefinitely.  That's what

22  they've asked the Court to do.  Because I can't

23  control whether she refinances her property.  She

24  can't refinance her property, because she doesn't

25  make any money, and has bad credit, and has been in

1   bankruptcy now for six years and didn't make her

2   plan payments.

3           No lender is giving her a penny, because

4   they understand that it's just another lawsuit down

5   the road.  No title insurance company is going to

6   give title, because they see what happened, and they

7   see that eventually that sham, $5 million judgment

8   by confession, will be undone.  And then it's all

9   over.

10           But in the interim, this Court can stop

11   the madness right now by dismissing the case with

12   prejudice to filing another bankruptcy under any

13   chapter of the Code for a period of six years,

14   because that's how long she's abused all the

15   creditors and other parties in this bankruptcy.  And

16   so I think at a bare minimum, the Court should stop

17   what it's doing, dismiss the case.

18           To the extent the Court wants to proceed,

19   no problem, but it needs to do it properly.  The

20   motion needs to be served on me, a full evidentiary

21   hearing needs to be set.  I'm going to request a

22   jury.  I'm entitled to discovery.  I'm entitled to a

23   lawyer, whether it's criminal or civil.  I'm still

24   entitled to a lawyer.  And I'm not going to waive my

25   rights, especially in a (inaudible) proceeding like

1    this one.

2                This at a minimum needs to be an

3    evidentiary hearing, and that's not what this is.

4    If Mr. Aresty wants to testify I welcome his

5    testimony, but then he's no longer able to be the

6    debtor's advocate.

7                Thank you.

8                THE COURT:  Thank you, Mr. Kosachuk.

9                First of all, we're not dealing with

10   criminal contempt, and therefore, the issue of a

11   jury trial or evidentiary hearing are not on the

12   table.  You've been determined by this Court to be

13   in civil contempt, and it has certain specific

14   meanings of its own, and certain parameters with

15   which you can operate.

16               Now, you said that you're not holding up

17   anything.  All of her other creditors were supposed

18   to be paid out of her financing, and the report of

19   the title company is that they would not close,

20   because of your two lis pendens.

21               Are you willing to tell me that you're

22   going to release those two lis pendens, because you

23   say you're not holding up anything, and then let's

24   see where it goes, or do you not wish to release

25   those lis pendens?

1          MR. KOSACHUK:  Your Honor, the issue of

2   the lis pendens are pending in the District Court on

3   appeal.  So if Your Honor is asking me to dismiss my

4   appeal, no.  I'm not willing to dismiss my appeal,

5   and no, I will not be forced to dismiss appeals by

6   being threatened with jail, (inaudible) my life for

7   sure.

8          And I am not holding this up.  Your Honor

9   is taking this debtor and Aresty's testimony as

10  fact.  There needs to be evidence.  What evidence

11  have they submitted to this Court that I'm holding

12  up their title commitment or their refinancing?  For

13  all we know the refinancing doesn't even exist, and

14  I know it's not big enough to pay everybody, because

15  it's only $6 million.  And that doesn't even pay off

16  JPMorgan Chase.

17         So all these creditors that you're talking

18  about, the creditors were supposed to be paid by the

19  debtor through her plan.  She projected in her plan

20  in Document 563, attachment Number 4, that she would

21  have $810,000 in income in calendar year 2018 to pay

22  the creditors.  This plan was never about using the

23  equity in the house or selling the house to pay the

24  creditors.  So I have nothing to do with her

25  inability to pay her creditors.  Her creditors have

1    waited patiently.

2              THE COURT:  You have filed two lis

3    pendens, have you not?

4              MR. KOSACHUK:  Yes, I did.  And those lis

5    pendens were directed at letting the public know

6    that the judgment by confession for $5 million, that

7    this Court used to wipe out NLG's legitimate final

8    judgment of foreclosure, is still being challenged.

9    And this Court has already correctly determined that

10   filing a lis pendens is not in violation of the

11   confirmation order or the discharge injunction.

12             Your Honor did that back in December of

13   2018, and that's correct.  So I'm not in the way of

14   anything.  They're misleading you, Your Honor.  You

15   have to realize what's happening here, okay, and

16   what this debtor simply can't afford.  All she's

17   trying to do is push you to send the marshals after

18   me.

19             And what does it do?  It doesn't

20   accomplish anything.  It doesn't get the creditors

21   paid.  She's had five years, four years to pay these

22   creditors, and she hasn't paid them.  And she's not

23   going to pay them.  She hasn't paid any creditor.

24   She never pays voluntarily.

25             So to the extent that these issues are

Page 23

1    pending in the District Court, I'm going to let the

2    appeals play out, because I have an absolute right

3    to do that.

4              THE COURT:  Thank you, Mr. Kosachuk.

5              Proceeding forward, as I said, the Court

6    disagrees with your interpretation of your right to

7    jury trial and evidentiary hearing, and states again

8    on the record that you're not being found in

9    criminal contempt, you're being found in civil

10   contempt, and therefore, the request made by

11   Mr. Aresty on behalf of Ms. Hazan is well-founded.

12             It would be entirely appropriate to have

13   the marshals take you into custody and hold you

14   until such time as you did what was necessary to

15   allow this matter to go forward.  However, the Court

16   is not pleased with the concept of sending anyone to

17   jail, although sometimes it has to be done.  I don't

18   think it would be of immediate value in this

19   situations, and therefore, I'm going to defer ruling

20   on ordering the marshals to take you into custody,

21   and instead, sanction you for civil contempt.

22             The sanction will be that effective by

23   Monday of this week, if you haven't withdrawn the

24   lis pendens, which are holding up the closing and

25   keeping all of the other creditors in this case from

1   being paid, and thus being harmed, then the Court

2   will sanction you $100 a day for the next 30 or 35

3   days, at which time the Court will reconsider the

4   matter, and if you haven't solved the problem

5   voluntarily by then, the Court will consider

6   increasing the sanctions.

7              At the end of the first 30-day segment,

8   the Court will reduce the first period of sanction

9   money to a judgment to be recorded against you

10  wherever it is deemed appropriate.  We'll have

11  another hearing.

12             Susan, do you have a hearing date

13  somewhere around 35 days out?

14             ECRO:  Yes, Your Honor.  One second,

15  please.

16             We do have available, Your Honor,

17  October 20th at 10:30.

18             THE COURT:  20 October at 10:30.  Very

19  well.

20             Mr. Aresty, you will draw the order, which

21  will include setting a further hearing on this

22  matter on that date, at which time we will consider

23  the status of the matter and determine, if the

24  sanctions have not encouraged the resolution of this

25  matter, that we will consider increasing the

1    sanctions, and we will consider entering a judgment

2    against Mr. Kosachuk for the sanctions that have

3    gone by and not been paid.

4              There doesn't seem to be much more we can

5    do here today, except that you may prepare the

6    order, Mr. Aresty.  I would suggest you research the

7    law to determine whether or not we can include in

8    the order an instruction, or the Court will appoint

9    someone to file the discharge of the lis pendens on

10   behalf of Mr. Kosachuk, since he's not willing to do

11   it voluntarily.  And, of course, the question of

12   whether or not he's ever going to be incarcerated

13   will remain on the table, possibly for some period

14   of time, a couple of months or more, and if it

15   becomes that would be the only way to get his

16   attention, I will consider it somewhere down the

17   line.

18             That seems to be all we can do on this

19   matter today.  I wish everyone a pleasant day, and

20   hope you will remain safe and healthy.

21             I will adjourn this hearing.

22             MR. ARESTY:  Thank you, Judge.

23             (Thereupon, the hearing was concluded.)

24

25

Page 26

1                        CERTIFICATION

2

3     STATE OF FLORIDA:

4     COUNTY  OF  DADE:

5

6                I, HELAYNE F. WILLS, Shorthand

7     Reporter and Notary Public in and for the State of

8     Florida at Large, do hereby certify that the

9     foregoing proceedings were taken by electronic

10    recording at the date and place as stated in the

11    caption hereto on Page 1; that the foregoing

12    computer-aided transcription is a true record of my

13    stenographic notes taken from said electronic

14    recording.

15                WITNESS my hand this 21st day of

16    September, 2022.

17

18

19    _____

                        HELAYNE F. WILLS
20              Court Reporter and Notary Public
             In and For the State of Florida at Large
21           Commission No:  HH157788  Expires 8/2/2025

22

23

24

25